M. Anderson Berry (SBN 262879)
Leslie Guillon (SBN 222400)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
lguillion@justice4you.com

*Attorneys for Plaintiffs*

## THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN HASHEMI and STEVE ALTES, as individuals and all others similarly situated, <br><br> Plaintiffs, <br> vs. <br><br> BOSLEY, INC., <br><br> Defendant. | Case No.: ___2:21-cv-00946___ <br><br> **CLASS ACTION COMPLAINT** <br><br> DEMAND FOR JURY TRIAL |

   Plaintiffs Ken Hashemi and Steve Altes ("Plaintiffs") bring this Class Action Complaint against Bosley, Inc. ("Bosley" or "Defendant"), as individuals and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsels' investigations, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

   1.  Plaintiffs bring this class action against Bosley to seek damages for

Plaintiffs and the class of consumers who they seek to represent, as well as other equitable relief, including, without limitation, injunctive relief designed to protect the very sensitive information of Plaintiffs and other consumers. This action arises from Bosley's failure to properly secure and safeguard personal identifiable information, including without limitation, unencrypted and unredacted names, Social Security numbers, financial account and/or payment card numbers, and driver's license numbers (collectively, "personal identifiable information" or "PII"). Additional PII may include addresses, dates of birth, email addresses, and supplemental payment card information including expiration dates and CVV verification numbers.

2.     Plaintiffs also allege Bosley failed to provide timely, accurate and adequate notice to Plaintiffs and similarly situated Bosley customers ("Class Members") that their PII had been lost and precisely what types of information was unencrypted and in the possession of unknown third parties.

3.     The original Bosley hair clinic opened in Beverly Hills, California in 1974. Still headquartered in Beverly Hills, Bosley now has locations across the nation and internationally. Bosley offers products and services nationally and internationally through its websites and other means. The company's estimated 2020 revenues exceed $30 million.

4.     On or about January 26, 2021, Bosley notified state Attorneys General and many of its customers/patients about a widespread data breach involving sensitive PII of over 100,000 individuals. Bosley explained that, on or about September 24, 2020, Bosley allowed its network to fall victim to a "ransomware infection" beginning on or about August 17, 2020 (the "Data Breach"). Bosley's investigation revealed its "data sources" were accessed by unauthorized, unknown third-parties, exposing the PII detailed above.

5.      Plaintiffs in this action were customers/patients of Bosley, and were not notified about the Data Breach until on or about January 26, 2021. Bosley fails to explain why it took the company over four months to alert consumers that their sensitive PII had been exposed. As a result of this delayed response, Plaintiffs and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk to identity theft and various other forms of personal, social, and financial harm.

6.      This unencrypted, unredacted PII was compromised due to Bosley's negligent and/or careless acts and omissions and the utter failure to protect consumers' sensitive data. Hackers obtained their PII because of its value in exploiting and stealing the identities of Plaintiffs and Class Members. The risk to these consumers' will remain for their respective lifetimes.

7.      Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Bosley's failure to: (i) adequately protect consumers' PII; (ii) warn consumers of its inadequate information security practices; and (iii) effectively monitor Bosley's network for security vulnerabilities and incidents. Bosley's conduct amounts to negligence and violates federal and state statutes.

8.      Plaintiffs and Class Members have suffered injury as a result of Bosley's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) deprivation of rights they possess under the California Unfair Competition Law, (Cal. Business & Professions Code §§ 17200, *et seq.*) and the California Consumer Privacy Act (Cal. Civ. Code §§ 1798.100, *et seq.*); and (v) the continued and certainly an increased risk to their

PII, which remains in Bosley's possession and is subject to further unauthorized disclosures so long as Bosley fails to undertake appropriate and adequate measures to protect the PII. This risk will remain for the lifetimes of Plaintiffs and Class Members.

9.     Bosley disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or at the very least negligently failing to take and implement adequate and reasonable measures to ensure that its customers' and patients' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

10.     Plaintiff Ken Hashemi is a Citizen of Massachusetts residing in Essex County, Massachusetts. Mr. Hashemi received Bosley's *Notice of Data Breach*, dated January 26, 2021, on or about that date. If Mr. Hashemi had known that Bosley would not adequately protect his PII, he would not have allowed Bosley access to this sensitive and private information.

11.     Plaintiff Steve Altes is a Citizen of California residing in Los Angeles County, California. Mr. Altes received Bosley's Notice of Data Breach, dated January 26, 2021, on or about that date. If Mr. Altes had known that Bosley would not adequately protect his PII, he would not have allowed Bosley access to this sensitive and private information.

12.     Defendant Bosley, Inc. is a Delaware corporation with its principal place of business at 9100 Wilshire Boulevard, East Tower Penthouse, Beverly Hills, CA.

13.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs. Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

14.     All of Plaintiffs' claims stated herein are asserted against Bosley and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

15.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member (including, for example, named Plaintiff Ken Hashemi, a citizen of Massachusetts) is a citizen of a state different from Defendant to establish minimal diversity.

16.     The Central District of California has personal jurisdiction over Defendant named in this action because Defendant is headquartered in this District and conducts substantial business in California and this District through its headquarters, offices, and affiliates.

17.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant is headquartered in this District and has caused harm to Plaintiffs and Class Members residing in this District.

# IV. FACTUAL ALLEGATIONS

*Background*

18.     Bosley promises that it will protect its members' privacy and remain in compliance with statutory privacy requirements. For example, Bosley states on its website that:

> Bosley places great importance on the security of any Information collected from its patients, clients and visitors. We have implemented technical and organizational measures designed to secure your Personal Information from accidental loss and from unauthorized access, use, alteration, destruction, or disclosure, by encrypting our website and platforms, by reviewing our information collection, storage and processing practices, including physical security measures, to guard against unauthorized access to systems.[1]

19.     Bosley also promises consumers that "Bosley will not share, rent or sell any Personal Information with third parties," and that "Bosley Inc. . . . . respects your privacy. We are committed to ensuring that the information you provide to Bosley on or outside this website and or the information we collect from you is only used in accordance to the terms of this privacy policy."[2]

20.     Plaintiffs and the Class Members, as current and former Bosley customers/patients, relied on these promises and on this sophisticated entity to keep their sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Consumers, in general, demand security to safeguard their PII, especially when Social Security numbers and other sensitive PII is involved.

---

[1] Ex. 1 (Bosley's Privacy Policy, also *available at*: https://www.bosley.com/privacy-policy/.)

[2] *Id*.

21.     Bosley had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from involuntary disclosure to third parties.

***The Data Breach***

22.     Beginning on or about January 26, 2021, Bosley notified many of its customers/patients and state Attorneys General about a widespread data breach involving sensitive PII of certain current and former customers and patients.[3] Bosley explained that, on or about September 24, 2020, Bosley discovered that beginning over a month earlier, on August 17, 2020, it computer systems were infected with malware that encrypted the data and allowed unauthorized, unknown third-parties access to the computer systems. This exposed over 100,000 consumers' PII to criminals.[4]

23.     Bosley sent consumers a *Notice of Data Breach*, informing the recipients of the notice that:

> On August 17, 2020, certain computer systems were infected with malware that encrypted the data on those machines. We quickly identified and contained the incident, restored systems from available backups and launched an investigation with the assistance of a cybersecurity firm which was engaged on our behalf. On September 24, 2020, we learned that an unauthorized party had gained access to some of our systems that contained personal information of our customers.
>
> …
>
> The stored information that was potentially accessible includes your name, Social Security number, driver's license number and/or financial account information.

---

[3] Ex. 2 (Bosley's *Notice of Data Breach*, dated January 26, 2021, archived by the Maine Attorney General.)
[4] *Id.*

CLASS ACTION COMPLAINT                    7

We encourage you to remain vigilant by reviewing your account statements and credit reports for any unauthorized

activity.[5]

24.    Bosley admitted in the *Notice of Data Breach* and the letters to the Attorneys General that their systems were subjected to unauthorized access beginning on or about August 17, 2020, and there is no indication that the exfiltrated PII was encrypted or retrieved.

25.    In response to the Data Breach, Bosley claims, "In response to this incident we have taken steps to help prevent a similar incident in the future including updating user passwords and implementing additional security safeguards and controls in our network infrastructure."[6]

26.    Bosley did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining, causing Plaintiffs' and Class Members' PII to be exposed.

### *Securing PII and Preventing Breaches*

27.    Bosley could have prevented this Data Breach by properly encrypting or otherwise protecting their equipment and computer files containing PII. In fact, in the "Security" section of its Privacy Policy, Bosley claims to encrypt PII – but that is apparently not the case.[7] And, as Bosley claims it does, it should have implemented adequate "technical and organizational measures designed to secure your Personal Information from accidental loss and from unauthorized access."[8]

28.    Bosley has acknowledged the sensitive and confidential nature of the

---

[5] *Id*.
[6] *Id*.
[7] Ex. 1.
[8] *Id*.

CLASS ACTION COMPLAINT                8

PII. To be sure, collection, maintaining, and protecting PII is vital to many of Bosley's business purposes. Bosley has acknowledged through conduct and statements that the misuse or inadvertent disclosure of PII can pose major privacy and financial risks to impacted individuals, and that under state law they may not disclose and must take reasonable steps to protect PII from improper release or disclosure.

29.    Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite their own acknowledgment of its duties to keep PII private and secure, Bosley failed to take appropriate steps to protect the PII of Plaintiffs and the proposed Class from being compromised.

30.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[9] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[10]

31.    The ramifications of Bosley's failure to keep its consumers' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security numbers and driver's licenses, fraudulent use of that information and damage to victims may continue for years.

### *Value of Personal Identifiable Information*

32.    The PII of consumers remains of high value to criminals, as evidenced

---

[9] 17 C.F.R. § 248.201 (2013).
[10] *Id.*

by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[11] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web.[12] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[13]

33.     Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can

---

[11] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[12] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

[13] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

CLASS ACTION COMPLAINT                    10

cause a lot of problems.[14]

34.     What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

35.     Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[15]

36.     Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts. The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, name, date of birth, address, and potentially other financial information.

37.     This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security

---

[14] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf.

[15] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), *available at*: http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

CLASS ACTION COMPLAINT                    11

numbers are worth more than 10x on the black market."[16]

38.    Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

39.    The fraudulent activity resulting from the Data Breach may not come to light for years.

40.    There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[17]

41.    At all relevant times, Bosley knew, or reasonably should have known, of the importance of safeguarding its current and former patients' PII, including Social Security numbers and driver's licenses, and of the foreseeable consequences that would occur if Bosley's data security system was breached, including, specifically, the significant costs that would be imposed on Bosley's patients as a result of a breach.

42.    Plaintiffs and Class Members now face years of constant surveillance

---

[16] Time Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), *available at*: https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

[17] *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf.

of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

43.    Bosley was, or should have been, fully aware of the unique type and the significant volume of data on Bosley's systems, amounting to thousands of individuals' detailed, personal, information and thus, the significant number of individuals who would be harmed by the loss of unencrypted data.

44.    To date, Bosley has offered its consumers only one year of identity monitoring service. The offered services are inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

45.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Bosley's failure to implement or maintain adequate data security measures for its current and former customers and patients.

***Bosley Failed to Comply with FTC Guidelines***

46.    Federal and State governments have likewise established security standards and issued recommendations to temper data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[18]

47.    In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental

---

[18] Federal Trade Commission, *Start With Security, available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf

CLASS ACTION COMPLAINT                    13

data security principles and practices for business.[19] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

48.     The FTC recommends that companies verify that third-party service providers have implemented reasonable security measures.[20]

49.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer and consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

50.     Bosley was at all times fully aware of its obligation to protect the personal and financial data of consumers, including Plaintiffs and members of the Classes. Bosley was also aware of the significant repercussions if it failed to do so.

51.     Bosley's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—including Plaintiffs' and Class Members' Social Security numbers, driver's license numbers, financial/payment card information, and other highly sensitive and confidential information— constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

---

[19]Federal Trade Commission, *Protecting Personal Information: A Guide for Business, available at*: https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business
[20] FTC, *Start With Security*, *supra* note 18.

***Bosley's Data Breach Caused Harm and will Result in Further Harm***

52.     The ramifications of Bosley's failure to keep Plaintiffs' and Class members' data secure are severe.

53.     Consumer victims of data breaches are much more likely to become victims of identity fraud. This conclusion is based on an analysis of four years of data that correlated each year's data breach victims with those who also reported being victims of identity fraud.[21]

54.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[22] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person."[23]

55.     PII is a valuable commodity to identity thieves once the information has been compromised. As the FTC recognizes, once identity thieves have personal information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[24]

56.     Identity thieves can use personal information, such as that of Plaintiffs and members of the classes, which Bosley failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as: immigration fraud; obtaining a driver's license or identification card in the victim's name but with another's picture; using the victim's information to obtain government benefits; or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

---

[21] 2014 LexisNexis True Cost of Fraud Study, https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf.

[22] 17 C.F.R § 248.201 (2013).

[23] *Id.*

[24] Federal Trade Commission, *Warning Signs of Identity Theft, available at*: https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft.

57.     Javelin Strategy and Research reports that identity thieves have stolen $112 billion from 2010 to 2016—which has certainly increased since with the proliferation of data breaches.[25]

58.     Reimbursing a consumer for a financial loss due to fraud does not make that individual whole again. On the contrary, identity theft victims must spend numerous hours and their own money repairing the impact to their credit. After conducting a study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that identity theft victims "reported spending an average of about 7 hours clearing up the issues" and resolving the consequences of fraud in 2014.[26]

59.     An independent financial services industry research study conducted for BillGuard—a private enterprise that automates the consumer task of finding unauthorized transactions that might otherwise go undetected—calculated the average per-consumer cost of all unauthorized transactions at roughly US $215 per cardholder incurring these charges,[27] some portion of which could go undetected and thus must be paid entirely out-of-pocket by consumer victims of account or identity misuse. This figure is based on misuse of cardholder information, which is less valuable than the PII at issue here—including full names, dates of birth, Social Security numbers, and other information which can easily be used to open credit

---

[25] Javelin, *2016 Identity Fraud: Fraud Hits an Inflection Point* (February 2, 2016), *available a*t: https://www.javelinstrategy.com/coverage-area/2016-identity-fraud-fraud-hits-inflection-point

[26] Victims of Identity Theft, 2014 (Sept. 2015) *available at*: http://www.bjs.gov/content/pub/pdf/vit14.pdf.

[27] Hadley Malcom, *Consumers rack up $14.3 billion in gray charges, research study commissioned for BillGuard by Aite Research, USA Today* (July 25, 2013), *available at*: https://www.usatoday.com/story/money/personalfinance/2013/07/25/consumers-unwanted-charges-in-billions/2568645/.

accounts and other financial accounts to perpetrate further fraud, increasing the amount of average damages.

60.     There may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[28]

61.     Thus, Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights.

***Plaintiff Hashemi's Experience***

62.     On or about 2018 and 2019, Plaintiff Ken Hashemi was a Bosley customer in New York.   He was required to supply Bosley with his personal identifiable information, including but not limited to his name, address, date of birth, Social Security number, driver's license number, credit card number (along with expiration date and CVV code), telephone number and email address, to participate in Bosley's services.

63.     Mr. Hashemi received the *Notice of Data Breach*, dated January 26, 2021, on or about that date.

64.     Mr. Hashemi has experienced an increase in the number of phishing texts he receives on his cellphone since in or about September 2020.

---

[28] GAO, Report to Congressional Requesters, at 29 (June 2007), *available at*: http://www.gao.gov/new.items/d07737.pdf.

65.     As a result of the Data Breach notice, Mr. Hashemi spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the *Notice of Data Breach*, communicating with Bosley representatives, exploring credit monitoring and identity theft insurance options, signing up for the credit monitoring supplied by Bosley, reporting the breach to the IRS and FTC, and self-monitoring his accounts. He also canceled the credit card he used to pay for Bosley's services. This time has been lost forever and cannot be recaptured.

66.     Mr. Hashemi is very careful about sharing PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

67.     Mr. Hashemi stores any and all documents containing PII in a safe and secure location, and shreds any documents he receives in the mail that contain any PII, or that may contain any information that could otherwise be used to compromise his credit card accounts and identity. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

68.     Mr. Hashemi suffered actual injury and damages in paying money to Bosley for services before the Data Breach; expenditures which he would not have made had Bosley disclosed that it lacked data security practices adequate to safeguard PII.

69.     Mr. Hashemi suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Bosley for the purpose of providing him services, which was compromised in and as a result of the Data Breach.

70.     Mr. Hashemi suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, especially his Social Security number.

71.     Mr. Hashemi has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen PII, especially his Social Security number, being placed in the hands of unauthorized third-parties and possibly criminals.

72.     Mr. Hashemi has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Bosley's possession, is protected and safeguarded from future breaches.

***Plaintiff Altes' Experience***

73.     On or about August 21, 2012, Plaintiff Steve Altes was a Bosley customer in Beverly Hills, California.  He was required to supply Bosley with his personal identifiable information, including but not limited to his name, address, date of birth, Social Security number, driver's license number, credit card number (along with expiration date and CVV code), telephone number and email address, to participate in Bosley's services.

74.     Mr. Altes received the Notice of Data Breach, dated January 26, 2021, on or about that date.

75.     As a result of the Data Breach notice, Mr. Altes spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, communicating with Bosley representatives, signing up for the credit monitoring supplied by Bosley, reporting the breach to the IRS and FTC, and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

76.     Mr. Altes is very careful about sharing PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

77.     Mr. Altes stores any and all documents containing PII in a safe and secure location, and destroys any documents he receives in the mail that contain any

PII, or that may contain any information that could otherwise be used to compromise his credit card accounts and identity. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

78.     Mr. Altes suffered actual injury and damages in paying money to Bosley for its services before the Data Breach; expenditures which he would not have made had Bosley disclosed that it lacked data security practices adequate to safeguard his PII.

79.     Mr. Altes suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that they entrusted to Bosley, which was compromised in and as a result of the Data Breach.

80.     Mr. Altes suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, especially his driver's license number, financial account information, and Social Security number.

81.     Mr. Altes has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his lost PII, especially his Social Security number, being placed in the hands of unauthorized third-parties and possibly criminals.

82.     Mr. Altes has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Bosley's possession, is protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

83.     Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

84.     The Nationwide Class that Plaintiffs seek to represent is defined as

follows:

> All persons residing in the United States whose PII was compromised in the data breach announced by Bosley on or about January 26, 2021 (the "Nationwide Class").

85.   The California Subclass is defined as follows:

> All persons residing in California whose PII was compromised in the data breach announced by Bosley on or about January 26, 2021 (the "California Subclass").

86.   The above classes are herein referred to as the "Classes."

87.   Excluded from the Classes are the following individuals and/or entities: Bosley and Bosley's employees, parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Bosley has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

88.   Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

89.   Numerosity, Fed. R. Civ. P. 23(a)(1): Classes are so numerous that joinder of all members is impracticable. Bosley has identified thousands of consumers whose PII may have been improperly accessed in the Data Breach, and the Classes are apparently identifiable within Bosley's records.

90.   Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

a. Whether and to what extent Bosley had a duty to protect the PII of Plaintiffs and Class Members;

b. Whether Bosley had respective duties not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

c. Whether Bosley had respective duties not to use the PII of Plaintiffs and Class Members for non-business purposes;

d. Whether Bosley failed to adequately safeguard the PII of Plaintiffs and Class Members;

e. Whether and when Bosley actually learned of the Data Breach;

f. Whether Bosley adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g. Whether Bosley violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

h. Whether Bosley failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Bosley adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Bosley engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

k. Whether Plaintiffs and Class Members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of Bosley's wrongful conduct;

l. Whether Plaintiffs and Class Members are entitled to restitution as a result of Bosley's wrongful conduct;

m. Whether Plaintiffs and Class Members are entitled to injunctive relief to

redress the imminent and currently ongoing harm faced as a result of the Data Breach;

n. Whether Bosley violated the California Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.*;

o. Whether Bosley violated the California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100, *et seq.*;

91. <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Bosley's misfeasance.

92. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Bosley has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Bosley's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Bosley's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

93. <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

94. <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class

litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Bosley. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

95.    The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Bosley would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

96.    The litigation of the claims brought herein is manageable. Bosley's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant

manageability problems with prosecuting this lawsuit as a class action.

97.    Adequate notice can be given to Class Members directly using information maintained in Bosley's records.

98.    Unless a Class-wide injunction is issued, Bosley may continue in its failure to properly secure the PII of Class Members, Bosley may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Bosley may continue to act unlawfully as set forth in this Complaint.

99.    Further, Bosley has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

100.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.   Whether Bosley owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.   Whether Bosley breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.   Whether Bosley failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.   Whether an implied contract existed between Bosley on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

e.  Whether Bosley breached the implied contract;

f.  Whether Bosley adequately, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.  Whether Bosley failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.  Whether Bosley engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members; and,

i.  Whether Class Members are entitled to actual damages, statutory damages, injunctive relief, and/or punitive damages as a result of Bosley's wrongful conduct.

## COUNT I
### Negligence
**(On Behalf of Plaintiffs and the Nationwide Class,
or in the alternative, on behalf of the Subclasses)**

101.  Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 100.

102.  As a condition of their using the services of Bosley, consumers were obligated to provide Bosley with certain PII, including their name, date of birth, address, Social Security number, driver's license, financial/payment card information (including expiration date and CVV code), telephone number and email address.

103.  Plaintiffs and Class Members entrusted their PII to Bosley on the premise and with the understanding that Bosley would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

104.  Bosley has full knowledge of the sensitivity of the PII and the types of

harm that Plaintiffs and Class Members could and would suffer if the PII were wrongfully disclosed.

105. Bosley knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of their consumers' PII involved an unreasonable risk of harm to Plaintiffs and Class Members, even if the harm occurred through the criminal acts of a third party.

106. Bosley had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Bosley's security protocols to ensure that Plaintiffs' and Class Members' information in Bosley's possession was adequately secured and protected.

107. Bosley also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII.

108. A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class Members was reasonably foreseeable, particularly in light of Bosley's inadequate security practices and previous breach incidents involving Bosley consumers' PII on stolen equipment.

109. Plaintiffs and the Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Bosley knew of should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Bosley's systems.

110. Bosley's own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Bosley's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein.

Bosley's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiffs' and Class Members' PII, including basic encryption techniques freely available to Bosley.

111.   Plaintiffs and the Class Members had no ability to protect their PII that was in, and possibly remains in, Bosley's possession.

112.   Bosley was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

113.   Bosley had and continues to have a duty to adequately disclose that the PII of Plaintiffs and Class Members within Bosley's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PII by third parties.

114.   Bosley had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and Class Members.

115.   Bosley has admitted that the PII of Plaintiffs and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

116.   Bosley, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and Class Members during the time the PII was within Bosley's possession or control.

117.   Bosley improperly and inadequately safeguarded the PII of Plaintiffs and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

118.   Bosley failed to heed industry warnings and alerts to provide adequate

safeguards to protect consumers' PII in the face of increased risk of theft.

119.    Bosley, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its consumers' PII.

120.    Bosley, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and Class Members the existence and scope of the Data Breach.

121.    But for Bosley's wrongful and negligent breach of duties owed to Plaintiffs and Class Members, the PII of Plaintiffs and Class Members would not have been compromised.

122.    There is a close causal connection between Bosley's failure to implement security measures to protect the PII of Plaintiffs and Class Members and the harm suffered or risk of imminent harm suffered by Plaintiffs and the Class. Plaintiffs' and Class Members' PII was lost and accessed as the proximate result of Bosley's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

123.    Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Bosley, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Bosley's duty in this regard.

124.    Bosley violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Bosley's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and Class Members.

125.   Bosley's violation of Section 5 of the FTC Act constitutes negligence *per se*.

126.   Plaintiffs and Class members are within the class of persons that the FTC Act was intended to protect.

127.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

128.   As a direct and proximate result of Bosley's negligence and negligence *per se*, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Bosley's possession and is subject to further unauthorized disclosures so long as Bosley fails to undertake appropriate and adequate measures to protect the PII of consumers in their continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (ix) the diminished value of Bosley's goods and

services they received.

129.   As a direct and proximate result of Bosley's negligence, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

130.   Additionally, as a direct and proximate result of Bosley's negligence and negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Bosley's possession and is subject to further unauthorized disclosures so long as Bosley fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

## COUNT II
**Breach of Confidence**
**(On Behalf of Plaintiffs and the Nationwide Class,**
**or in the alternative, on behalf of the Subclasses)**

131.   Plaintiffs re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 100.

132.   At all times during Plaintiffs' and Class Members' interactions with Bosley, Bosley was fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' PII that Plaintiffs and Class Members provided to Bosley.

133.   As alleged herein and above, Bosley's relationship with Plaintiffs and Class Members was governed by terms and expectations that Plaintiffs' and Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

134.   Plaintiffs and Class Members provided their respective PII to Bosley with the explicit and implicit understandings that Bosley would protect and not permit the PII to be disseminated to any unauthorized third parties.

135.   Plaintiffs and Class Members also provided their respective PII to Defendant with the explicit and implicit understandings that Bosley would take precautions to protect that PII from unauthorized disclosure.

136.   Bosley voluntarily received in confidence Plaintiffs' and Class Members' PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

137.   Due to Bosley's failure to prevent and avoid the Data Breach from occurring, Plaintiffs' and Class Members' PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

138.   As a direct and proximate cause of Bosley's actions and/or omissions, Plaintiffs and Class Members have suffered damages.

139.   But for Bosley's disclosure of Plaintiffs' and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Bosley's Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' PII, as well as the resulting damages.

140.   The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of Bosley's unauthorized disclosure of Plaintiffs' and Class Members' PII. Bosley knew or should have known its methods of accepting and securing Plaintiffs' and Class Members' PII was inadequate as it relates to, at the very least, disposal of servers and other equipment containing Plaintiffs' and Class Members' PII.

141.   As a direct and proximate result of Bosleys' breach of its confidence with Plaintiffs and Class Members, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss

of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of consumers and former consumers in its continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (ix) the diminished value of Bosley's goods and services they received.

142.   As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

### COUNT III
**Violation of the California Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq*. – Unlawful Business Practices**
**(On Behalf of Plaintiff Steve Altes and the California Subclass)**

143.   Plaintiff Steve Altes and the California Subclass (the "Plaintiffs" for this count) re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 100.

144.   Bosley has violated Cal. Bus. and Prof. Code § 17200, *et seq*., by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the California Class.

145.   Bosley engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and California Subclass Members' PII with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and California Subclass Members' PII in an unsecure environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Bosley to take reasonable methods of safeguarding the PII of Plaintiffs and the California Subclass Members.

146.   In addition, Bosley engaged in unlawful acts and practices by failing to disclose the Data Breach to California Subclass Members in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

147.   As a direct and proximate result of Bosley's unlawful practices and acts, Plaintiffs and the California Subclass Members were injured and lost money or property, including but not limited to the price received by Bosley for the services, the loss of California Subclass Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

148.   Bosley knew or should have known that Bosley's computer systems and data security practices were inadequate to safeguard California Subclass Members' PII and that the risk of a data breach or theft was highly likely, especially given Bosley's inability to adhere to basic encryption standards and data disposal methodologies. Bosley's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Subclass.

149.   California Subclass Members seek relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiffs and California Subclass Members of money or property that Bosley may have acquired by means of Bosley's unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Bosley because of Bosley's unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT IV
### Violation of California's Unfair Competition Law,
### Cal. Bus. & Prof. Code § 17200, *et seq.* – Unfair Business Practices
### (On Behalf of Plaintiff Steve Altes and the California Subclass)

150.   Plaintiff Steve Altes and the California Subclass (the "Plaintiffs," for this count) re-allege and incorporate by reference herein all of the allegations contained in paragraphs 1 through 100.

151.   Bosley engaged in unfair acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and California Subclass Members' PII with knowledge that the information would not be adequately protected; by storing Plaintiffs' and California Subclass Members' PII in an unsecure electronic

environment; and by failing to properly dispose of equipment containing sensitive PII. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and California Subclass Members. They were likely to deceive the public into believing their PII was securely stored, when it was not. The harm these practices caused to Plaintiffs and the California Subclass Members outweighed their utility, if any.

152.   Bosley engaged in unfair acts and practices with respect to the provision of services by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect California Subclass Members' PII from further unauthorized disclosure, release, data breaches, and theft. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and California Subclass Members. They were likely to deceive the public into believing their PII was securely stored, when it was not. The harm these practices caused to Plaintiffs and the California Subclass Members outweighed their utility, if any.

153.   As a direct and proximate result of Bosley's acts of unfair practices, Plaintiffs and the California Subclass Members were injured and lost money or property, including but not limited to the price received by Bosley for the services, the loss of California Subclass Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

154.   Bosley knew or should have known that Bosley's computer systems and data security practices were inadequate to safeguard California Subclass Members' PII and that the risk of a data breach or theft was highly likely, including Bosley's failure to properly encrypt and dispose of equipment containing sensitive PII. Bosley's actions in engaging in the above-named unlawful practices and acts

were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Subclass.

155.   California Subclass Members seek relief under Cal. Bus. & Prof. Code § 17200, *et seq*., including, but not limited to, restitution to Plaintiffs and California Subclass Members of money or property that Bosley may have acquired by means of Bosley's unfair business practices, restitutionary disgorgement of all profits accruing to Bosley because of Bosley's unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT V
**Violation of the California Consumer Privacy Act**
**(Cal. Civ. Code §§ 1798.100, *et seq*. (§ 1798.150(a)))**
**(On Behalf of Plaintiff Steve Altes and the California Subclass)**

156.   Plaintiff Altes re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 100.

157.   Defendant violated section 1798.150(a) of the California Consumer Privacy Act ("CCPA") by failing to prevent Plaintiff Altes' and California Subclass members' nonencrypted and nonredacted PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff and California Subclass members.

158.   As a direct and proximate result of Defendant's acts, Plaintiff Altes' and the California Subclass members' PII was subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of the duty.

159.   As a direct and proximate result of Defendant's acts, Plaintiff Altes and the California Subclass members were injured and lost money or property, including

but not limited to the price received by Defendant for the products and services, the loss of California Subclass members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

160.   Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard California Subclass members' PII and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff and the California Subclass members.

161.   Bosley is organized or operated for the profit or financial benefit of its owners/shareholders, with annual gross revenues over $30 million. Bosley collects consumers' PII as defined in Cal. Civ. Code § 1798.140.

162.   Plaintiff Altes and California Subclass members seek relief under § 1798.150(a), including, but not limited to, recovery of actual damages; injunctive or declaratory relief; any other relief the court deems proper; and attorneys' fees and costs (under Cal. Code Civ. Proc. § 1021.5).

163.   Plaintiff Altes and the California Subclass members do not allege statutory damages at this time under Cal. Civ. Code § 1798.150, but reserve the right to amend this Complaint as of right to seek statutory damages and relief under Cal. Civ. Code §§ 1798.100, *et seq.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members, requests judgment against the Bosley and that the Court grant the following:

A.   For an Order certifying the Nationwide Classes or, in the alternative, the Subclasses as defined herein, and appointing Plaintiffs and their Counsel to represent the certified Classes;

B.   For equitable relief enjoining Bosley from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and the Class Members' PII, and from refusing to issue prompt, complete, any accurate disclosures to the Plaintiffs and Class members;

C.   For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and class members, including but not limited to an order:

   i.   prohibiting Bosley from engaging in the wrongful and unlawful acts described herein;

   ii.  requiring Bosley to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii. requiring Bosley to delete, destroy, and purge the personal identifying information of Plaintiffs and class members unless Bosley can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and class members;

   iv.  requiring Bosley to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiffs and class members' personal identifying information;

   v.   prohibiting Bosley from maintaining Plaintiffs' and class members' personal identifying information on a cloud-based database;

vi.   requiring Bosley to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Bosley's systems on a periodic basis, and ordering Bosley to promptly correct any problems or issues detected by such third-party security auditors;

vii.   requiring Bosley to engage independent third-party security auditors and internal personnel to run automated security monitoring;

viii.   requiring Bosley to audit, test, and train its security personnel regarding any new or modified procedures;

ix.   requiring Bosley to segment data by, among other things, creating firewalls and access controls so that if one area of Bosley's network is compromised, hackers cannot gain access to other portions of Bosley's systems;

x.   requiring Bosley to conduct regular database scanning and securing checks;

xi.   requiring Bosley to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiffs and class members;

xii.   requiring Bosley to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it

occurs and what to do in response to a breach;

xiii.   requiring Bosley to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Bosley's policies, programs, and systems for protecting personal identifying information;

xiv.   requiring Bosley to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Bosley's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Bosley to meaningfully educate all class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Bosley to implement logging and monitoring programs sufficient to track traffic to and from Bosley's servers; and

xvii.   for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Bosley's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.   For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.      For an award of punitive damages;

F.      For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.      For prejudgment interest on all amounts awarded; and

H.      Such other and further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand that this matter be tried before a jury.

Date: February 1, 2021                    Respectfully Submitted,

                                          */s/ M. Anderson Berry*
                                          M. ANDERSON BERRY (SBN 262879)
                                          **CLAYEO C. ARNOLD,**
                                          **A PROFESSIONAL LAW CORP.**
                                          865 Howe Avenue
                                          Sacramento, CA 95825
                                          (916) 777-7777
                                          aberry@justice4you.com