M. Anderson Berry (SBN 262879)
Leslie Guillon (SBN 222400)
**CLAYEO C. ARNOLD,**
**A PROFESSIONAL LAW CORP.**
865 Howe Avenue
Sacramento, CA 95825
Telephone: (916)777-7777
Facsimile: (916) 924-1829
aberry@justice4you.com
lguillion@justice4you.com

Jeffrey S. Goldenberg (*pro hac vice* to be filed)
**GOLDENBERG SCHNEIDER, LPA**
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: 513.345.8297
jgoldenberg@g-legal.com

*Attorneys for Plaintiffs*

[additional counsel listed on signature page]

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN HASHEMI, STEVE ALTES, SANDRA JOHNSON-FOSTER, GREGORY BOUTE, RAFAEL ARTIME, and JOHN BOWDEN as individuals and all others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>BOSLEY, INC.,<br><br>　　　　　Defendant. | Case No.: 2:21-cv-00946-PSG (RAOx)<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

　　　Plaintiffs Ken Hashemi, Steve Altes, Sandra Johnson-Foster, Gregory Boute, Rafael Artime, and John Bowden ("Plaintiffs") bring this First Amended Class Action Complaint against Bosley, Inc. ("Bosley" or "Defendant"), as individuals

and on behalf of all others similarly situated, and allege, upon personal knowledge as to their own actions and their counsels' investigations, and upon information and belief as to all other matters, as follows:

## I. INTRODUCTION

1. Plaintiffs bring this class action against Bosley to seek damages for Plaintiffs and the class of consumers who they seek to represent, as well as other equitable relief, including, without limitation, injunctive relief designed to protect the very sensitive information of Plaintiffs and other consumers. This action arises from Bosley's failure to properly secure and safeguard personal identifiable information, including without limitation, unencrypted and unredacted names, Social Security numbers, medical information, financial account and/or payment card numbers, and driver's license numbers (collectively, "personal identifiable information" or "PII"). Additional PII may include addresses, dates of birth, email addresses, and supplemental payment card information including expiration dates and CVV verification numbers.

2. Plaintiffs also allege Bosley failed to provide timely, accurate and adequate notice to Plaintiffs and similarly situated Bosley customers ("Class Members") that their PII had been lost and precisely what types of information was unencrypted and in the possession of unknown third parties.

3. The original Bosley hair clinic opened in Beverly Hills, California in 1974. Still headquartered in Beverly Hills, Bosley now has locations across the nation and internationally. Bosley offers products and services nationally and internationally through its websites and other means. The company's estimated 2020 revenues exceed $30 million.

4. On or about January 26, 2021, Bosley notified state Attorneys General and many of its customers/patients about a widespread data breach involving sensitive PII of over 100,000 individuals. Bosley explained that, on or about September 24, 2020, Bosley allowed its network to fall victim to a "ransomware

infection" beginning on or about August 17, 2020 (the "Data Breach"). Bosley's investigation revealed its "data sources" were accessed by unauthorized, unknown third-parties, exposing the PII detailed above.

5.      Plaintiffs in this action were customers/patients of Bosley, and were not notified about the Data Breach until on or about January 26, 2021. Bosley fails to explain why it took the company over four months to alert consumers that their sensitive PII had been exposed. As a result of this delayed response, Plaintiffs and Class Members had no idea their PII had been compromised, and that they were, and continue to be, at significant risk to identity theft and various other forms of personal, social, and financial harm.

6.      This unencrypted, unredacted PII was compromised due to Bosley's negligent and/or careless acts and omissions and the utter failure to protect consumers' sensitive data. Hackers obtained their PII because of its value in exploiting and stealing the identities of Plaintiffs and Class Members. The risk to these consumers' will remain for their respective lifetimes.

7.      Plaintiffs bring this action on behalf of all persons whose PII was compromised as a result of Bosley's failure to: (i) adequately protect consumers' PII; (ii) warn consumers of its inadequate information security practices; and (iii) effectively monitor Bosley's network for security vulnerabilities and incidents. Bosley's conduct amounts to negligence and violates federal and state statutes.

8.      Plaintiffs and Class Members have suffered injury as a result of Bosley's conduct. These injuries include: (i) lost or diminished value of PII; (ii) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (iii) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach, including but not limited to lost time, (iv) deprivation of rights they possess under the California Unfair Competition Law (Cal. Business & Professions Code §§ 17200, *et seq.*), the California Consumer Privacy Act (Cal.

Civ. Code §§ 1798.100, *et seq*.) the Confidentiality of Medical Information Act (Cal. Civ. Code §§ 56, *et seq*.), the California Consumer Records Act (Cal. Civ. Code § 1798.80, *et seq*.) and, New York General Business Law § 349; and (v) the continued and certainly an increased risk to their PII, which remains in Bosley's possession and is subject to further unauthorized disclosures so long as Bosley fails to undertake appropriate and adequate measures to protect the PII. This risk will remain for the lifetimes of Plaintiffs and Class Members.

9.     Bosley disregarded the rights of Plaintiffs and Class Members by intentionally, willfully, recklessly, or at the very least negligently failing to take and implement adequate and reasonable measures to ensure that its customers' and patients' PII was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As the result, the PII of Plaintiffs and Class Members was compromised through disclosure to an unknown and unauthorized third party. Plaintiffs and Class Members have a continuing interest in ensuring that their information is and remains safe, and they should be entitled to injunctive and other equitable relief.

## II. PARTIES

10.     Plaintiff Ken Hashemi is a Citizen of Massachusetts residing in Essex County, Massachusetts. Mr. Hashemi received Bosley's *Notice of Data Breach*, dated January 26, 2021, on or about that date. If Mr. Hashemi had known that Bosley would not adequately protect his PII, he would not have allowed Bosley access to this sensitive and private information.

11.     Plaintiff Steve Altes is a Citizen of California residing in Los Angeles County, California. Mr. Altes received Bosley's *Notice of Data Breach*, dated January 26, 2021, on or about that date. Mr. Altes received an updated Notice of Data Breach, dated February 26, 2021, on or about March 2, 2021, that added

"medical information" as yet another sensitive part of his PII that Defendant allowed hackers to steal from its systems. If Mr. Altes had known that Bosley would not adequately protect his PII, he would not have allowed Bosley access to this sensitive and private information.

12.     Sandra Johnson-Foster is a citizen of Florida residing in Broward County, Florida. She received Bosley's *Notice of Data Breach*, dated January 26, 2021, on or about that date. If Ms. Johnson-Foster had known that Bosley would not adequately protect her PII, she would not have allowed Bosley access to this sensitive and private information.

13.     Gregory Boute is a Citizen of Idaho residing in Ada County, Idaho. Mr. Boute received Bosley's *Notice of Data Breach*, dated January 26, 2021, on or about that date. If Mr. Boute had known that Bosley would not adequately protect his PII, he would not have allowed Bosley access to this sensitive and private information.

14.     Rafael Artime is a Citizen of Texas residing in Harris County, Texas. He received Bosley's *Notice of Data Breach*, dated January 26, 2021, on or about that date. Mr. Artime received an updated *Notice of Data Breach*, dated February 26, 2021, on or about March 1, 2021, that added "medical information" as yet another sensitive part of his PII that Defendant allowed hackers to steal from its systems. If Mr. Artime had known that Bosley would not adequately protect his PII, he would not have allowed Bosley access to this sensitive and private information.

15.     John Bowden is a resident of Astoria, New York and is (and was at all relevant times) a citizen of the State of New York. Mr. Bowden purchased hair implants from Bosley in February 2019.  In order to purchase hair implants and be accepted for a two-year payment plan, Mr. Bowden provided his name, Social Security number, financial account information, address, and phone number to Bosley. Mr. Bowden was notified of Bosley's Data Breach and his PII being

compromised upon receiving a notice letter dated January 26, 2021. If Mr. Bowden had known that Bosley would not adequately protect his PII, he would not have provided Bosley with this sensitive and private information.

16.     Defendant Bosley, Inc. is a Delaware corporation with its principal place of business at 9100 Wilshire Boulevard, East Tower Penthouse, Beverly Hills, CA.

17.     The true names and capacities of persons or entities, whether individual, corporate, associate, or otherwise, who may be responsible for some of the claims alleged herein are currently unknown to Plaintiffs. Plaintiffs will seek leave of court to amend this complaint to reflect the true names and capacities of such other responsible parties when their identities become known.

18.     All of Plaintiffs' claims stated herein are asserted against Bosley and any of its owners, predecessors, successors, subsidiaries, agents and/or assigns.

### III. JURISDICTION AND VENUE

19.     This Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount of controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one other Class Member (including, for example, named Plaintiff Ken Hashemi, a citizen of Massachusetts) is a citizen of a state different from Defendant to establish minimal diversity.

20.     The Central District of California has personal jurisdiction over Defendant named in this action because Defendant is headquartered in this District and conducts substantial business in California and this District through its headquarters, offices, and affiliates.

21.     Venue is proper in this District under 28 U.S.C. §1391(b) because Defendant is headquartered in this District and has caused harm to Plaintiffs and Class Members residing in this District.

# IV. FACTUAL ALLEGATIONS

***Background***

22.    Bosley promises that it will protect its members' privacy and remain in compliance with statutory privacy requirements. For example, Bosley states on its website that:

> Bosley places great importance on the security of any Information collected from its patients, clients and visitors. We have implemented technical and organizational measures designed to secure your Personal Information from accidental loss and from unauthorized access, use, alteration, destruction, or disclosure, by encrypting our website and platforms, by reviewing our information collection, storage and processing practices, including physical security measures, to guard against unauthorized access to systems.[1]

23.    Bosley also promises consumers that "Bosley will not share, rent or sell any Personal Information with third parties," and that "Bosley Inc. . . . . respects your privacy. We are committed to ensuring that the information you provide to Bosley on or outside this website and or the information we collect from you is only used in accordance to the terms of this privacy policy."[2]

24.    Regarding medical information, Bosley unequivocally promises customers in the first paragraph of its Privacy Policy that "The confidentiality of the medical records of all Bosley patients has been and continues to be strictly protected. We release medical information regarding one of our patients whenever the patient instructs us to do so, or whenever we are required to do so by legal process."[3] That did not happen here when Bosley allowed Plaintiffs' and Class

---

[1] Ex. 1 (Bosley's Privacy Policy, also *available at*: https://www.bosley.com/privacy-policy/.)

[2] *Id.*

[3] *Id.*

FIRST AMENDED CLASS
ACTION COMPLAINT

7

Members medical information to be accessed and stolen by unauthorized third parties.

25.     Plaintiffs and the Class Members, as current and former Bosley customers/patients, relied on these promises and on this sophisticated entity to keep their sensitive PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information. Consumers, in general, demand security to safeguard their PII, especially when Social Security numbers and other sensitive PII is involved.

26.     Bosley had a duty to adopt reasonable measures to protect Plaintiffs' and Class Members' PII from involuntary disclosure to third parties.

### The Data Breach

27.     Beginning on or about January 26, 2021, Bosley notified many of its customers/patients and state Attorneys General about a widespread data breach involving sensitive PII of certain current and former customers and patients.[4] Bosley explained that, on or about September 24, 2020, Bosley discovered that beginning over a month earlier, on August 17, 2020, it computer systems were infected with malware that encrypted the data and allowed unauthorized, unknown third-parties access to the computer systems. This exposed over 100,000 consumers' PII to criminals.[5]

28.     On September 24, 2020, an investigation commissioned by Bosley determined that there was unauthorized activity on Bosley's network that resulted in unauthorized third-party access to confidential information of Bosley customers.

29.     The confidential information that was accessed without authorization included "personal information of Bosley customers and employees" such as

---

[4] Ex. 2 (Bosley's *Notice of Data Breach*, dated January 26, 2021, archived by the Maine Attorney General.)

[5] *Id.*

FIRST AMENDED CLASS
ACTION COMPLAINT

"names, Social Security numbers, driver license numbers and financial account and/or payment card numbers."

30. On information and belief, the PII was not encrypted prior to the data breach.

31. Upon information and belief, the cyberattack was targeted at Bosley due to its status as a leading hair restoration and transplant company that collects valuable personal, medical, and financial data on its many customers, as well as its employees.

32. Upon information and belief, the cyberattack was expressly designed to gain access to private and confidential data, including (among other things) the PII of Plaintiffs and the Class Members.

33. Bosley sent consumers a *Notice of Data Breach*, informing the recipients of the notice that:

> On August 17, 2020, certain computer systems were infected with malware that encrypted the data on those machines. We quickly identified and contained the incident, restored systems from available backups and launched an investigation with the assistance of a cybersecurity firm which was engaged on our behalf. On September 24, 2020, we learned that an unauthorized party had gained access to some of our systems that contained personal information of our customers.
>
> …
>
> The stored information that was potentially accessible includes your name, Social Security number, driver's license number and/or financial account information.
>
> We encourage you to remain vigilant by reviewing your account statements and credit reports for any unauthorized activity.[6]

---

[6] *Id.*

FIRST AMENDED CLASS
ACTION COMPLAINT

34.    Bosley admitted in the *Notice of Data Breach* and the letters to the Attorneys General that their systems were subjected to unauthorized access beginning on or about August 17, 2020, and there is no indication that the exfiltrated PII was retrieved from the cybercriminals who took it.

35.    Bosley sent some consumers a second *Notice of Data Breach* on or about February 26, 2021, informing the recipients that in addition to losing their "name, Social Security number, driver's license number and/or financial account information," the hackers also accessed and exfiltrated certain consumers' "medical information."[7]

36.    The offer of credit and identity monitoring services, as well as Bosley's suggestion to "remain vigilant" is an acknowledgment by Bosley that the impacted customers are subject to an imminent threat of identity theft and financial fraud.

37.    There is no record of Bosley reporting the loss of "medical information" to the U.S. Department of Health and Human Services.[8]

38.    In response to the Data Breach, Bosley claims, "we have taken steps to help prevent a similar incident in the future including updating user passwords and implementing additional security safeguards and controls in our network infrastructure."[9] Bosley admits "additional security safeguards" were required, and there is no indication whether these steps are adequate to protect Plaintiffs' and Class Members' PII going forward.

39.    Bosley had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep their PII confidential and to protect it from unauthorized access and disclosure.

40.    Plaintiffs and Class Members provided their PII to Bosley with the

---

[7] Ex. 3 (Bosley's *Notice of Data Breach*, dated February 26, 2021.)
[8] *See* https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf.
[9] *Id*.

FIRST AMENDED CLASS
ACTION COMPLAINT

10

reasonable expectation and mutual understanding that Bosley would comply with its obligations and representations to keep such information confidential and secure from unauthorized access.

41.   Bosley failed to uphold its obligations to Plaintiffs and Members of the Class. As a result, Plaintiff and Class Members have been significantly harmed and will be at a high risk of identity theft and financial fraud for many years to come.

42.   Bosley did not use reasonable security procedures and practices appropriate to the nature of the sensitive, unencrypted information it was maintaining, causing Plaintiffs' and Class Members' PII to be exposed.

### Securing PII and Preventing Breaches

43.   Bosley could have prevented this Data Breach by properly encrypting or otherwise protecting their equipment and computer files containing PII. In fact, in the "Security" section of its Privacy Policy, Bosley claims to encrypt PII – but that is apparently not the case.[10] And, as Bosley claims it does, it should have implemented adequate "technical and organizational measures designed to secure your Personal Information from accidental loss and from unauthorized access."[11]

44.   Bosley has acknowledged the sensitive and confidential nature of the PII. To be sure, collection, maintaining, and protecting PII is vital to many of Bosley's business purposes. Bosley has acknowledged through conduct and statements that the misuse or inadvertent disclosure of PII can pose major privacy and financial risks to impacted individuals, and that under state law they may not disclose and must take reasonable steps to protect PII from improper release or disclosure.

---

[10] Ex. 1.

[11] *Id*.

FIRST AMENDED CLASS
ACTION COMPLAINT

***The Ransomware Attack and Data Breach were Foreseeable Risks of which Defendant was on Notice***

45.   It is well known that PII, including social security numbers and financial account information in particular, is an invaluable commodity and a frequent target of hackers.

46.   According to Javelin Strategy & Research, in 2017 alone over 16.7 million individuals were affected by identity theft, causing $16.8 billion to be stolen.

47.   Consumers place a high value not only on their PII, but also on the privacy of that data. This is because identity theft causes "significant negative financial impact on victims" as well as severe distress and other strong emotions and physical reactions.

48.   Consumers are particularly concerned with protecting the privacy of their financial account information and social security numbers, which are the "secret sauce" that is "as good as your DNA to hackers." There are long-term consequences to data breach victims whose social security numbers are taken and used by hackers. Even if they know their social security numbers have been accessed, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of social security number misuse. Even then, the Social Security Administration has warned that "a new number probably won't solve all [] problems … and won't guarantee … a fresh start."

49.   In light of recent high profile data breaches at other industry leading companies, including, Microsoft (250 million records, December 2019), Wattpad (268 million records, June 2020), Facebook (267 million users, April 2020), Estee Lauder (440 million records, January 2020), Whisper (900 million records, March 2020), and Advanced Info Service (8.3 billion records, May 2020), Bosley knew or should have known that its electronic records would be targeted by cybercriminals.

FIRST AMENDED CLASS
ACTION COMPLAINT

50.     Despite the prevalence of public announcements of data breach and data security compromises, and despite its own acknowledgments of data security compromises, and despite their own acknowledgment of its duties to keep PII private and secure, Bosley failed to take appropriate steps to protect the PII of Plaintiffs and the proposed Class from being compromised.

### *At All Relevant Times Bosley Had a Duty to Plaintiff and Class Members to Properly Secure their Private Information*

51.     At all relevant times, Bosley had a duty to Plaintiffs and Class Members to properly secure their PII, encrypt and maintain such information using industry standard methods, train its employees, utilize available technology to defend its systems from invasion, act reasonably to prevent foreseeable harm to Plaintiffs and Class Members, and to promptly notify Plaintiffs and Class Members when Bosley became aware that their PII may have been compromised.

52.     Bosley's duty to use reasonable security measures arose as a result of the special relationship that existed between Bosley, on the one hand, and Plaintiffs and the Class Members, on the other hand. The special relationship arose because Plaintiffs and the Members of the Class entrusted Bosley with their PII when they purchased products, services, or accepted employment from Bosley.

53.     Bosley had the resources necessary to prevent the Data Breach but neglected to adequately invest in security measures, despite its obligation to protect such information. Accordingly, Bosley breached its common law, statutory, and other duties owed to Plaintiffs and Class Members.

54.     Security standards commonly accepted among businesses that store PII using the internet include, without limitation:

a.     Maintaining a secure firewall configuration;

b.     Maintaining appropriate design, systems, and controls to limit user access to certain information as necessary;

FIRST AMENDED CLASS
ACTION COMPLAINT

13

c.     Monitoring for suspicious or irregular traffic to servers;

d.     Monitoring for suspicious credentials used to access servers;

e.     Monitoring for suspicious or irregular activity by known users;

f.     Monitoring for suspicious or unknown users;

g.     Monitoring for suspicious or irregular server requests;

h.     Monitoring for server requests for PII;

i.     Monitoring for server requests from VPNs; and

j.     Monitoring for server requests from Tor exit nodes.

55.    The Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority."[12] The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."[13]

56.    The ramifications of Bosley's failure to keep its consumers' PII secure are long lasting and severe. Once PII is stolen, particularly Social Security and driver's license numbers, fraudulent use of that information and damage to victims may continue for years.

### *The Value of Personal Identifiable Information*

57.    The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50

---

[12] 17 C.F.R. § 248.201 (2013).
[13] *Id.*

FIRST AMENDED CLASS
ACTION COMPLAINT

14

to $200.[14] According to the Dark Web Price Index for 2021, payment card details for an account balance up to $1,000 have an average market value of $150, credit card details with an account balance up to $5,000 have an average market value of $240, stolen online banking logins with a minimum of $100 on the account have an average market value of $40, and stolen online banking logins with a minimum of $2,000 on the account have an average market value of $120.[15]

Criminals can also purchase access to entire company data breaches from $900 to $4,500.[16]

58.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your

---

[14] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

[15] *Dark Web Price Index 2021*, Zachary Ignoffo, March 8, 2021, *available at*: https://www.privacyaffairs.com/dark-web-price-index-2021/

[16] *In the Dark*, VPNOverview, 2019, *available at*: https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.

identity can cause a lot of problems.[17]

59.    What is more, it is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

60.    PII can be used to distinguish, identify, or trace an individual's identity, such as their name, Social Security number, and medical records. This can be accomplished alone, or in combination with other personal or identifying information that is connected or linked to an individual, such as their birthdate, birthplace, and mother's maiden name.[18]

61.    Given the nature of the Data Breach, it is foreseeable that the compromised PII can be used by hackers and cybercriminals in a variety of devastating ways. Indeed, the cybercriminals who possess Class Members' PII can easily obtain Class Members' tax returns or open fraudulent credit card accounts in Class Members' names.

62.    Defendant was aware of the risk of a data breach to its systems because such breaches have dominated the headlines in recent years.[19]    Indeed, data

---

[17] Social Security Administration, *Identity Theft and Your Social Security Number*, *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf.

[18] *See* OFFICE OF MGMT. & BUDGET, OMB MEMORANDUM M-07-16 n. 1.

[19] *See e.g.*, Kelly Tyko, *LabCorp data breach exposes information of 7.7 million consumers*, USATODAY (June 4, 2019), *available at*: https://www.usatoday.com/story/money/2019/06/04/labcorp-data-breach-7-7-million-consumers-affected/1346264001/; Marie C. Baca, *DoorDash data breach affects 4.5 million users*, WASHINGTON POST (Sept. 26, 2019), *available at*: https://www.washingtonpost.com/technology/2019/09/26/doordash-data-breach-affects-million-users/; Emily Flitter and Karen Weise, *Capital One Data Breach Compromises Data of Over 100 Million*, NEW YORK TIMES (July 29, 2019),

breaches increased by 17% in 2019 from 2018.[20]

63.    Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach, because, there, victims can cancel or close credit and debit card accounts.[21] The information compromised in this Data Breach is impossible to "close" and difficult, if not impossible, to change—Social Security number, name, date of birth, address, and potentially other financial information.

64.    To date, Bosley has offered its consumers only one year of identity monitoring service. The offered services are inadequate to protect Plaintiffs and Class Members from the threats they face for years to come, particularly in light of the PII at issue here.

65.    The injuries to Plaintiffs and Class Members were directly and proximately caused by Bosley's failure to implement or maintain adequate data

_available at_: https://www.nytimes.com/2019/07/29/business/capital-one-data-breach-hacked.html; Seth Fiegerman, _Yahoo Says 500 Million Accounts Stolen_, CNN TECH (Sept. 23, 2016), _available at_: http://money.cnn.com/2016/09/22/technology/yahoo-data-breach/; Sara Ashley O'Brien, _Giant Equifax Data Breach: 143 Million People Could Be Affected_, CNN TECH (Sept. 8, 2017), _available at_: https://money.cnn.com/2017/09/07/technology/business/equifax-data-breach/index.html; Jim Finkel and David Henry, _Saks, Lord & Taylor Hit By Payment Card Data Breach_, REUTERS (Apr. 3, 2018), _available at_: https://www.reuters.com/article/legal-us-hudson-s-bay-databreach/saks-lord-taylor-hit-by-payment-card-data-breach-idUSKCN1H91W7; Bill Hutchinson, _87 million Facebook Users To Find Out If Their Personal Data Was Breached_, ABC NEWS (Apr. 9, 2018), _available at_: https://abcnews.go.com/US/87-million-facebook-users-find-personal-data-breached/story?id=54334187.

[20] Meera Jagannathan, _Data breaches soared by 17% in 2019_, MARKETWATCH (Jan. 29, 2020), _available at_: https://www.marketwatch.com/story/data-breaches-soared-by-17-in-2019-but-theres-some-good-news-too-2020-01-29.

[21] _See_ Jesse Damiani, _Your Social Security Number Costs $4 On The Dark Web, New Report Finds_, Forbes, Mar 25, 2020, _available at_: https://www.forbes.com/sites/jessedamiani/2020/03/25/your-social-security-number-costs-4-on-the-dark-web-new-report-finds/?sh=6a44b6d513f1.

security measures for its current and former customers and patients.

**Bosley Failed to Comply with FTC Guidelines**

66.     Federal and State governments have likewise established security standards and issued recommendations to temper data breaches and the resulting harm to consumers and financial institutions. The Federal Trade Commission ("FTC") has issued numerous guides for business highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[22]

67.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[23] The guidelines note businesses should protect the personal consumer and consumer information that they keep, as well as properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.

68.     The FTC recommends that companies verify that third-party service providers have implemented reasonable security measures.[24]

69.     The FTC recommends that businesses:

a.      Identify all connections to the computers where you store sensitive information.

b.      Assess the vulnerability of each connection to commonly known or reasonably foreseeable attacks.

---

[22]   Federal Trade Commission, *Start With Security, available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf

[23]Federal Trade Commission, *Protecting Personal Information: A Guide for Business, available at*:   https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business

[24] FTC, *Start With Security*, *supra* note 18.

c.      Do not store sensitive consumer data on any computer with an internet connection unless it is essential for conducting their business.

d.      Scan computers on their network to identify and profile the operating system and open network services. If services are not needed, they should be disabled to prevent hacks or other potential security problems. For example, if email service or an internet connection is not necessary on a certain computer, a business should consider closing the ports to those services on that computer to prevent unauthorized access to that machine.

e.      Pay particular attention to the security of their web applications—the software used to give information to visitors to their websites and to retrieve information from them. Web applications may be particularly vulnerable to a variety of hack attacks

f.      Use a firewall to protect their computers from hacker attacks while it is connected to a network, especially the internet.

g.      Determine whether a border firewall should be installed where the business's network connects to the internet. A border firewall separates the network from the internet and may prevent an attacker from gaining access to a computer on the network where sensitive information is stored. Set access controls—settings that determine which devices and traffic get through the firewall—to allow only trusted devices with a legitimate business need to access the network. Since the protection a firewall provides is only as effective as its access controls, they should be reviewed periodically.

h.      Monitor incoming traffic for signs that someone is trying to hack in. Keep an eye out for activity from new users, multiple log-in attempts from unknown users or computers, and higher-than-average traffic at unusual times of the day.

i.      Monitor outgoing traffic for signs of a data breach. Watch for unexpectedly large amounts of data being transmitted from their system to an unknown user. If large amounts of information are being transmitted from a business' network, the transmission should be investigated to make sure it is authorized.

70.     The FTC has brought enforcement actions against businesses for failing to protect consumer and consumer data adequately and reasonably, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

71.     Because Class Members entrusted Bosley with their PII, Bosley had, and has, a duty to the Class Members to keep their PII secure.

72.     Plaintiffs and the other Class Members reasonably expected that when they provide PII to Bosley, Bosley would safeguard their PII.

73.     Bosley was at all times fully aware of its obligation to protect the personal and financial data of consumers, including Plaintiffs and members of the Classes. Bosley was also aware of the significant repercussions if it failed to do so.

74.     Bosley's failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—including Plaintiffs' and Class Members' Social Security numbers, driver's license numbers, financial/payment card information, and other highly sensitive and confidential information— constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

FIRST AMENDED CLASS
ACTION COMPLAINT                          20

***Class Members Have Suffered Concrete Injury As A Result Of Defendant's Inadequate Security And The Data Breach It Allowed.***

75.     Class Members reasonably expected that Defendant would provide adequate security protections for their PII, and Class Members provided Defendant with sensitive personal information, including their Social Security numbers and medical information.

76.     Defendant's poor data security deprived Plaintiffs and Class Members of the benefit of their bargain.  When agreeing to pay Defendant for its service, Plaintiffs and other reasonable consumers understood and expected that they were paying for services and data security, when in fact Defendant did not provide the expected data security.  Accordingly, Plaintiffs and Class Members received services that were of a lesser value than what they reasonably expected.  As such, Plaintiffs and the Class Members suffered pecuniary injury.

77.     Cybercriminals capture PII to exploit it; the Class Members are now, and for the rest of their lives will be, at a heightened risk of identity theft.  Plaintiffs have also incurred (and will continue to incur) damages in the form of, *inter alia*, loss of privacy and costs of engaging credit monitoring and identity theft protection services.

78.     The cybercriminals who obtained the Class Members' PII may exploit the information they obtained by selling the data in so-called "dark markets." Having obtained these names, addresses, Social Security numbers, and other PII, cybercriminals can pair the data with other available information to commit a broad range of fraud in a Class Member's name, including but not limited to:

- obtaining employment;
- obtaining a loan;
- applying for credit cards or spending money;
- filing false tax returns;

- obtaining medical care;
- stealing Social Security and other government benefits; and
- applying for a driver's license, birth certificate, or other public document.

79.     In addition, if a Class Member's Social Security number is used to create false identification for someone who commits a crime, the Class Member may become entangled in the criminal justice system, impairing the person's ability to gain employment or obtain a loan.

80.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Data Breach, Plaintiffs and the other Class Members have been deprived of the value of their PII, for which there is a well-established national and international market.

81.     Furthermore, PII has a long shelf-life because it contains different forms of personal information, it can be used in more ways than one, and it typically takes time for an information breach to be detected.[25]

82.     As the University of Illinois at Chicago has reported from its Health Informatics program: "Financial data can quickly become unusable after being stolen, because people can quickly change their credit card numbers.  But medical data are not perishable, which makes them particularly valuable.  Some in the medical industry speculate that medical data could grow to rival or surpass financial data in value on the black market[.]"[26]

83.     Although patients can have corrected information put in their files, it is difficult to get fraudulent information altered by identity thieves removed because providers fear medical liability.

---

[25] *Id.*

[26] *Why Data Security Is The Biggest Concern in Healthcare*, *available at*: https://healthinformatics.uic.edu/blog/why-data-security-is-the-biggest-concern-of-health-care/.

FIRST AMENDED CLASS
ACTION COMPLAINT

84.     Accordingly, Defendant's wrongful actions and/or inaction and the resulting Data Breach have also placed Plaintiffs and the other Class Members at an imminent, immediate, and continuing increased risk of identity theft and identity fraud.[27]   Indeed, "[t]he level of risk is growing for anyone whose information is stolen in a data breach."[28]   Javelin Strategy & Research, a leading provider of quantitative and qualitative research, notes that "[t]he theft of SSNs places consumers at a substantial risk of fraud."[29]   Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported.  Even data that have not yet been exploited by cybercriminals bears a high risk that the cybercriminals who now possess Class Members' PII will do so at a later date or re-sell it.

85.     As a result of the Data Breach, Plaintiffs and Class Members have already suffered damages.

86.     Since the Data Breath, Defendant has represented to the Class Members that there is no evidence that the cybercriminals stole Defendant's data because it has been unable to identify what has been taken, yet it is likely that the cybercriminals did steal data and did so undetected.  EmiSoft, an award-winning malware-protection software company, states that "[a]n absence of evidence of exfiltration should not be construed to be evidence of its absence, especially during

---

[27] *Data Breach Victims More Likely To Suffer Identity Fraud*, INSURANCE INFORMATION INSTITUTE BLOG (February 23, 2012), *available at*: http://www.iii.org/insuranceindustryblog/?p=267.

[28] Susan Ladika, *Study: Data Breaches Pose A Greater Risk*, CREDITCARDS.COM (July 23, 2014), *available at*: http://www.creditcards.com/credit-card-news/data-breach-id-theft-risk-increase-study-1282.php.

[29] THE CONSUMER DATA INSECURITY REPORT: EXAMINING THE DATA BREACH-IDENTITY FRAUD PARADIGM IN FOUR MAJOR METROPOLITAN AREAS, *available at*: https://www.it.northwestern.edu/bin/docs/TheConsumerDataInsecurityReport_by NCL.pdf).

the preliminary stages of the investigation."[30]

87.     In this case, according to Defendant's, cybercriminals had access to Class Members' data on at least August 17, 2020, when Defendant's "computer systems were infected with malware" by unauthorized third parties.

88.     Accordingly, that Defendant has not found evidence of stolen data is not an assurance that the data were not stolen.   Indeed, the likelihood that cybercriminals stole the data covertly is significant, likely, and concerning.

89.     Despite Defendant's inability to identify what/whether data has been stolen, since the Data Breach, Plaintiffs and Class Members have experienced numerous online privacy violations including false payments, bank fraud alerts, and malware.

### Plaintiff Hashemi's Experience

90.     On or about 2018 and 2019, Plaintiff Ken Hashemi was a Bosley customer in New York.   He was required to supply Bosley with his personal identifiable information, including but not limited to his name, address, date of birth, Social Security number, driver's license number, credit card number (along with expiration date and CVV code), telephone number and email address, to participate in Bosley's services.

91.     Mr. Hashemi received the *Notice of Data Breach*, dated January 26, 2021, on or about that date.

92.     Mr. Hashemi has experienced an increase in the number of phishing texts he receives on his cellphone since in or about September 2020.

93.     As a result of the Data Breach notice, Mr. Hashemi spent time dealing with the consequences of the Data Breach, which includes time spent verifying the

---

[30] EmiSoft Malware Lab, *The chance of data being stolen in a ransomware attack is greater than one in ten* (EMISOFT BLOG July 13, 2020), *available at*: https://blog.emsisoft.com/en/36569/the-chance-of-data-being-stolen-in-a-ransomware-attack-is-greater-than-one-in-ten/.

legitimacy of the *Notice of Data Breach*, communicating with Bosley representatives, exploring credit monitoring and identity theft insurance options, signing up for the credit monitoring supplied by Bosley, reporting the breach to the IRS and FTC, and self-monitoring his accounts. He also canceled the credit card he used to pay for Bosley's services. This time has been lost forever and cannot be recaptured.

94.     Mr. Hashemi is very careful about sharing PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

95.     Mr. Hashemi stores any and all documents containing PII in a safe and secure location, and shreds any documents he receives in the mail that contain any PII, or that may contain any information that could otherwise be used to compromise his credit card accounts and identity. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

96.     Mr. Hashemi suffered actual injury and damages in paying money to Bosley for services before the Data Breach; expenditures which he would not have made had Bosley disclosed that it lacked data security practices adequate to safeguard PII.

97.     Mr. Hashemi suffered actual injury in the form of damages and diminution in the value of his PII—a form of intangible property that he entrusted to Bosley for the purpose of providing him services, which was compromised in and as a result of the Data Breach.

98.     Mr. Hashemi suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, especially his Social Security number.

99.     Mr. Hashemi has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen PII, especially his Social Security number, being placed in the hands

FIRST AMENDED CLASS
ACTION COMPLAINT

1  of unauthorized third-parties and possibly criminals.

2    100.   Mr. Hashemi has a continuing interest in ensuring that his PII, which,

3  upon information and belief, remains backed up in Bosley's possession, is

4  protected and safeguarded from future breaches.

5    ***Plaintiff Altes' Experience***

6    101.   On or about August 21, 2012, Plaintiff Steve Altes was a Bosley

7  customer in Beverly Hills, California.  He was required to supply Bosley with his

8  personal identifiable information, including but not limited to his name, address,

9  date of birth, Social Security number, driver's license number, credit card number

10  (along with expiration date and CVV code), telephone number and email address,

11  and medical information to participate in Bosley's services.

12    102.   Mr. Altes received the Notice of Data Breach, dated January 26, 2021,

13  on or about that date. Mr. Altes later received a second notice, dated February 26,

14  2021.

15    103.   As a result of the Data Breach notices, Mr. Altes spent time dealing

16  with the consequences of the Data Breach, which includes time spent verifying the

17  legitimacy of the Notice of Data Breach, communicating with Bosley

18  representatives, signing up for the credit monitoring supplied by Bosley, reporting

19  the breach to the IRS and FTC, and self-monitoring his accounts. This time has

20  been lost forever and cannot be recaptured.

21    104.   Mr. Altes is very careful about sharing PII, and has never knowingly

22  transmitted unencrypted PII over the internet or any other unsecured source.

23    105.   Mr. Altes stores any and all documents containing PII in a safe and

24  secure location, and destroys any documents he receives in the mail that contain

25  any PII, or that may contain any information that could otherwise be used to

26  compromise his credit card accounts and identity. Moreover, he diligently chooses

27  unique usernames and passwords for his various online accounts.

28    106.   Mr. Altes suffered actual injury and damages in paying money to

FIRST AMENDED CLASS
ACTION COMPLAINT

Bosley for its services before the Data Breach; expenditures which he would not have made had Bosley disclosed that it lacked data security practices adequate to safeguard his PII.

107.   Mr. Altes suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Bosley, which was compromised in and as a result of the Data Breach.

108.   Mr. Altes suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, especially his driver's license number, financial account information, and Social Security number.

109.   Mr. Altes has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his lost PII, especially his Social Security number, being placed in the hands of unauthorized third-parties and possibly criminals.

110.   Mr. Altes has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Bosley's possession, is protected and safeguarded from future breaches.

### *Plaintiff Johnson-Foster's Experience*

111.   On or about January 19, 2017 through March 2018, Plaintiff Sandra Johnson-Foster was a Bosley customer in Boca Raton, Florida. She was required to supply Bosley with her personal identifiable information, including but not limited to her name, address, date of birth, Social Security number, driver's license number, credit card number (along with expiration date and CVV code), telephone number, email address, and medical information to participate in Bosley's services.

112.   Ms. Johnson-Foster received the Notice of Data Breach, dated January 26, 2021, on or about that date.

113.   As a result of the Data Breach notices, Ms. Johnson-Foster spent time dealing with the consequences of the Data Breach, which includes time spent

verifying the legitimacy of the Notice of Data Breach, communicating with Bosley representatives, signing up for the credit monitoring supplied by Bosley, reporting the breach to the IRS, and self-monitoring her accounts. This time has been lost forever and cannot be recaptured.

114.    Ms. Johnson-Foster is very careful about sharing PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

115.    Ms. Johnson-Foster stores any and all documents containing PII in a safe and secure location, and destroys any documents she receives in the mail that contain any PII, or that may contain any information that could otherwise be used to compromise his credit card accounts and identity. Moreover, she diligently chooses unique usernames and passwords for her various online accounts.

116.    Ms. Johnson-Foster suffered actual injury and damages in paying money to Bosley for its services before the Data Breach; expenditures which she would not have made had Bosley disclosed that it lacked data security practices adequate to safeguard her PII.

117.    Ms. Johnson-Foster suffered actual injury in the form of damages to and diminution in the value of her PII—a form of intangible property that she entrusted to Bosley, which was compromised in and as a result of the Data Breach.

118.    Ms. Johnson-Foster suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of her privacy, especially her driver's license number, financial account information, medical information and Social Security number.

119.    Ms. Johnson-Foster has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her stolen PII, especially her Social Security number, being placed in the hands of unauthorized third-parties and possibly criminals.

120.    Ms. Johnson-Foster has a continuing interest in ensuring that her PII,

which, upon information and belief, remains backed up in Bosley's possession, is protected and safeguarded from future breaches.

### *Plaintiff Boute's Experience*

121.   On or about November 23, 2011, Plaintiff Gregory Boute was a Bosley customer in Beverly Hills, CA.  He was required to supply Bosley with his personal identifiable information, including but not limited to his name, address, date of birth, Social Security number, driver's license number, credit card number (along with expiration date and CVV code), telephone number and email address, and medical information to participate in Bosley's services.

122.   Mr. Boute received the Notice of Data Breach, dated January 26, 2021, on or about that date.

123.   As a result of the Data Breach notices, Mr. Boute spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, communicating with Bosley representatives, attempting to sign up for the credit monitoring supplied by Bosley, signing up for and paying for LifeLock identity theft protection, reporting the breach to the IRS and FTC, and otherwise self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

124.   Mr. Boute is very careful about sharing PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

125.   Mr. Boute stores any and all documents containing PII in a safe and secure location, and destroys any documents he receives in the mail that contain any PII, or that may contain any information that could otherwise be used to compromise his credit card accounts and identity. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

126.   Mr. Boute suffered actual injury and damages in paying money to Bosley for its services before the Data Breach; expenditures which he would not have made had Bosley disclosed that it lacked data security practices adequate to

safeguard his PII.

127.   Mr. Boute suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Bosley, which was compromised in and as a result of the Data Breach.

128.   Mr. Boute suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, especially his driver's license number, financial account information, and Social Security number.

129.   Mr. Boute has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen PII, especially his Social Security number, being placed in the hands of unauthorized third-parties and possibly criminals.

130.   Mr. Boute has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Bosley's possession, is protected and safeguarded from future breaches.

### *Plaintiff Artime's Experience*

131.   On or about June 21, 2016, Plaintiff Rafael Artime was a Bosley customer in Houston, Texas.  He was required to supply Bosley with his personal identifiable information, including but not limited to his name, address, date of birth, Social Security number, driver's license number, credit card number (along with expiration date and CVV code), telephone number and email address, and medical information to participate in Bosley's services.

132.   Mr. Artime received the Notice of Data Breach, dated January 26, 2021, on or about that date. Mr. Artime later received a second notice, dated February 26, 2021.

133.   As a result of the Data Breach notices, Mr. Artime spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, communicating with Bosley

representatives, signing up for the credit monitoring supplied by Bosley, reporting the breach to the IRS and FTC, and self-monitoring his accounts. This time has been lost forever and cannot be recaptured.

134. Mr. Artime is very careful about sharing PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

135. Mr. Artime stores any and all documents containing PII in a safe and secure location, and destroys any documents he receives in the mail that contain any PII, or that may contain any information that could otherwise be used to compromise his credit card accounts and identity. Moreover, he diligently chooses unique usernames and passwords for his various online accounts.

136. Mr. Artime suffered actual injury and damages in paying money to Bosley for its services before the Data Breach; expenditures which he would not have made had Bosley disclosed that it lacked data security practices adequate to safeguard his PII.

137. Mr. Artime suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Bosley, which was compromised in and as a result of the Data Breach.

138. Mr. Artime suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, especially his driver's license number, financial account information, medical information and Social Security number.

139. Mr. Artime has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen PII, especially his Social Security number, being placed in the hands of unauthorized third-parties and possibly criminals.

140. Mr. Artime has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Bosley's possession, is protected and safeguarded from future breaches.

*Plaintiff Bowden's Experience*

141.   Plaintiff John Bowden purchased hair implants from Bosley in February 2019.  In order to purchase hair implants and be accepted for a two-year payment plan, Mr. Bowden provided his name, Social Security number, financial account information, address, and phone number to Bosley.

142.   Mr. Bowden was notified of Bosley's Data Breach and his PII being compromised upon receiving a notice letter dated January 26, 2021

143.   Since the Data Breach occurred in August 2020, Mr. Bowden has experienced an increase in scam phone calls, which appeared to be placed with the intent to obtain personal information to commit identity theft by way of a social engineering attack.

144.   In particular, in January and February of 2021, Mr. Bowden received multiple calls from individuals claiming to be calling about a package Mr. Bowden ordered from Amazon and requesting more information. However, Mr. Bowden had not ordered anything from Amazon.

145.   Since being notified of the Data Breach and the unauthorized access to his PII, Mr. Bowden has spent approximately twelve hours searching his financial accounts for fraudulent activity, such as unauthorized charges or bank withdrawals, and has thoroughly reviewed his bank statements. In addition, Mr. Bowden has placed a fraud alert with one of the three major credit agencies. This time has been lost forever and cannot be recaptured.

146.   Mr. Bowden is very careful about sharing PII, and has never knowingly transmitted unencrypted PII over the internet or any other unsecured source.

147.   Mr. Bowden stores any and all documents containing PII in a safe and secure location, and destroys any documents he receives in the mail that contain any PII, or that may contain any information that could otherwise be used to compromise his credit card accounts and identity. Moreover, he diligently chooses

FIRST AMENDED CLASS
ACTION COMPLAINT

32

unique usernames and passwords for his various online accounts.

148.   Mr. Bowden suffered actual injury and damages in paying money to Bosley for its services before the Data Breach; expenditures which he would not have made had Bosley disclosed that it lacked data security practices adequate to safeguard his PII.

149.   Mr. Bowden suffered actual injury in the form of damages to and diminution in the value of his PII—a form of intangible property that he entrusted to Bosley, which was compromised in and as a result of the Data Breach.

150.   Mr. Bowden suffered lost time, annoyance, interference, and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of his privacy, especially his driver's license number, financial account information, and Social Security number.

151.   Mr. Bowden has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his stolen PII, especially his Social Security number, being placed in the hands of unauthorized third-parties and possibly criminals.

152.   Mr. Bowden has a continuing interest in ensuring that his PII, which, upon information and belief, remains backed up in Bosley's possession, is protected and safeguarded from future breaches.

## V. CLASS ALLEGATIONS

153.   Plaintiffs bring this nationwide class action on behalf of themselves and on behalf of all others similarly situated pursuant to Rule 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

154.   The Nationwide Class that Plaintiffs seek to represent is defined as follows:

> All persons residing in the United States whose PII was compromised in the data breach first announced by Bosley on or about January 26, 2021 (the "Nationwide Class").

FIRST AMENDED CLASS
ACTION COMPLAINT

33

155.   The California Subclass is defined as follows:

All persons residing in California whose PII was compromised in the data breach first announced by Bosley on or about January 26, 2021 (the "California Subclass").

156.   The Florida Subclass is defined as follows:

All persons residing in Florida whose PII was compromised in the data breach first announced by Bosley on or about January 26, 2021 (the "Florida Subclass").

157.   The New York Subclass is defined as follows:

All persons residing in New York whose PII was compromised in the data breach first announced by Bosley on or about January 26, 2021 (the "New York Subclass").

158.   The above class and subclasses are herein referred to as the "Classes."

159.   Excluded from the Classes are the following individuals and/or entities: Bosley and Bosley's parents, subsidiaries, affiliates, officers and directors, and any entity in which Bosley has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

160.   Plaintiffs reserve the right to modify or amend the definition of the proposed classes before the Court determines whether certification is appropriate.

161.   Numerosity, Fed R. Civ. P. 23(a)(1): Classes are so numerous that joinder of all members is impracticable. Bosley has identified thousands of consumers whose PII may have been improperly accessed in the Data Breach, and the Classes are apparently identifiable within Bosley's records.

162.   Commonality, Fed. R. Civ. P. 23(a)(2) and (b)(3): Questions of law

and fact common to the Classes exist and predominate over any questions affecting only individual Class Members. These include:

    a.  Whether and to what extent Bosley had a duty to protect the PII of Plaintiffs and Class Members;

    b.  Whether Bosley had respective duties not to disclose the PII of Plaintiffs and Class Members to unauthorized third parties;

    c.  Whether Bosley had respective duties not to use the PII of Plaintiffs and Class Members for non-business purposes;

    d.  Whether Bosley failed to adequately safeguard the PII of Plaintiffs and Class Members;

    e.  Whether and when Bosley actually learned of the Data Breach;

    f.  Whether Bosley adequately, promptly, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

    g.  Whether Bosley violated the law by failing to promptly notify Plaintiffs and Class Members that their PII had been compromised;

    h.  Whether Bosley failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

    i.  Whether Bosley adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

    j.  Whether Bosley engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

    k.  Whether Plaintiffs and Class Members are entitled to actual, damages, statutory damages, and/or punitive damages as a result of Bosley's wrongful conduct;

    l.  Whether Plaintiffs and Class Members are entitled to restitution as a result of Bosley's wrongful conduct;

    m. Whether Plaintiffs and Class Members are entitled to injunctive relief

to redress the imminent and currently ongoing harm faced as a result of the Data Breach;

163.   <u>Typicality</u>, Fed. R. Civ. P. 23(a)(3): Plaintiffs' claims are typical of those of other Class Members because all had their PII compromised as a result of the Data Breach, due to Bosley's misfeasance.

164.   <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Bosley has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Bosley's policies challenged herein apply to and affect Class Members uniformly and Plaintiffs' challenge of these policies hinges on Bosley's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

165.   <u>Adequacy</u>, Fed. R. Civ. P. 23(a)(4): Plaintiffs will fairly and adequately represent and protect the interests of the Class Members in that they have no disabling conflicts of interest that would be antagonistic to those of the other Members of the Class. Plaintiffs seek no relief that is antagonistic or adverse to the Members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class Members. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously.

166.   <u>Superiority and Manageability</u>, Fed. R. Civ. P. 23(b)(3): The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action

treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Bosley. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

167.   The nature of this action and the nature of laws available to Plaintiffs and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiffs and Class Members for the wrongs alleged because Bosley would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiffs were exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

168.   The litigation of the claims brought herein is manageable. Bosley's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

169.   Adequate notice can be given to Class Members directly using information maintained in Bosley's records.

170.   Unless a Class-wide injunction is issued, Bosley may continue in its failure to properly secure the PII of Class Members, Bosley may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Bosley may continue to act unlawfully as set forth in this Complaint.

171.   Further, Bosley has acted or refused to act on grounds generally

applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

172.   Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.   Whether Bosley owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

b.   Whether Bosley breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their PII;

c.   Whether Bosley failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

d.   Whether an implied contract existed between Bosley on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

e.   Whether Bosley breached the implied contract;

f.   Whether Bosley adequately, and accurately informed Plaintiffs and Class Members that their PII had been compromised;

g.   Whether Bosley failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.   Whether Bosley engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members; and,

i.   Whether Class Members are entitled to actual damages, statutory

damages, injunctive relief, and/or punitive damages as a result of Bosley's wrongful conduct.

### COUNT I
### Negligence
**(On Behalf of Plaintiffs and the Nationwide Class,
or in the alternative, on behalf of the Subclasses)**

173.   Plaintiffs restate and reallege all of the foregoing Paragraphs 1 through 172 as if fully set forth herein.

174.   As a condition of their using the services of Bosley, consumers were obligated to provide Bosley with certain PII, including their name, date of birth, address, Social Security number, driver's license, financial/payment card information (including expiration date and CVV code), telephone number, email address and medical information.

175.   Plaintiffs and Class Members entrusted their PII to Bosley on the premise and with the understanding that Bosley would safeguard their information, use their PII for business purposes only, and/or not disclose their PII to unauthorized third parties.

176.   Bosley has full knowledge of the sensitivity of the PII and the types of harm that Plaintiffs and Class Members could and would suffer if the PII were wrongfully disclosed.

177.   Bosley knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of their consumers' PII involved an unreasonable risk of harm to Plaintiffs and Class Members, even if the harm occurred through the criminal acts of a third party.

178.   Bosley had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties. This duty includes, among other things, designing, maintaining, and testing Bosley's security protocols to ensure

FIRST AMENDED CLASS
ACTION COMPLAINT

that Plaintiffs' and Class Members' information in Bosley's possession was adequately secured and protected.

179. Bosley also had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class Members' PII.

180. A breach of security, unauthorized access, and resulting injury to Plaintiffs and the Class Members was reasonably foreseeable, particularly in light of Bosley's inadequate security practices and previous breach incidents involving Bosley consumers' PII on stolen equipment.

181. Plaintiffs and the Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Bosley knew of should have known of the inherent risks in collecting and storing the PII of Plaintiffs and the Class, the critical importance of providing adequate security of that PII, and the necessity for encrypting PII stored on Bosley's systems.

182. Bosley's own conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Bosley's misconduct included, but was not limited to, its failure to take the steps and opportunities to prevent the Data Breach as set forth herein. Bosley's misconduct also included its decisions not to comply with industry standards for the safekeeping of Plaintiffs' and Class Members' PII, including basic encryption techniques freely available to Bosley.

183. Plaintiffs and the Class Members had no ability to protect their PII that was in, and possibly remains in, Bosley's possession.

184. Bosley was in a position to protect against the harm suffered by Plaintiffs and Class Members as a result of the Data Breach.

185. Bosley had and continues to have a duty to adequately disclose that the PII of Plaintiffs and Class Members within Bosley's possession might have been compromised, how it was compromised, and precisely the types of data that were compromised and when. Such notice was necessary to allow Plaintiffs and Class Members to take steps to prevent, mitigate, and repair any identity theft and

the fraudulent use of their PII by third parties.

186.    Bosley had a duty to employ proper procedures to prevent the unauthorized dissemination of the PII of Plaintiffs and Class Members.

187.    Bosley has admitted that the PII of Plaintiffs and Class Members was wrongfully lost and disclosed to unauthorized third persons as a result of the Data Breach.

188.    Bosley, through its actions and/or omissions, unlawfully breached its duties to Plaintiffs and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding the PII of Plaintiffs and Class Members during the time the PII was within Bosley's possession or control.

189.    Bosley improperly and inadequately safeguarded the PII of Plaintiffs and Class Members in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

190.    Bosley failed to heed industry warnings and alerts to provide adequate safeguards to protect consumers' PII in the face of increased risk of theft.

191.    Bosley, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its consumers' PII.

192.    Bosley, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiffs and Class Members the existence and scope of the Data Breach.

193.    But for Bosley's wrongful and negligent breach of duties owed to Plaintiffs and Class Members, the PII of Plaintiffs and Class Members would not have been compromised.

194.    There is a close causal connection between Bosley's failure to implement security measures to protect the PII of Plaintiffs and Class Members and the harm suffered or risk of imminent harm suffered by Plaintiffs and the Class. Plaintiffs' and Class Members' PII was lost and accessed as the proximate result

of Bosley's failure to exercise reasonable care in safeguarding such PII by adopting, implementing, and maintaining appropriate security measures.

195.   Additionally, Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Bosley, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Bosley's duty in this regard.

196.   Bosley violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with applicable industry standards, as described in detail herein. Bosley's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of the immense damages that would result to Plaintiffs and Class Members.

197.   Bosley's violation of Section 5 of the FTC Act constitutes negligence *per se*.

198.   Plaintiffs and Class members are within the class of persons that the FTC Act was intended to protect.

199.   The harm that occurred as a result of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

200.   As a direct and proximate result of Bosley's negligence and negligence *per se*, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity of how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v)

lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Bosley's possession and is subject to further unauthorized disclosures so long as Bosley fails to undertake appropriate and adequate measures to protect the PII of consumers in their continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (ix) the diminished value of Bosley's goods and services they received.

201.    As a direct and proximate result of Bosley's negligence, Plaintiffs and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

202.    Additionally, as a direct and proximate result of Bosley's negligence and negligence *per se*, Plaintiffs and Class members have suffered and will suffer the continued risks of exposure of their PII, which remain in Bosley's possession and is subject to further unauthorized disclosures so long as Bosley fails to undertake appropriate and adequate measures to protect the PII in its continued possession.

## COUNT II
### Breach of Confidence
### (On Behalf of Plaintiffs and the Nationwide Class, or in the alternative, on behalf of the Subclasses)

203.    Plaintiffs restate and reallege the foregoing Paragraphs 1 through 172 as if fully set forth herein.

FIRST AMENDED CLASS
ACTION COMPLAINT

43

204.   At all times during Plaintiffs' and Class Members' interactions with Bosley, Bosley was fully aware of the confidential and sensitive nature of Plaintiffs' and Class Members' PII that Plaintiffs and Class Members provided to Bosley.

205.   As alleged herein and above, Bosley's relationship with Plaintiffs and Class Members was governed by terms and expectations that Plaintiffs' and Class Members' PII would be collected, stored, and protected in confidence, and would not be disclosed to unauthorized third parties.

206.   Plaintiffs and Class Members provided their respective PII to Bosley with the explicit and implicit understandings that Bosley would protect and not permit the PII to be disseminated to any unauthorized third parties.

207.   Plaintiffs and Class Members also provided their respective PII to Defendant with the explicit and implicit understandings that Bosley would take precautions to protect that PII from unauthorized disclosure.

208.   Bosley voluntarily received in confidence Plaintiffs' and Class Members' PII with the understanding that PII would not be disclosed or disseminated to the public or any unauthorized third parties.

209.   Due to Bosley's failure to prevent and avoid the Data Breach from occurring, Plaintiffs' and Class Members' PII was disclosed and misappropriated to unauthorized third parties beyond Plaintiffs' and Class Members' confidence, and without their express permission.

210.   As a direct and proximate cause of Bosley's actions and/or omissions, Plaintiffs and Class Members have suffered damages.

211.   But for Bosley's disclosure of Plaintiffs' and Class Members' PII in violation of the parties' understanding of confidence, their PII would not have been compromised, stolen, viewed, accessed, and used by unauthorized third parties. Bosley's Data Breach was the direct and legal cause of the theft of Plaintiffs' and Class Members' PII, as well as the resulting damages.

212.    The injury and harm Plaintiffs and Class Members suffered was the reasonably foreseeable result of Bosley's unauthorized disclosure of Plaintiffs' and Class Members' PII. Bosley knew or should have known its methods of accepting and securing Plaintiffs' and Class Members' PII was inadequate as it relates to, at the very least, disposal of servers and other equipment containing Plaintiffs' and Class Members' PII.

213.    As a direct and proximate result of Bosley's breach of its confidence with Plaintiffs and Class Members, Plaintiffs and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII of consumers and former consumers in its continued possession; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiffs and Class Members; and (ix) the diminished value of Bosley's goods and services they received.

214.    As a direct and proximate result of Defendant's breaches of confidence, Plaintiff and Class Members have suffered and will continue to suffer

other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

### COUNT III
### Violation of the California Unfair Competition Law,
### Cal. Bus. & Prof. Code § 17200, *et seq.* – Unlawful Business Practices
### (On Behalf of Plaintiff Steve Altes and the California Subclass)

215.   Plaintiff Steve Altes and the California Subclass (the "Plaintiffs" for this count) restate and reallege the foregoing Paragraphs 1 through 172 as if fully set forth herein.

216.   Bosley has violated Cal. Bus. and Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in Cal. Bus. Prof. Code § 17200 with respect to the services provided to the California Class.

217.   Bosley engaged in unlawful acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and California Subclass Members' PII with knowledge that the information would not be adequately protected; and by storing Plaintiffs' and California Subclass Members' PII in an unsecure environment in violation of California's data breach statute, Cal. Civ. Code § 1798.81.5, which requires Bosley to take reasonable methods of safeguarding the PII of Plaintiffs and the California Subclass Members.

218.   In addition, Bosley engaged in unlawful acts and practices by failing to disclose the Data Breach to California Subclass Members in a timely and accurate manner, contrary to the duties imposed by Cal. Civ. Code § 1798.82.

219.   As a direct and proximate result of Bosley's unlawful practices and acts, Plaintiffs and the California Subclass Members were injured and lost money or property, including but not limited to the price received by Bosley for the

services, the loss of California Subclass Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

220.    Bosley knew or should have known that Bosley's computer systems and data security practices were inadequate to safeguard California Subclass Members' PII and that the risk of a data breach or theft was highly likely, especially given Bosley's inability to adhere to basic encryption standards and data disposal methodologies. Bosley's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Subclass.

221.    California Subclass Members seek relief under Cal. Bus. & Prof. Code § 17200, *et seq.*, including, but not limited to, restitution to Plaintiffs and California Subclass Members of money or property that Bosley may have acquired by means of Bosley's unlawful, and unfair business practices, restitutionary disgorgement of all profits accruing to Bosley because of Bosley's unlawful and unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

## COUNT IV
**Violation of California's Unfair Competition Law,**
**Cal. Bus. & Prof. Code § 17200, *et seq.* – Unfair Business Practices**
**(On Behalf of Plaintiff Steve Altes and the California Subclass)**

222.    Plaintiff Steve Altes and the California Subclass (the "Plaintiffs," for this count) restate and reallege the foregoing Paragraphs 1 through 172 as if fully set forth herein.

223.    Bosley engaged in unfair acts and practices with respect to the services by establishing the sub-standard security practices and procedures described herein; by soliciting and collecting Plaintiffs' and California Subclass Members' PII with knowledge that the information would not be adequately protected; by

storing Plaintiffs' and California Subclass Members' PII in an unsecure electronic environment; and by failing to properly dispose of equipment containing sensitive PII. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and California Subclass Members. They were likely to deceive the public into believing their PII was securely stored, when it was not. The harm these practices caused to Plaintiffs and the California Subclass Members outweighed their utility, if any.

224.   Bosley engaged in unfair acts and practices with respect to the provision of services by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect California Subclass Members' PII from further unauthorized disclosure, release, data breaches, and theft. These unfair acts and practices were immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiffs and California Subclass Members. They were likely to deceive the public into believing their PII was securely stored, when it was not. The harm these practices caused to Plaintiffs and the California Subclass Members outweighed their utility, if any.

225.   As a direct and proximate result of Bosley's acts of unfair practices, Plaintiffs and the California Subclass Members were injured and lost money or property, including but not limited to the price received by Bosley for the services, the loss of California Subclass Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, and additional losses as described above.

226.   Bosley knew or should have known that Bosley's computer systems and data security practices were inadequate to safeguard California Subclass Members' PII and that the risk of a data breach or theft was highly likely, including Bosley's failure to properly encrypt and dispose of equipment containing sensitive PII. Bosley's actions in engaging in the above-named unlawful practices and acts

FIRST AMENDED CLASS
ACTION COMPLAINT

48

were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of members of the California Subclass.

California Subclass Members seek relief under Cal. Bus. & Prof. Code § 17200, *et seq*., including, but not limited to, restitution to Plaintiffs and California Subclass Members of money or property that Bosley may have acquired by means of Bosley's unfair business practices, restitutionary disgorgement of all profits accruing to Bosley because of Bosley's unfair business practices, declaratory relief, attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5), and injunctive or other equitable relief.

**COUNT V**
**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**("FDUTPA") Fla. Stat. §§ 501.201, *et seq*.**
**(On Behalf of Plaintiff Johnson-Foster and the Florida Subclass)**

227.   Plaintiffs Sandra Johnson-Foster and the Florida Subclass (the "Plaintiff," for this count) restate and reallege the foregoing Paragraphs 1 through 172 as if fully set forth herein.

228.   FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

229.   Bosley engaged in the conduct alleged in this Complaint through transactions in and involving trade and commerce. Mainly, the Data Breach occurred through the use of the internet, an instrumentality of interstate commerce.

230.   While engaged in trade or commerce, Defendant violated FDUTPA, including, among other things, by:

      a.   Failing to implement and maintain appropriate and reasonable security procedures and practices to safeguard and protect the PII of Defendants' customers from unauthorized access and disclosure;

b. Failing to disclose that Bosley's computer systems and data security practices were inadequate to safeguard and protect the personal and financial information of its customers from being compromised, stolen, lost, or misused; and

c. Failing to disclose the Data Breach to Defendant's customers in a timely and accurate manner in violation of Fla. Stat. § 501.171.

231.   Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII that Plaintiff and the Florida Subclass entrusted to Defendant, and that risk of a data breach or theft was highly likely.

232.   Defendants knew or should have known that their computer systems and data security practices were inadequate to safeguard Plaintiff and the Florida Subclass's personal and financial information entrusted to Defendant, and that risk of a data breach or theft was highly likely.

233.   Defendant's failures constitute false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff and the Florida Subclass) regarding the security of Defendant's network and aggregation of personal and financial information.

234.   The representations upon which impacted individuals (including Plaintiff and the Florida Subclass) relied were material representations (e.g., as to Defendant's adequate protection of personal and financial information), and consumers (including Plaintiff and the Florida Subclass) relied on those representations to their detriment.

235.   Defendant's actions constitute unconscionable, deceptive, or unfair acts or practices because, as alleged herein, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are and were substantially injurious to Defendant's customers.

FIRST AMENDED CLASS                         50
ACTION COMPLAINT

236.   In committing the acts alleged above, Defendant engaged in unconscionable, deceptive, and unfair acts and practices by omitting, failing to disclose, or inadequately disclosing to Defendant's customers that it did not follow industry best practices for the collection, use, and storage of personal and financial information.

237.   As a direct and proximate result of Defendants' conduct, Plaintiff and the Florida Subclass have been harmed and have suffered damages including, but not limited to: damages arising from attempted identity theft and fraud; out-of-pocket expenses associated with procuring identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring, addressing and correcting the current and future consequences of the Data Breach.

238.   As a direct and proximate result of Defendant's unconscionable, unfair, and deceptive acts and omissions, the personal and financial information of Plaintiff and the Florida Subclass was disclosed to third parties without authorization, which has caused and will continue to cause damages to Plaintiff and the Florida Subclass.  Accordingly, Plaintiff and the Florida Subclass are entitled to recover actual damages, an order providing declaratory and injunctive relief, and reasonable attorneys' fees and costs, to the extent permitted by law.

## COUNT VI
### Violation of the California Consumer Privacy Act, ("CCPA") Cal. Civ. Code §§ 1798.100, *et seq*. (§ 1798.150(a))
### (On Behalf of Plaintiff Steve Altes and the California Subclass)

239.   Plaintiff Steve Altes restates and realleges the foregoing Paragraphs 1 through 172 as if fully set forth herein.

240.   Defendant had a duty to implement and maintain reasonable security procedures and practices with regard to Plaintiff Altes (for purposes of this cause of action, "Plaintiff") and California Subclass Members' PII.

241.   Plaintiff and the California Subclass Members provided to Defendant their nonencrypted and nonredacted personal information as defined in §1798.81.5 in the form of their PII.

242.   Defendant violated the California Consumer Privacy Act, or CCPA, by failing to prevent Plaintiff and California Subclass Members' PII from unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violations of its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiffs and California Class Members.

243.   As a direct and proximate result of Defendant's acts, including but not limited to its failure to encrypt its systems and otherwise implement and maintain reasonable security procedures and practices, Plaintiff's and the California Subclass Members' PII was subjected to unauthorized access and exfiltration, theft, or disclosure as a result of Defendant's violation of the duty.

244.   As a direct and proximate result of Defendant's acts, including but not limited to its failure to encrypt its systems and otherwise implement and maintain reasonable security procedures and practices, Plaintiff and the California Subclass Members were injured and lost money or property, including but not limited the loss of Plaintiff's and California Class Members' legally protected interest in the confidentiality and privacy of their PII, nominal damages, statutory damages, and additional losses as described above.

245.   Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard Plaintiff's and California Subclass Members' PII and that the risk of a data breach or theft was highly likely. Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the PII of Plaintiff and the California Class Members.

246.   Defendant is a corporation organized for the profit or financial benefit of its owners, with annual gross revenues exceeding $25 million, and collects PII as defined in Cal. Civ. Code § 1798.140.

247.   Plaintiff and California Subclass Members seek relief under § 1798.150(a), including, but not limited to, recovery of actual damages or damages in an amount not less than $100 and not greater than $750 per consumer per incident, whichever is greater; injunctive or declaratory relief; any other relief the court deems proper; and attorneys' fees and costs (pursuant to Cal. Code Civ. Proc. § 1021.5).

248.   Plaintiff and the California Subclass Members also seek injunctive or other equitable relief to ensure Defendant hereinafter adequately safeguards Plaintiff's and the Class Members' PII by implementing reasonable security procedures and practices. Such relief is particularly important because Defendant continues to hold Plaintiff's and the Class Members' PII. These individuals have an interest in ensuring that their PII is reasonably protected.

249.   Plaintiff provided Defendant with written notice at least 30 days before filing this First Amended Complaint, identifying the specific provisions of the CCPA that Plaintiff alleges have been or are being violated.

<u>**COUNT VII**</u>
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Nationwide Class, or in the alternative, on behalf of the Subclasses)**

250.   Plaintiffs restate and reallege the foregoing Paragraphs 1 through 172 as if fully set forth herein.

251.   As a condition of receiving services, Defendant required Plaintiffs and Class Members to provide their PII, including names, Social Security numbers, medical information, driver's license numbers, addresses, dates of birth, email addresses, financial account and/or payment card numbers, and supplemental

payment card information including expiration dates and CVV verification numbers.

252. Plaintiffs fully performed their obligations under the implied contracts with Defendant.

253. Plaintiffs would not have entered into transactions with Bosley if Plaintiffs had known Bosley would not protect their PII.

254. When Bosley required and accepted the PII from Plaintiffs and the Class, it implied its assent to protect the information sufficiently.

255. Defendant breached the implied contracts it made with Plaintiffs and the Class by failing to safeguard and protect their PII, and by failing to provide timely and accurate notice to them that their PII was compromised as a result of the Data Breach.

256. As a direct and proximate result of Defendant's above-described breach of implied contract, Plaintiffs and the Class have suffered (and will continue to suffer) ongoing, imminent, and impending threat of identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; actual identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of the stolen confidential data; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, decreased credit scores and ratings; lost work time; and other economic and non-economic harm.

## COUNT VIII
**Violation of the Confidentiality of Medical Information Act ("CMIA"),
Cal. Civ. Code §§ 56, *et seq*.
(On Behalf of Plaintiffs and the Nationwide Class, or
alternatively, the California Subclass)**

257. Plaintiffs restate and reallege the foregoing Paragraphs 1 through 172 as if fully set forth herein.

FIRST AMENDED CLASS
ACTION COMPLAINT

54

258.   At all relevant times, Defendant was a healthcare provider for the purposes of this cause of action because it had the "purpose of maintaining medical information to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis or treatment of the individual."

259.   Defendant is a provider of healthcare for the purposes of this cause of action within the meaning of Civil Code § 56.06(a) and maintains medical information as defined by Civil Code § 56.05.

260.   Plaintiffs and Class Members are patients of Defendant for the purposes of this cause of action, as defined in Civil Code § 56.05(k).

261.   Plaintiffs and Class Members provided their personal medical information to Defendant.

262.   At all relevant times, Defendant collected, stored, managed, and transmitted Plaintiff's and Class Members' personal medical information.

263.   Section 56.10(a) of the California Civil Code provides that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization."

264.   Bosley promises customers in the first paragraph of its Privacy Policy: "The confidentiality of the medical records of all Bosley patients has been and continues to be strictly protected. We release medical information regarding one of our patients whenever the patient instructs us to do so, or whenever we are required to do so by legal process."

265.   As a result of the Data Breach, Defendant misused, disclosed, and/or allowed third parties to access and view Plaintiffs' and Class Members' personal medical information without their written authorization compliant with the

provisions of Civil Code §§ 56, *et seq*. and its express promise in Bosley's Privacy Policy.

266.   As a further result of the Data Breach, the confidential nature of the Plaintiffs' medical information was breached as a result of Defendant's negligence. Specifically, Defendants knowingly allowed and affirmatively acted in a manner that actually allowed unauthorized parties to access and view Plaintiffs' and Class Members' PII, which was viewed and used when the unauthorized parties engaged in the above-described fraudulent activity.

267.   Defendant's misuse and/or disclosure of medical information regarding Plaintiffs and Class Members constitutes a violation of Civil Code §§ 56.10, 56.11, 56.13, and 56.26.

268.   As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care, Plaintiffs' and Class Members' personal medical information was disclosed without written authorization, including their treatment specifics.

269.   By disclosing Plaintiffs' and Class Members' PII without their written authorization, Defendant violated California Civil Code § 56, *et seq*., and its legal duty to protect the confidentiality of such information.

270.   Defendants also violated Sections 56.06 and 56.101 of the California CMIA, which prohibit the negligent creation, maintenance, preservation, storage, abandonment, destruction or disposal of confidential personal medical information.

271.   As a direct and proximate result of Defendant's wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiffs' and Class Members' personal medical information was viewed by, released to, and disclosed to third parties without Plaintiffs' and Class Members' written authorization.

272.   As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and

proximately caused the Data Breach and its violations of the CMIA, Plaintiffs and Class Members are entitled to (i) actual damages, (ii) nominal damages of $1,000 per Plaintiff and Class Member, (iii) punitive damages of up to $3,000 per Plaintiff and Class Member, and (iv) attorneys' fees, litigation expenses and court costs under California Civil Code § 56.35.

## COUNT IX
**Violation of the California Consumer Records Act ("CCRA")**
**Cal. Civ. Code § 1798.80, *et seq*.**
**(On Behalf of Plaintiffs and the Nationwide Class, or**
**alternatively, the California Subclass)**

273.   Plaintiffs restate and reallege the foregoing Paragraphs 1 through 172 as if fully set forth herein.

274.   Section 1798.2 of the California Civil Code requires any "person or business that conducts business in California, and that owns or licenses computerized data that includes personal information" to "disclose any breach of the security of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Under section 1798.82, the disclosure "shall be made in the most expedient time possible and without unreasonable delay . . . ."

275.   The CCRA further provides: "Any person or business that maintains computerized data that includes personal information that the person or business does not own shall notify the owner or licensee of the information of any breach of the security of the data immediately following discovery, if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82(b).

276.   Any person or business that is required to issue a security breach notification under the CCRA shall meet all of the following requirements:

277.   The security breach notification shall be written in plain language;

278.   The security breach notification shall include, at a minimum, the following information:

279.   The name and contact information of the reporting person or business subject to this section;

280.   A list of the types of personal information that were or are reasonably believed to have been the subject of a breach;

281.   If the information is possible to determine at the time the notice is provided, then any of the following:

      a.   The date of the breach;

      b.   The estimated date of the breach; or

      c.   The date range within which the breach occurred.

282.   The notification shall also include the date of the notice; whether notification was delayed as a result of a law enforcement investigation, if that information is possible to determine at the time the notice is provided; a general description of the breach incident, if that information is possible to determine at the time the notice is provided; and the toll-free telephone numbers and addresses of the major credit reporting agencies if the breach exposed a Social Security number or a driver's license or California identification card number.

283.   The Data Breach described herein constituted a "breach of the security system" of Bosley.

284.   Bosley unreasonably delayed informing Plaintiffs and Class Members about the Data Breach affecting their PII, after Bosley knew the Data Breach had occurred.

285.   Despite acknowledging that data thieves accessed Plaintiff's and the Class Members' PII without authorization, Bosley did not begin to notify affected individuals until January 26, 2021, over five months after the Data Breach occurred.

FIRST AMENDED CLASS
ACTION COMPLAINT

58

286.   Bosley failed to disclose to Plaintiffs and Class Members, without unreasonable delay and in the most expedient time possible, the breach of security of their unencrypted, or not properly and securely encrypted, PII when Bosley knew or reasonably believed such information had been compromised.

287.   Bosley's ongoing business interests gave Bosley incentive to conceal the Data Breach from the public to ensure continued revenue.

288.   Upon information and belief, no law enforcement agency instructed Bosley that timely notification to Plaintiffs and Class Members would impede its investigation.

289.   As a result of Bosley's violation of Cal. Civ. Code § 1798.82, Plaintiffs and Class Members were deprived of prompt notice of the Data Breach and were thus prevented from taking appropriate protective measures, such as securing identity theft protection or requesting a fraud alert or credit freeze. These measures could have prevented some of the damages suffered by Plaintiffs and Class Members because their stolen information would have had less value to identity thieves.

290.   As a result of Bosley's violation of Cal. Civ. Code § 1798.82, Plaintiffs and Class Members suffered incrementally increased damages separate and distinct from those simply caused by the Data Breach itself.

291.   Plaintiffs and Class Members seek all remedies available under Cal. Civ. Code § 1798.84, including, but not limited to the damages suffered by Plaintiffs and Class Members as alleged above and equitable relief.

292.   Bosley's misconduct as alleged herein is fraud under Cal. Civ. Code § 3294(c)(3) in that it was deceit or concealment of a material fact known to the Bosley conducted with the intent on the part of Bosley of depriving Plaintiffs and Class Members of "legal rights or otherwise causing injury." In addition, Bosley's misconduct as alleged herein is malice or oppression under Cal. Civ. Code § 3294(c)(1) and (c)(2) in that it was despicable conduct carried on by Bosley with a

willful and conscious disregard of the rights or safety of Plaintiffs and Class Members and despicable conduct that has subjected Plaintiffs and Class Members to hardship in conscious disregard of their rights. As a result, Plaintiffs and Class Members are entitled to punitive damages against Bosley under Cal. Civ. Code § 3294(a).

**COUNT X**
**Violation of the New York General Business Law § 349**
**(On Behalf of Plaintiff Bowden and the New York Sub-Class)**

293.   Plaintiff Bowden restates and realleges the foregoing Paragraphs 1 through 172 as if fully set forth herein.

294.   Bosley engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

  a.   Bosley misrepresented material facts to Plaintiff Bowden and the New York Subclass by representing that they would maintain adequate data privacy and security practices and procedures to safeguard Class Members' PII from unauthorized disclosure, release, data breaches, and theft;

  b.   Bosley misrepresented material facts to Plaintiff Bowden and the New York Subclass by representing that they did and would comply with the requirements of federal and state laws pertaining to the privacy and security of Class Members' PII;

  c.   Bosley omitted, suppressed, and concealed material facts of the inadequacy of its privacy and security protections for Class Members' PI;

  d.   Bosley engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Class Members' PII, in violation of duties imposed by and public policies

reflected in applicable federal and state laws, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45);

e. Bosley engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to the Class in a timely and accurate manner, contrary to the duties imposed by N.Y. Gen. Bus. Law § 899-aa(2).

295.   Bosley knew or should have known that the Bosley computer systems and data security practices were inadequate to safeguard the Class Members' PII entrusted to it, and that risk of a data breach or theft was highly likely.

296.   Bosley should have disclosed this information because Bosley was in a superior position to know the true facts related to the defective data security.

297.   Bosley's failure constitutes false and misleading representations, which have the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff Bowden and New York Subclass Members) regarding the security of Bosley's network and aggregation of PI.

298.   The representations upon which consumers (including Plaintiff Bowden and New York Subclass Members) relied were material representations (e.g., as to Bosley's adequate protection of PII), and consumers (including Plaintiff Bowden and New York Subclass Members) relied on those representations to their detriment.

299.   Bosley's conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances. As a direct and proximate result of Bosley's conduct, Plaintiff Bowden and other New York Subclass Members have been harmed, in that they were not timely notified of the Data Breach, which resulted in profound vulnerability to their personal information and other financial accounts.

300.   As a direct and proximate result of Bosley's unconscionable, unfair, and deceptive acts and omissions, Plaintiff Bowden's and New York Subclass Members' PII was disclosed to third parties without authorization, causing and will continue to cause Plaintiff Bowden and New York Subclass Members damages.

301.   Plaintiff Bowden and New York Subclass members seek relief under N.Y. Gen. Bus. Law § 349(h), including, but not limited to, actual damages, treble damages, statutory damages, injunctive relief, and/or attorney's fees and costs.

## COUNT XI
### Intrusion into Private Affairs / Invasion of Privacy
### (On Behalf of Plaintiffs and All Class Members)

302.   Plaintiffs restate and reallege the foregoing Paragraphs 1 through 172 as if fully set forth herein.

303.   California established the right to privacy in Article I, Section 1 of the California Constitution.

304.   The State of California recognizes the tort of Intrusion into Private Affairs, and adopts the formulation of that tort found in the Restatement (Second) of Torts, which states:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts § 652B (1977).

305.   Plaintiffs and Class Members had a reasonable expectation of privacy in the Private Information Defendant mishandled.

306.   Bosley invaded Plaintiffs' and the Class Members' right to privacy by allowing the unauthorized access to Plaintiffs' and Class Members' PII and by

negligently maintaining the confidentiality of Plaintiffs' and Class Members' PII, as set forth above.

307.   The intrusion was offensive and objectionable to Plaintiffs, the Class Members, and to a reasonable person of ordinary sensibilities in that Plaintiffs' and Class Members' PII was disclosed without prior written authorization of Plaintiffs and the Class.

308.   The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiffs and the Class Members provided and disclosed their PII to Bosley privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class Members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

309.   As a direct and proximate result of Bosley's above acts, Plaintiffs' and the Class Members' PII was viewed, distributed, and used by persons without prior written authorization and Plaintiffs and the Class Members suffered damages as described herein.

310.   Bosley has committed oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiffs' and the Class Members' PII with a willful and conscious disregard of Plaintiffs' and the Class Members' right to privacy.

311.   Unless and until enjoined, and restrained by order of this Court, Bosley's wrongful conduct will continue to cause Plaintiffs and the Class Members great and irreparable injury in that the PII maintained by Bosley can be viewed, printed, distributed, and used by unauthorized persons. Plaintiffs and Class Members have no adequate remedy at law for the injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiffs and the Class, and Bosley may freely treat Plaintiffs' and Class Members' PII with sub-standard and insufficient protections.

312.   In failing to protect Plaintiffs and Class Members' Private Information, and in intentionally misusing and/or disclosing their Private Information, Defendant acted with intentional malice and oppression and in conscious disregard of Plaintiffs' and Class Members' rights to have such information kept confidential and private. Plaintiffs, therefore, seek an award of damages on behalf of themselves and the Class.

## COUNT XII
### Declaratory Judgement
**(On Behalf of Plaintiffs and the Nationwide Class, or in the alternative, on behalf of the Subclasses)**

313.   Plaintiffs restate and reallege all of the foregoing Paragraphs as if fully set forth herein.

314.   This Count is brought under the federal Declaratory Judgment Act, 28 U.S.C. §2201.

315.   Plaintiffs and Class Members entered into an implied contract that required Defendant to provide adequate security for the PII it collected from Plaintiffs and Class Members.

316.   Defendant owes a duty of care to Plaintiffs and Class Members requiring them to adequately secure PII.

317.   Defendant still possesses PII regarding Plaintiffs and Class Members.

318.   Since the Data Breach, Defendant has announced few if any specific and significant changes to its data security infrastructure, processes or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent further attacks.

319.   Defendant has not satisfied its contractual obligations and legal duties to Plaintiffs and Class Members. In fact, now that Defendant's insufficient data

security is known to hackers, the PII in Defendant's possession is even more vulnerable to cyberattack.

320.   Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiffs and Class Members. Further, Plaintiffs and Class Members are at risk of additional or further harm due to the exposure of their PII and Defendant's failure to address the security failings that lead to such exposure.

321.   There is no reason to believe that Defendant's security measures are any more adequate now than they were before the Data Breach to meet Defendant's contractual obligations and legal duties.

322.   Plaintiffs, therefore, seek a declaration (1) that Defendant's existing security measures do not comply with their contractual obligations and duties of care to provide adequate security, and (2) that to comply with their contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

> a. Ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;
>
> b. Ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;
>
> c. Ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;
>
> d. Ordering that Defendant segment patient data by, among other things, creating firewalls and access controls so that if one area of

Defendant's systems is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.   Ordering that Defendant not transmit PII via unencrypted email;

f.   Ordering that Defendant not store PII in email accounts;

g.   Ordering that Defendant purge, delete, and destroy in a reasonably secure manner customer data not necessary for its provisions of services;

h.   Ordering that Defendant conduct regular computer system scanning and security checks;

i.   Ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

j.   Ordering Defendant to meaningfully educate their current, former, and prospective customers about the threats they face as a result of the loss of their PII to third parties, as well as the steps they must take to protect themselves.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members, requests judgment against the Bosley and that the Court grant the following:

A.   For an Order certifying the Nationwide Classes or, in the alternative, the Subclasses as defined herein, and appointing Plaintiffs and their Counsel to represent the certified Classes;

B.   For equitable relief enjoining Bosley from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiffs' and the Class Members' PII, and from refusing to issue prompt, complete, any accurate disclosures to the

Plaintiffs and Class members;

C.  For injunctive relief requested by Plaintiffs, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and class members, including but not limited to an order:

   i.  prohibiting Bosley from engaging in the wrongful and unlawful acts described herein;

   ii.  requiring Bosley to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

   iii.  requiring Bosley to delete, destroy, and purge the personal identifying information of Plaintiffs and class members unless Bosley can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiffs and class members;

   iv.  requiring Bosley to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the personal identifying information of Plaintiffs and class members' personal identifying information;

   v.  prohibiting Bosley from maintaining Plaintiffs' and class members' personal identifying information on a cloud-based database;

   vi.  requiring Bosley to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Bosley's systems on a periodic basis, and ordering

1   Bosley to promptly correct any problems or issues detected by such
2   third-party security auditors;

3   vii.   requiring Bosley to engage independent third-party security
4          auditors and internal personnel to run automated security
5          monitoring;

6   viii.  requiring Bosley to audit, test, and train its security personnel
7          regarding any new or modified procedures;

8   ix.    requiring Bosley to segment data by, among other things, creating
9          firewalls and access controls so that if one area of Bosley's
10         network is compromised, hackers cannot gain access to other
11         portions of Bosley's systems;

12  x.     requiring Bosley to conduct regular database scanning and
13         securing checks;

14  xi.    requiring Bosley to establish an information security training
15         program that includes at least annual information security training
16         for all employees, with additional training to be provided as
17         appropriate based upon the employees' respective responsibilities
18         with handling personal identifying information, as well as
19         protecting the personal identifying information of Plaintiffs and
20         class members;

21  xii.   requiring Bosley to conduct internal training and education
22         routinely and continually, and on an annual basis to inform internal
23         security personnel how to identify and contain a breach when it
24         occurs and what to do in response to a breach;

25  xiii.  requiring Bosley to implement a system of tests to assess its
26         respective employees' knowledge of the education programs
27         discussed in the preceding subparagraphs, as well as randomly and
28         periodically testing employees' compliance with Bosley's policies,

FIRST AMENDED CLASS                    68
ACTION COMPLAINT

programs, and systems for protecting personal identifying information;

xiv.   requiring Bosley to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Bosley's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xv.   requiring Bosley to meaningfully educate all class members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves;

xvi.   requiring Bosley to implement logging and monitoring programs sufficient to track traffic to and from Bosley's servers; and

xvii.   for a period of 10 years, appointing a qualified and independent third party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Bosley's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment; and

D.   For an award of damages, including actual, nominal, and consequential damages, as allowed by law in an amount to be determined;

E.   For an award of punitive damages;

F.   For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

G.   For prejudgment interest on all amounts awarded; and

H.   Such other and further relief as this Court may deem just and proper.

## <u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby demand that this matter be tried before a jury.

Date: April 30, 2021                    Respectfully Submitted,

                                        */s/ M. Anderson Berry*
                                        M. ANDERSON BERRY (SBN 262879)
                                        **CLAYEO C. ARNOLD,**
                                        **A PROFESSIONAL LAW CORP.**
                                        865 Howe Avenue
                                        Sacramento, CA 95825
                                        (916) 777-7777
                                        aberry@justice4you.com

                                        Jeffrey S. Goldenberg*
                                        E-mail: jgoldenberg@g-legal.com
                                        **GOLDENBERG SCHNEIDER, LPA**
                                        4445 Lake Forest Drive, Suite 490
                                        Cincinnati, OH 45242
                                        Tel: (513) 345-8297

                                        Gary E. Mason*
                                        E-mail: gmason@masonllp.com
                                        David K. Lietz*
                                        E-mail: dlietz@masonllp.com
                                        **MASON LIETZ & KLINGER LLP**
                                        5301 Wisconsin Avenue, NW. Suite 305
                                        Washington, DC 20016
                                        Tel: (202) 429-2290

                                        Gary M. Klinger*
                                        E-mail: gklinger@masonllp.com
                                        **MASON LIETZ & KLINGER LLP**
                                        227 West Monroe Street, Suite 2100
                                        Chicago, IL 60606
                                        Tel: 202.429.2290

                                        Charles E. Schaffer*
                                        E-mail: cschaffer@lfsblaw.com
                                        **LEVIN SEDRAN & BERMAN, LLP**
                                        510 Walnut Street, Suite 500

FIRST AMENDED CLASS                     70
ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Philadelphia, PA 19106
Tel: (215) 592-1500

Ex Kano S. Sams II (SBN 192936)
Email: esams@glancylaw.com
**GLANCY PRONGAY & MURRAY
LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: 310-201-9150

*Attorneys for Plaintiffs and the Proposed
Classes*

*pro hac vice to be filed*

FIRST AMENDED CLASS
ACTION COMPLAINT

71