# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN HASHEMI, STEVE ALTES, SANDRA JOHNSON-FOSTER, GREGORY BOUTE, RAFAEL ARTIME, and JOHN BOWDEN as individuals and all others similarly situated,<br><br>                              Plaintiffs,<br><br>        v.<br><br>BOSLEY, INC.,<br><br>                              Defendant | Case No. 2:21-cv-00946 PSG (RAOx) |

## SETTLEMENT AGREEMENT

This Settlement Agreement, dated as of January 6, 2022, is made and entered into by and among the following Settling Parties (as defined below): (i) Ken Hashemi, Steve Altes, Sandra Johnson-Foster, Gregory Boute, Rafael Artime, and John Bowden ("Representative Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through their respective counsel at CLAYEO C. ARNOLD, GOLDENBERG SCHNEIDER, LPA, MASON LIETZ & KLINGER LLP, AND LEVIN SEDRAN & BERMAN, LLP (collectively, "Proposed Class Counsel" or "Class Counsel"); and (ii) Bosley, Inc. ("Bosley" and, together with Representative Plaintiffs, the "Parties"), by and through their counsel of record, Baker & Hostetler LLP.  The Settlement Agreement is subject to Court approval and is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined below), upon and subject to the terms and conditions hereof.

## I.      THE LITIGATION

This matter concerns a putative class action [*Hashemi, et al. v. Bosley, Inc.*, Central District of California Case No. 2:21-cv-00946-PSG (RAOx) (the "*Hashemi* Action" or "Litigation")] arising out of an alleged Data Incident (as defined below) suffered by Bosley in or about August 2020.  The cyber criminals responsible for the Data Incident  uploaded a virus onto Bosley's systems, encrypting Bosley's data, including personal identifiable information ("PII") of certain Bosley customers and employees.  Representative Plaintiffs allege that, as a result of the Data Incident, unauthorized users accessed Representative Plaintiffs' and Bosley's current and former customers' and employees' PII including Social Security numbers, driver's license numbers, financial account information, medical information and/or health insurance information.

Bosley notified approximately 100,839 individuals of the Data Incident between January and February 2021. Bosley offered these individuals one year of free credit and identity monitoring services as a result of the Data Incident. Representative Plaintiffs  received their notice letters on or about January 26, 2021. Representative Plaintiffs Steve Altes and Rafael Artime received a second notice of the Data Incident in March 2021.

Representative Plaintiffs Hashemi and Altes filed the *Hashemi* Action on February 1, 2021. Thereafter, on April 9, 2021, Representative Plaintiff Bowden filed a separate putative class action complaint against Bosley in the Central District of California arising out of the same Data Incident on [*Bowden v. Bosley, Inc.*, Case No. 2:21-cv-03357-MWF (AGR) (the "*Bowden* Action")]. Shortly thereafter, counsel for Representative Plaintiffs Hashemi and Altes, and counsel for Representative Plaintiff Bowden decided to consolidate the *Bowden* Action into the *Hashemi* Action, and also to add claims on behalf of Representative Plaintiffs Johnson-Foster, Boute, and Artime. Pursuant to stipulation of the Parties and approval of the Court (as defined below),

Representative Plaintiffs filed the First Amended Class Action Complaint ("FAC")" in the *Hashemi* Action on May 3, 2021.

Over the course of several months, the Parties engaged in settlement negotiations and full-day mediation sessions with Bennett G. Picker. As a result of those efforts, the Parties reached a settlement, which is memorialized in this Settlement Agreement. Pursuant to the terms set forth below, this Settlement Agreement provides for the resolution of all claims and causes of action asserted, or that could have been asserted, against Bosley and the Released Persons (as defined below) relating to the Data Incident, by and on behalf of Representative Plaintiffs and Settlement Class Members, and any other such actions by and on behalf of any other consumers and putative classes of consumers against Bosley and the Released Persons relating to the Data Incident (collectively, the "Litigation").

## II.  CLAIMS OF REPRESENTATIVE PLAINTIFFS AND BENEFITS OF SETTLING

Representative Plaintiffs believe the claims asserted in the Litigation, as set forth in the FAC, have merit. Representative Plaintiffs and Proposed Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Litigation against Bosley through motion practice, trial, and potential appeals. They have also considered the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Proposed Class Counsel are highly experienced in class action litigation and very knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Litigation. They have determined that the settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Representative Plaintiffs and the Settlement Class Members.

## III.    DENIAL OF WRONGDOING AND LIABILITY

Bosley denies each and all of the claims and contentions alleged against it in the Litigation. Bosley denies all charges of wrongdoing or liability as alleged, or which could be alleged, in the Litigation. Nonetheless, Bosley has concluded that  continuing with the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. Bosley also has taken into account the uncertainty and risks inherent in any litigation. Bosley has, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## IV.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Representative Plaintiffs, individually and on behalf of the Settlement Class Members, Proposed Class Counsel, and Bosley that, subject to the approval of the Court, the Litigation and the Released Claims shall be finally and fully compromised, settled, and released, and the Litigation shall be dismissed with prejudice as to the Settling Parties and the Settlement Class Members, except those Settlement Class Members who timely opt-out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1.    Definitions

As used in the Settlement Agreement, the following terms have the meanings specified below:

1.1    "Agreement" or "Settlement Agreement" means this agreement.

1.2    "Approved Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the Dispute Resolution process.

1.3    "California Settlement Subclass" means all persons whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, and who were residing in the State of California at the time their PII was potentially compromised in the Data Incident. The California Settlement Subclass specifically excludes: (i) Bosley and Bosley's parents, subsidiaries, affiliates, officers and directors, and any entity in which Bosley has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (iii) any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; (iv) banks and other entities that issued payment cards which were utilized at Bosley during the Data Incident; (v) the attorneys representing the Parties in the Litigation; (vi) all judges assigned to hear any aspect of the Litigation, as well as their immediate family members; and (vii) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the Data Incident, or who pleads *nolo contendere* to any such charge.

1.4    "California Settlement Subclass Member(s)" means a Person(s) who falls within the definition of the California Settlement Subclass.

1.5    "Claims Administration" means the processing and payment of claims received from Settlement Class Members and California Settlement Subclass Members by the Claims Administrator.

1.6    "Claims Administrator" means a company experienced in administering class action claims generally and specifically those of the type provided for and made in data breach litigation, to be jointly agreed upon by the Settling Parties and approved by the Court.

1.7    "Claims Deadline" means the postmark deadline for valid claims pursuant to ¶ 2.4.

1.8    "Claim Form" means the form that the Settlement Class Member a must complete and submit on or before the Claim Deadline in order to be eligible for the benefits described herein. The Claim Form shall be reformatted by the Claims Administrator in order to permit the option of filing of claims electronically. The Claim Form shall require a sworn signature or electronic verification under penalty of perjury, but shall not require a notarization. The Claim Form template is attached as **Exhibit A** to this Settlement Agreement.

1.9    "Costs of Claims Administration" means all actual costs associated with or arising from Claims Administration.

1.10    "Court" means the United States District Court for the Central District of California.

1.11    "Data Incident" means the cyberattack suffered by Bosley in or about August 2020, in which an unauthorized user uploaded a virus onto Bosley's systems, encrypting Bosley's data, and allegedly accessed the PII of current and former Bosley customers and employees.

1.12    "Dispute Resolution" means the process for resolving disputed Settlement Claims as set forth in this Agreement.

1.13    "Effective Date" means the first date by which all of the events and conditions specified in ¶ 1.14 and ¶ 9.1 herein have occurred and been met.

1.14    "Final" means the occurrence of all of the following events: (i) the settlement pursuant to this Settlement Agreement is approved by the Court; (ii) the Court has entered a Judgment (as that term is defined herein); and (iii) the time to appeal or seek permission to appeal from the Judgment has expired or, if appealed, the appeal has been dismissed in its entirety, or the Judgment has been affirmed in its entirety by the court of last resort to which such appeal may be taken, and such dismissal or affirmance has become no longer subject to further appeal or review.

Notwithstanding the above, any order modifying or reversing any attorneys' fee award or service award made in this case shall not affect whether the Judgment is "Final" as defined herein or any other aspect of the Judgment.

1.15 "Judgment" means a judgment rendered by the Court, in the form attached hereto as **Exhibit G**, or a judgment substantially similar to such form.

1.16 "Notice" means the written notice to be sent to the Settlement Class Members pursuant to the Preliminary Approval Order.

1.17 The "Notice Commencement Date" means thirty (30) days after the entry of the Preliminary Approval Order.

1.18 "Objection Date" means the date by which Settlement Class Members must file with the Court through the Court's electronic case filing ("ECF") system and mail to Class Counsel and counsel for Bosley their objection to the Settlement for that objection to be effective. The postmark date shall constitute evidence of the date of mailing for these purposes. The Objection Date shall be sixty (60) days after the Notice Commencement Date.

1.19 "Opt-Out Date" means the date by which requests for exclusion from the Settlement Class must be postmarked in order to be effective and timely. The postmark date shall constitute evidence of the date of mailing for these purposes. The Opt-Out Date shall be sixty (60) days after the Notice Commencement Date.

1.20 "Person" means an individual, corporation, partnership, limited partnership, limited liability company or partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity, and their respective spouses, heirs, predecessors, successors, representatives, or assignees.

1.21  "Preliminary Approval Order" means the order preliminarily approving the Settlement Agreement and ordering that notice be provided to the Settlement Class and California Settlement Subclass. The Settling Parties' proposed form of Preliminary Approval Order is attached hereto as **Exhibit F**.

1.22  "Plaintiffs' Counsel" and "Proposed Class Counsel" means M. Anderson Berry of CLAYEO C. ARNOLD; Jeffrey S. Goldenberg of GOLDENBERG SCHNEIDER, LPA; Gary E. Mason, David K. Lietz, and Gary M. Klinger of MASON LIETZ & KLINGER LLP, and Charles E. Schaffer of LEVIN SEDRAN & BERMAN, LLP.

1.23  "Related Entities" means Bosley's past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of Bosley's predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was or could have been named as a defendant in any of the actions in the Litigation, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the criminal activity occurrence of the Data Incident or who pleads *nolo contendere* to any such charge.

1.24  "Released Claims" shall collectively mean any and all past, present, and future claims and causes of action including, but not limited to, any causes of action arising under or premised upon any statute, constitution, law, ordinance, treaty, regulation, or common law of any country, state, province, county, city, or municipality, including 15 U.S.C. § 45, *et seq.*, and all similar statutes in effect in any states in the United States as defined below, including any violation of the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.*, California Consumer Privacy Act, § 1798.100, *et seq.*, California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.*, New

York General Business Law § 349 *et seq*., Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 *et seq*., and similar state consumer-protection statutes; any violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*., and all similar statutes in effect in any states in the United States; negligence; negligence *per se*; breach of contract; breach of implied contract; breach of fiduciary duty; breach of confidence; intrusion into private affairs; invasion of privacy; fraud; misrepresentation (whether fraudulent, negligent or innocent); unjust enrichment; bailment; wantonness; breach of the covenant of good faith and fair dealing; and failure to provide adequate notice pursuant to any breach notification statute or common law duty; and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees and expenses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, and/or the appointment of a receiver, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, direct or derivative, and any other form of legal or equitable relief that either has been asserted, was asserted, or could have been asserted, by any Settlement Class Member against any of the Released Persons based on, relating to, concerning or arising out of the Data Incident or the allegations, transactions, occurrences, facts, or circumstances alleged in or otherwise described in the operative Complaint in this Litigation.  Released Claims shall include Unknown Claims as defined in ¶ 1.31. Released Claims shall not include the right of any Settlement Class Member or any of the Released Persons to enforce the terms of the settlement contained in this Settlement Agreement, and shall not include the claims of Settlement Class Members who have timely excluded themselves from the Settlement Class.

1.25    "Released Persons" means Bosley, its Related Entities, and each of its past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, directors, officers, employees, principals, agents, attorneys, insurers, and reinsurers.

1.26    "Representative Plaintiffs" means Ken Hashemi, Steve Altes, Sandra Johnson-Foster, Gregory Boute, Rafael Artime, and John Bowden.

1.27    "Settlement Claim" means a claim for settlement benefits made under the terms of this Settlement Agreement.

1.28    "Settlement Class" means all persons residing in the United States whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, including but not limited to the California Settlement Subclass. The Settlement Class specifically excludes: (i) Bosley and Bosley's parents, subsidiaries, affiliates, officers and directors, and any entity in which Bosley has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (iii) any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; (iv) banks and other entities that issued payment cards which were utilized at Bosley during the Data Incident; (v) the attorneys representing the Parties in the Litigation; (vi) all judges assigned to hear any aspect of the Litigation, as well as their immediate family members; and (vii) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the Data Incident, or who pleads *nolo contendere* to any such charge.

1.29    "Settlement Class Member(s)" means a Person(s) who falls within the definition of the Settlement Class.

1.30   "Settling Parties" means, collectively, Bosley and Representative Plaintiffs, individually and on behalf of the Settlement Class.

1.31   "Unknown Claims" means any of the Released Claims that any Settlement Class Member or California Settlement Subclass Member, including any Representative Plaintiffs, does not know or suspect to exist in his/her favor at the time of the release of the Released Persons that, if known by him or her, might have affected his or her settlement with, and release of, the Released Persons, or might have affected his or her decision not to object to and/or to participate in this Settlement Agreement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that upon the Effective Date, Representative Plaintiffs expressly shall have, and each of the other Settlement Class Members and California Settlement Subclass Members shall be deemed to have, and by operation of the Judgment shall have, waived the provisions, rights, and benefits conferred by California Civil Code § 1542, and also any and all provisions, rights, and benefits conferred by any law of any state, province, or territory of the United States which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Settlement Class Members, including Representative Plaintiffs, and California Settlement Subclass Members, any of them, may hereafter discover facts in addition to, or different from, those that they, and any of them, now know or believe to be true with respect to the subject matter of the Released Claims, but Representative Plaintiffs expressly shall have, and each other Settlement Class Member and California Settlement Subclass Members shall be deemed to have, and by operation of the Judgment shall have, upon the Effective Date, fully, finally and forever

settled and released any and all Released Claims. The Settling Parties acknowledge, and Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver is a material element of the Settlement Agreement of which this release is a part.

1.32    "United States" as used in this Settlement Agreement includes the District of Columbia and all territories.

1.33    "Valid Claims" means Settlement Claims in an amount approved by the Claims Administrator or found to be valid through the claims processing and/or Dispute Resolution process.

**2.    Settlement Benefits**

2.1    Expense and Lost-Time Reimbursement. All Settlement Class Members who submit a Valid Claim using the Claim Form (**Exhibit A** to this Settlement Agreement) are eligible to receive reimbursement for the following documented out-of-pocket losses and lost time, if not already reimbursed through any other source and caused by the Data Incident, not to exceed $300 per Settlement Class Member: (i) unreimbursed costs to obtain credit reports; (ii) unreimbursed fees relating to a credit freeze; (iii) unreimbursed card replacement fees; (iv) unreimbursed late fees; (v) unreimbursed over-limit fees; (vi) unreimbursed interest on payday loans taken as a result of the Data Incident; (vii) unreimbursed bank or credit card fees; (viii) unreimbursed postage, mileage, and other incidental expenses resulting from lack of access to an existing account; (ix) unreimbursed costs associated with credit monitoring or identity theft insurance purchased prior to the Effective Date, with certification that it was purchased primarily as a result of the Data Incident; and (x) compensation for attested-to unreimbursed lost time spent monitoring accounts, reversing fraudulent charges, or otherwise dealing with the aftermath / clean-up of the breach, at

the rate of $20 per hour for up to four hours. The total of all amounts recovered under this ¶ 2.1 shall not exceed $300 per Settlement Class Member.

2.2    <u>Other Extraordinary Expense Reimbursement</u>. Bosley shall reimburse, as provided for below, each Settlement Class Member in the amount of his or her proven loss, but not to exceed $5,000 per claim (and only one claim per Settlement Class Member), for a monetary out-of-pocket loss that occurred as a result of the Data Incident if: (a) it is an actual, documented, and unreimbursed monetary loss; (b) it was caused by the Data Incident; (c) it occurred during the time period from August 17, 2020, through and including the end of the Claims Deadline (see ¶ 2.4); (d) it is not an amount already covered by one or more of the categories in ¶ 2.1; and (e) the claimant made reasonable efforts to avoid or seek reimbursement for the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance as required under ¶ 2.4.4.  The total of all amounts recovered under this paragraph shall not exceed $5,000 per Settlement Class Member. Settlement Class members with time spent remedying actual documented fraud related to the Data Incident may claim lost time at the rate of $20 per hour for up to four hours, subject to documentation plausibly supporting that the lost time was caused by the Data Incident, and that the claimant made reasonable efforts to avoid, or seek reimbursement for, the lost time. Settlement Class Members with claims under this paragraph may also submit claims for benefits under ¶ 2.1.

2.3    <u>California Statutory Claim Benefits</u>. In addition to the above benefits, California Settlement Subclass Members are eligible for a separate, California statutory damages award. The amount awarded to California Settlement Subclass Members who submit a Valid Claim shall be $50. To redeem this $50 benefit, California Settlement Subclass Members must submit a Claim Form (**Exhibit A** to this Settlement Agreement), provide their physical California residential

address on file with Bosley or provide proof of California residency, and attest that they were a California resident at the time of the Data Incident about which they were notified by Bosley.

2.4    <u>Aggregate Cap and Claims Process</u>. Reimbursement for all Claims under Sections 2.1 to 2.3 of the Settlement Agreement is subject to an aggregate cap of $500,000. Settlement Class Members seeking reimbursement under ¶¶ 2.1 or 2.2, and California Settlement Subclass Members seeking reimbursement under ¶2.3, must complete and submit a valid, written Claim Form to the Claims Administrator, postmarked on or before the 90th day after the deadline for the completion of Notice to Settlement Class Members as set forth in ¶ 3.2 (the "Claims Deadline"). The Notice will specify this deadline and other relevant dates described herein.

2.4.1    As proof of class membership, any Person filing a claim must certify that he or she is a Settlement Class Member and also submit either (1) a unique code to be provided by the Claims Administrator based on the approved list of class members to be sent direct Notice or (2) name and either the physical or email address the Settlement Class Member provided to Bosley for hair restoration services or employment. In order to claim each type of payment, related documentation must be provided with the Claim Form, and the payment claimed pursuant to the Claim Form cannot have been reimbursed from any other source.

2.4.2    The Claim Form must be verified by the Settlement Class Member with a statement that his or her claim is true and correct, to the best of his or her knowledge and belief, and is being made under penalty of perjury. Notarization shall not be required. The Settlement Class Member must plausibly attest that the out-of-pocket expenses and charges claimed were both actually incurred and arose from the Data Incident. Failure to provide supporting attestation and documentation as requested on the Claim Form, and after a

reasonable opportunity to cure after notice from the Claims Administrator (as described below in Section 2.6.2), shall result in denial of a claim. Disputes as to claims submitted under this paragraph are to be resolved pursuant to the provisions stated in ¶ 2.6.

2.4.3    Claimants seeking reimbursement for expenses or losses described in ¶¶ 2.1 or 2.2 must complete and submit the appropriate section of the Claim Form to the Claims Administrator, together with proof of such losses.

2.4.4    Claimants must exhaust all credit monitoring insurance and identity theft insurance before Bosley is responsible for any expenses claimed pursuant to ¶¶ 2.1 or 2.2 of this Settlement Agreement. Nothing in this Settlement Agreement shall be construed to provide for a double payment for the same loss or injury that was reimbursed or compensated by any other source.

2.4.5    To be valid, claims must be complete and submitted to the Claims Administrator on or before the Claims Deadline.

2.4.6    No payment shall be made for emotional distress, personal/bodily injury, or punitive damages, as all such amounts are not recoverable pursuant to the terms of the Settlement Agreement.

2.5    <u>Automatic Benefits</u>. All Settlement Class members will automatically be provided free access to Aura's Financial Shield Services ("Financial Shield) for a period of 2 years from the Effective Date without the need to submit a claim. Financial fraud coverage will be provided through Financial Shield, which protects and safeguards financial assets, freezing identity at 10 different Bureaus including the three main credit bureaus, home and property title monitoring, income tax protection and other services. This service is integrated with Early Warning Services ("EWS") to provide real-time monitoring of financial accounts. Financial Shield also carries a $1

million policy protecting the subscriber. These services will be provided to all Settlement Class members who elect to subscribe to Financial Shield, free of charge

    2.6    <u>Dispute Resolution for Claims</u>.

        2.6.1    The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant is a California Settlement Subclass Member; (3) the claimant has provided all information needed to complete the Claim Form, including any documentation that may be necessary to reasonably support the claimant's class membership and the expenses described in ¶¶ 2.1 through 2.5; and (4) the information submitted could lead a reasonable person to conclude that it is more likely than not the claimant has suffered the claimed losses as a result of the Data Incident (collectively, "Facially Valid"). The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.*, documentation requested on the Claim Form, information regarding the claimed losses, available insurance and the status of any claims made for insurance benefits, and claims previously made for identity theft and the resolution thereof.

        2.6.2    Upon receipt of an incomplete or unsigned Claim Form or a Claim Form that is not accompanied by sufficient documentation to determine whether the claim is Facially Valid, the Claims Administrator shall request Claim Supplementation and give the claimant thirty (30) days to cure the defect before rejecting the claim. If the defect is not cured, then the claim will be deemed invalid and there shall be no obligation to pay the claim.

2.6.3   Following receipt of additional information requested as Claim Supplementation, the Claims Administrator shall have thirty (30) days to accept, in whole or lesser amount, or reject each claim. If, after review of the claim and all documentation submitted by the claimant, the Claims Administrator determines that such a claim is Facially Valid, then the claim shall be paid. If the claim is not Facially Valid because the claimant has not provided all information needed to complete the Claim Form and evaluate the claim, then the Claims Administrator may reject the claim without any further action.

2.6.4   Settlement Class Members shall have thirty (30) days from receipt of the offer to accept or reject any offer of partial payment received from the Claims Administrator. If a Settlement Class Member rejects an offer from the Claims Administrator, the Claims Administrator shall have fifteen (15) days to reconsider its initial adjustment amount and make a final, non-appealable determination.

2.7   <u>Settlement Expenses.</u> All costs for notice to the Settlement Class as required under ¶¶ 3.1 and 3.2, and Costs of Claims Administration under ¶¶ 8.1 and 8.2, shall be paid by Bosley.

2.8   <u>Settlement Class and California Settlement Subclass Certification.</u> The Settling Parties agree, for purposes of this settlement only, to the certification of the Settlement Class and California Settlement Subclass. If the settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class and California Settlement Subclass provided for herein, will be vacated and the Litigation shall proceed as though the Settlement Class and California Settlement Subclass had never been certified, without prejudice to any Person's or Settling Party's position on the issue of class certification or any other issue.  The Settling Parties' agreement to the certification of the

Settlement Class and California Settlement Subclass is also without prejudice to any position asserted by the Settling Parties in any other proceeding, case or action, as to which all of their rights are specifically preserved.

2.9.   Equitable Terms: In addition to the foregoing settlement benefits, Bosley agrees to implement and/or maintain the following data security measures:

2.9.1   Utilize Tenable or another third party tool with similar features to conduct penetration testing of Bosley's computer systems on a periodic basis.

2.9.2   Engage Kroll or a similarly qualified security team to provide security endpoint monitoring services.

2.9.3   Utilize qualified third party security vendors who stay abreast of new or modified security procedures.

2.9.4   Utilize enhanced network segmentation and access controls.

2.9.5   Enable Microsoft Office 365's encryption feature or other comparable encryption feature, implement policy requiring users to employ encryption whenever PII is transmitted; and implement and maintain a data loss prevention solution within one year of the Effective Date.

2.9.6   Implement a written policy for purposes of purging, deleting, and destroying in a reasonably secure manner PII not necessary for provision of Bosley services.

2.9.7   Implement Kroll security monitoring or application with similar features to conduct scanning and security checks on Bosley's computer systems on a regular basis.

2.9.8   Conduct Human Resources security training for all staff at least once per year.

2.9.9    Maintain and implement a written lifecycle management plan.

2.9.10   Obtain an endpoint security assessment from Kroll or other similarly qualified vendor on a periodic basis no less frequently than annually.

2.9.11   Encrypt all patient and consumer data in Bosley's possession while at rest.

2.9.12   For a period of two years following the Effective Date, Class Counsel may make a written request annually for a report of endpoint security analysis, and Bosley is to provide a report within thirty (30) days of said request.

**3.      Order of Preliminary Approval and Publishing of Notice of Fairness Hearing**

3.1.     As soon as practicable after the execution of the Settlement Agreement, Proposed Class Counsel shall file a motion for preliminary approval of the settlement with the Court, with this Settlement Agreement attached as an exhibit, requesting entry of a Preliminary Approval Order in the form attached hereto as **Exhibit F**, or an order substantially similar to such form in both terms and cost, requesting, *inter alia:*

a)      certification of the Settlement Class for settlement purposes only pursuant to ¶ 2.8;

b)      preliminary approval of the Settlement Agreement as set forth herein;

c)      the scheduling of a Final Fairness Hearing and briefing schedule for Motion For Final Hearing and Application for Class Representative Service Awards and Attorneys' Fees and Costs;

d)      appointment of Proposed Class Counsel as Class Counsel;

e)      appointment of Representative Plaintiffs as Class Representatives;

f)      approval of a customary form of short notices to be mailed to Settlement Class Members ("Short-Form Notice") substantially similar to the ones attached hereto as **Exhibit B** (email) and **Exhibit C** (postcard by mail only if email is

undeliverable), and a customary long form notice to be posted on the settlement website ("Long-Form Notice") in a form substantially similar to the one attached hereto as **Exhibit D**, which together shall include a fair summary of the parties' respective litigation positions, the general terms of the settlement set forth in the Settlement Agreement, instructions for how to object to or opt-out of the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time and place of the Final Fairness Hearing;

g)      appointment of a Claims Administrator, or such other provider of claims administrative service, as may be jointly agreed to by the Settling Parties; and

h)      approval of a claim form substantially similar to that attached hereto as **Exhibit A**. The Notice and Claim Form shall be reviewed by the Claims Administrator and may be revised as agreed upon by the Settling Parties prior to such submission to the Court for approval.

3.2    Bosley shall pay for all of the costs associated with the Claims Administrator, and for providing Notice to the Settlement Class in accordance with the Preliminary Approval Order, as well as the costs of such notice. Attorneys' fees, costs, and expenses of Proposed Class Counsel, and service awards to Class Representatives, shall be paid by Bosley as set forth in ¶ 7 below, subject to Court approval. Notice shall be provided to Class Members in accordance with the Notice plan set forth in **Exhibit E**. The Notice plan shall be subject to approval by the Court as meeting constitutional due process requirements. The Claims Administrator shall establish a dedicated settlement website and shall maintain and update the website throughout the claim period, with the Notice and Claim Form approved by the Court, as well as this Settlement Agreement. A toll-free help line staffed with a reasonable number of live operators shall be made available to address Settlement Class Members' inquiries. The Claims Administrator also will

provide copies of the forms of the Notice and Claim Form approved by the Court, as well as this Settlement Agreement, upon request. Prior to the Final Fairness Hearing, Proposed Class Counsel and Bosley shall cause to be filed with the Court an appropriate affidavit or declaration with respect to complying with this provision of Notice. The Notice and Claim Form approved by the Court may be adjusted by the Claims Administrator, respectively, in consultation and agreement with the Settling Parties, as may be reasonable and not inconsistent with such approval. Within thirty (30) days after the entry of the Preliminary Approval Order and to be substantially completed not later than forty-five (45) days after entry of the Preliminary Approval Order, and subject to the requirements of this Agreement and the Preliminary Approval Order, the Claims Administrator will provide notice to the Settlement Class via the Notice Program.

3.3     Proposed Class Counsel and Bosley's counsel shall request that after notice is completed, the Court hold a hearing (the "Final Fairness Hearing") and grant final approval of the settlement set forth herein.

3.4     Bosley will also cause the Claims Administrator to provide (at Bosley's expense) notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

**4.     Opt-Out Procedures**

4.1     Each Person wishing to opt-out of the Settlement Class shall individually sign and timely submit written notice of such intent to the designated Post Office box established by the Claims Administrator. Settlement Class Members will only be able to submit an opt-out request on their own behalf; mass or class opt-outs will not be permitted. The written notice must clearly manifest a Person's intent to be excluded from the Settlement Class. To be effective, written notice must be postmarked no later than the Opt-Out Date, as defined in ¶ 1.19.

4.2     All Persons who submit valid and timely notices of their intent to be excluded from the Settlement Class, as set forth in ¶ 4.1 above, referred to herein as "Opt-Outs," shall not receive any benefits of and/or be bound by the terms of this Settlement Agreement. All Persons falling within the definition of the Settlement Class who do not request to be excluded from the Settlement Class in the manner set forth in ¶ 4.1 above shall be bound by the terms of this Settlement Agreement and Judgment entered thereon.

4.3     In the event that within ten (10) days after the Opt-Out Date as approved by the Court, there have been more than 250 timely and valid Opt-Outs submitted, Bosley may, by notifying Proposed Class Counsel in writing, void this Settlement Agreement. If Bosley voids the Settlement Agreement pursuant to this paragraph, Bosley shall be obligated to pay all settlement expenses already incurred, excluding any attorneys' fees, costs, and expenses of Proposed Class Counsel and incentive awards.

**5.      Objection Procedures**

5.1     Each Settlement Class Member desiring to object to the Settlement Agreement shall submit a timely written notice of his or her objection by the Objection Date. Such notice shall state: (i) the objector's full name, address, telephone number, and email address (if any); (ii) the case name and docket number, *Hashemi, et al. v. Bosley, Inc.,* Case No. 2:21-cv-00946-PSG (RAOx) (C.D. Cal.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (*e.g.*, copy of original notice of the Data Incident or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of all counsel representing the objector in connection with the objection; (vi) a statement whether the objector

and/or his or her counsel will personally appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative.  To be timely, written notice of an objection in the appropriate form must mailed, with a postmark date no later than the Objection Date, to Proposed Class Counsel and to Bosley's counsel as set forth below. For all objections mailed to Proposed Settlement Class Counsel and counsel for Bosley, Proposed Settlement Class Counsel will file them with the Court with the Motion for Final Approval of the Settlement:

*Upon Proposed Class Counsel at:*

**CLAYEO C. ARNOLD, A PROFESSIONAL LAW CORP.**

M. Anderson Berry
865 Howe Avenue
Sacramento, CA 95825

*Upon Bosley's counsel at:*

**BAKER & HOSTETLER LLP**

Teresa C. Chow
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025

5.2     Any Settlement Class Member who fails to comply with the requirements for objecting in ¶ 5.1 shall waive and forfeit any and all rights he or she may have to appear separately and/or to object to the Settlement Agreement, and shall be bound by all the terms of the Settlement Agreement and by all proceedings, orders and judgments in the Litigation. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions of ¶ 5.1.  Without limiting the foregoing, any challenge to the Settlement Agreement, the final order approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

6.      **Releases**

6.1     Upon the Effective Date, each Settlement Class Member, including Representative Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Representative Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action in this or any other forum (other than participation in the settlement as provided herein) in which any Released Claim is asserted.

6.2     Upon the Effective Date, Bosley shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged, Representative Plaintiffs, each and all of the Settlement Class Members, Proposed Class Counsel and Plaintiffs' Counsel, of all claims, including Unknown Claims, based upon or arising out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims, except for enforcement of the Settlement Agreement.  Any claims based upon or arising out of any retail, banking, debtor-creditor, contractual, or other business relationship with such Persons that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Litigation or the Released Claims are specifically preserved and shall not be affected by the preceding sentence.

7.      **Plaintiffs' Counsel's Attorneys' Fees, Costs, and Expenses; Service Award to Representative Plaintiffs**

7.1     The Settling Parties did not discuss the payment of attorneys' fees, costs, expenses and/or service award to Representative Plaintiffs, as provided for in ¶¶ 7.2 and 7.3, until after the

24

substantive terms of the settlement had been agreed upon, other than that Bosley would pay reasonable attorneys' fees, costs, expenses, and service awards to Representative Plaintiffs as may be agreed to by Bosley and Proposed Class Counsel and/or as ordered by the Court. Bosley and Proposed Settlement Class Counsel then negotiated and agreed to the procedure described in ¶ 7.2.

7.2     Proposed Class Counsel has agreed to request, and Bosley has agreed to pay, subject to Court approval, the amount of two hundred and sixty-two thousand, five hundred dollars, and no cents ($262,500) to Proposed Class Counsel for attorneys' fees and costs and expenses. Proposed Class Counsel, in their sole discretion, shall allocate and distribute the amount of attorneys' fees, costs, and expenses awarded by the Court among Plaintiffs' Counsel.

7.3     Subject to Court approval, Bosley has agreed to pay a service award in the amount of  one thousand two hundred fifty dollars and no cents ($1,250) to each of the Representative Plaintiffs.

7.4     Bosley shall pay the Court-approved amount of attorneys' fees, costs, expenses, and service awards to Representative Plaintiffs to an account established by Proposed Class Counsel within thirty (30) days after the entry of an order of Final Approval, regardless of any appeal that may be filed or taken by any Settlement Class Member or third party. Proposed Class Counsel will repay to Bosley the amount of the award of attorneys' fees and costs in the event that the final approval order and final judgment are not upheld on appeal and, if only a portion of fees or costs (or both) is upheld, Proposed Class Counsel will repay to Bosley the amount necessary to ensure the amount of attorneys' fees or costs (or both) comply with any Court order.

7.5     Proposed Class Counsel shall thereafter distribute the award of attorneys' fees, costs, and expenses among Proposed Class Counsel and service award to Representative Plaintiffs consistent with ¶¶ 7.2 and 7.3.  If this Settlement Agreement is terminated or otherwise does not

become Final (*e.g.*, disapproval by the Court or any appellate court), Bosley shall have no obligation to pay attorneys' fees, costs, expenses, or service awards and shall only be required to pay costs and expenses related to notice and administration that were already incurred. Under no circumstances will Proposed Class Counsel or any Settlement Class Member be liable for any costs or expenses related to notice or administration.

7.6    The amount(s) of any award of attorneys' fees, costs, and expenses, and the service award to Representative Plaintiffs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement. No order of the Court, or modification or reversal or appeal of any order of the Court, concerning the amount(s) of any attorneys' fees, costs, expenses, and/or service award ordered by the Court to Proposed Class Counsel or Representative Plaintiffs shall affect whether the Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

**8.    Administration of Claims**

8.1    The Claims Administrator shall administer and calculate the claims submitted by Settlement Class Members under ¶ 2. Proposed Class Counsel and Bosley shall be given reports as to both claims and distribution.  The Claims Administrator's determination of the validity or invalidity of any such claims shall be binding, subject to the dispute resolution process set forth in ¶ 2.6.  All claims agreed to be paid in full by Bosley shall be deemed valid.

8.2     Payment of Valid Claims, whether via mailed check or electronic distribution, shall be made within forty-five (45) days of the Effective Date, or within thirty (30) days of the date that the claim is approved, whichever is later. If this Settlement Agreement is terminated or otherwise does not become Final (*e.g.*, disapproval by the Court or any appellate court) prior to

the payment of Valid Claims, Bosley shall have no obligation to pay such claims and shall only be required to pay costs and expenses related to notice and administration that were already incurred.

8.3      All Settlement Class Members who fail to timely submit a claim for any benefits hereunder within the time frames set forth herein, or such other period as may be ordered by the Court, or otherwise allowed, shall be forever barred from receiving any payments or benefits pursuant to the settlement set forth herein, but will in all other respects be subject to, and bound by, the provisions of the Settlement Agreement, the releases contained herein and the Judgment.

8.4      No Person shall have any claim against the Claims Administrator, Bosley, Proposed Class Counsel, Plaintiffs, Plaintiffs' Counsel, and/or Bosley's counsel based on distributions of benefits to Settlement Class Members.

**9.      Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination**

9.1      The Effective Date of the settlement shall be conditioned on the occurrence of all of the following events:

a)      the Court has entered the Order of Preliminary Approval and Publishing of Notice of a Final Fairness Hearing, as required by ¶ 3.1;

b)      Bosley has not exercised its option to terminate the Settlement Agreement pursuant to ¶ 4.3;

c)      the Court has entered the Judgment granting final approval to the settlement as set forth herein; and

d)      the Judgment has become Final, as defined in ¶ 1.14.

9.2      If all of the conditions specified in ¶ 9.1 hereof are not satisfied, the Settlement Agreement shall be canceled and terminated subject to ¶ 9.4 unless Proposed Class Counsel and Bosley's counsel mutually agree in writing to proceed with the Settlement Agreement.

9.3     Within seven (7) days after the Opt-Out Date, the Claims Administrator shall furnish to Proposed Class Counsel and to Bosley's counsel a complete list of all timely and valid requests for exclusion (the "Opt-Out List").

9.4     In the event that the Settlement Agreement is not approved by the Court or the settlement set forth in the Settlement Agreement is terminated in accordance with its terms, (i) the Settling Parties shall be restored to their respective positions in the Litigation and shall jointly request that all scheduled litigation deadlines be reasonably extended by the Court so as to avoid prejudice to any Settling Party or Settling Party's counsel, and (b) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Settling Parties and shall not be used in the Litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.*  Notwithstanding any statement in this Settlement Agreement to the contrary, no order of the Court or modification or reversal on appeal of any order reducing the amount of attorneys' fees, costs, expenses, and/or service awards shall constitute grounds for cancellation or termination of the Settlement Agreement. Further, notwithstanding any statement in this Settlement Agreement to the contrary, Bosley shall be obligated to pay amounts already billed or incurred for costs of notice to the Settlement Class, Claims Administration, and Dispute Resolution above and shall not, at any time, seek recovery of same from any other party to the Litigation or from counsel to any other party to the Litigation.

10.     **Miscellaneous Provisions**

10.1    The Settling Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate in good faith to the extent reasonably necessary to effectuate

and implement all terms and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

10.2    The Settling Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Litigation. The settlement compromises claims that are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense. The Settling Parties each agree that the settlement was negotiated in good faith by the Settling Parties and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Settling Parties reserve their right to rebut, in a manner that such party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis. It is agreed that neither Party shall have any liability to one another as it relates to the Litigation, except as set forth herein.

10.3    Neither the Settlement Agreement, nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the settlement (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claim, or of any wrongdoing or liability of any of the Released Persons; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the Released Persons in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  Any of the Released Persons may file the Settlement Agreement and/or the Judgment in any action that may be brought against them or any of them in order to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar, or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

10.4    The Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

10.5    The exhibits to this Settlement Agreement and any exhibits thereto are a material part of the Settlement and are incorporated and made a part of the Agreement.

10.6    The Settlement Agreement, together with the exhibits attached hereto, constitutes the entire agreement among the Settling Parties regarding the payment of the Litigation settlement and supersedes all previous negotiations, agreements, commitments, understandings, and writings between Bosley and Representative Plaintiffs in connection with the payment of the Litigation settlement. Except as otherwise provided herein, each party shall bear its own costs. This Settlement Agreement supersedes all previous agreements made between Bosley and Representative Plaintiffs.

10.7    Proposed Class Counsel, on behalf of the Settlement Class, is expressly authorized by Representative Plaintiffs to take all appropriate actions required or permitted to be taken by the Settlement Class pursuant to the Settlement Agreement to effectuate its terms, and also are expressly authorized to enter into any modifications or amendments to the Settlement Agreement on behalf of the Settlement Class which they deem appropriate in order to carry out the spirit of this Settlement Agreement and to ensure fairness to the Settlement Class.

10.8    Each counsel or other Person executing the Settlement Agreement on behalf of any party hereto hereby warrants that such Person has the full authority to do so.

10.9    The Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of executed counterparts shall be filed with the Court.

10.10   The Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Settling Parties.

10.11   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Settlement Agreement, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Settlement Agreement. The Court shall have exclusive jurisdiction over any suit, action, proceeding or dispute arising out of or relating to this Agreement that cannot be resolved by negotiation and agreement by counsel for the Parties. The Court shall retain jurisdiction with respect to the administration, consummation and enforcement of the Agreement and shall retain jurisdiction for the purpose of enforcing all terms of the Agreement. The Court shall also retain jurisdiction over all questions and/or disputes related to the Notice and the Claims Administrator. As part of its agreement to render services in connection with this Settlement, the Claims Administrator shall consent to the jurisdiction of the Court for this purpose.

10.12   The Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to the Settlement Agreement shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of California.

10.13   As used herein, "he" means "he, she, or it;" "his" means "his, hers, or its;" and "him" means "him, her, or it.'' "She" means "she, he, or it;" "hers" means "hers, his, or its;" and "her" means "her, him, or it." "It" means "it, he, or she, him, or her;" and "its" means "its, his, or hers."

10.14   All dollar amounts are in United States dollars (USD).

10.15   Cashing a settlement check is a condition precedent to any Settlement Class Member's right to receive settlement benefits. All settlement checks shall be void ninety (90) days after issuance and shall bear the language: "This check must be cashed within 90 days, after which time it is void."  If a check becomes void, the Settlement Class Member shall have until one hundred eighty (180) days after the Effective Date to request re-issuance. If no request for re-issuance is made within this period, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief shall be extinguished, and Bosley shall have no obligation to make payments to the Settlement Class Member for expense reimbursement under ¶ 2.1 to ¶ 2.3 or any other type of monetary relief. The same provisions shall apply to any re-issued check. For any checks that are issued or re-issued for any reason more than one hundred eighty (180) days from the Effective Date, requests for re-issuance need not be honored after such checks become void.

10.16   All agreements made and orders entered during the course of the Litigation relating to the confidentiality of information shall survive this Settlement Agreement.

IN WITNESS WHEREOF, the parties hereto have caused the Settlement Agreement to be executed, by their duly authorized attorneys.

<u>**AGREED TO BY:**</u>

Paul G. Karlsgodt
BAKER & HOSTETLER LLP
1801 California Street, Suite 4400
Denver, CO  80202
Tel: (303) 861.0600
Email: pkarlsgodt@bakerlaw.com

AND

M. Anderson Berry
CLAYEO C. ARNOLD,
A PROFESSIONAL LAW GROUP
865 Howe Avenue
Sacramento, CAL 95825
Tel: (916) 777-7777
Email: aberry@justice4you.com

32

Teresa C. Chow
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 14
Los Angeles, CA 90025
Tel: (310) 820.8800
Email: tchow@bakerlaw.com

***Counsel for Defendant Bosley, Inc.***

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: (513) 345-8297
Email: jgoldenberg@g-legal.com

Gary E. Mason
David K. Lietz
MASON LIETZ & KLINGER, LLP
5301 Wisconsin Avenue, NW, Suite 305
Washington, D.C. 20016
Tel: (202) 429-2290
Email: gmason@masonllp.com
        dlietz@masonllp.com

Gary M. Klinger
MASON LIETZ & KLINGER LLP
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (202) 429-2290
Email: gklinger@masonllp.com

AND

Charles E. Schaffer
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Email: cschaffer@lfsblaw.com

***Counsel for Proposed Representative Plaintiffs and Class Counsel***

33

Teresa C. Chow
BAKER & HOSTETLER LLP
11601 Wilshire Blvd., Suite 14
Los Angeles, CA 90025
Tel: (310) 820.8800
Email: tchow@bakerlaw.com

**Counsel for Defendant Bosley, Inc.**

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Tel: (513) 345-8297
Email: jgoldenberg@g-legal.com

Gary E. Mason
David K. Lietz
MASON LIETZ & KLINGER, LLP
5301 Wisconsin Avenue, NW, Suite 305
Washington, D.C. 20016
Tel: (202) 429-2290
Email: gmason@masonllp.com
        dlietz@masonllp.com

Gary M. Klinger
MASON LIETZ & KLINGER LLP
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: (202) 429-2290
Email: gklinger@masonllp.com

AND

Charles E. Schaffer
LEVIN SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Email: cschaffer@lfsblaw.com

**Counsel for Proposed Representative Plaintiffs and Class Counsel**

33

# EXHIBIT A

# BOSLEY, INC. SETTLEMENT CLAIM FORM

This Claim Form should be filled out online or submitted by mail if you were notified by mail of the Data Incident announced by Bosley, Inc. ("Bosley") in 2021, and you had unreimbursed out-of-pocket expenses, unreimbursed extraordinary monetary losses, or lost time dealing with the aftermath of the Data Incident. You may get a check if you fill out this Claim Form, if the Settlement is approved, and if you are found to be eligible for a payment.

The Settlement Notice describes your legal rights and options.  To obtain the Settlement Notice and find more information regarding your legal rights and options, please visit the official Settlement Website, [INSERT WEBSITE], or call toll-free [INSERT PHONE #].

If you wish to submit a claim for a settlement payment electronically, you may go online to the Settlement Website, [INSERT], and follow the instructions on the "Submit a Claim" page.

If you wish to submit a claim for a settlement payment via standard mail, you need to provide the information requested below and mail this Claim Form to [INSERT], postmarked by [INSERT MONTH AND DAY], 2022.  Please print clearly in blue or black ink.

## 1.  CLASS MEMBER INFORMATION

*Required Information:*

First: _____   M: _____   Last: _____

Address 1: _____

Address 2: _____

City: _____   State: _____   ZIP: _____

Country: _____

Phone: _____

E-mail: _____

## 2.  PAYMENT ELIGIBILITY INFORMATION

To prepare for this section of the Claim Form, please review the Settlement Notice and Sections 1.3, 1.4, 1.27, 1.28, 1.29, 1.30, and 2 of the Settlement Agreement (available for download at [INSERT WEBSITE]) for more information on who is eligible for a payment and the nature of the expenses or losses that can be claimed.

To help us determine if you are entitled to a settlement payment, please provide as much information as possible.

A. Verification of Class Membership

You are only eligible to file a claim if you were notified by mail of the Data Incident announced by Bosley in 2021, you were residing in the United States the time of the Data Incident, and your personally identifiable information (PII) was potentially compromised in the Data Incident.  Additionally, you are only eligible to file a claim for a California statutory damages award if you were residing in California at the time of the Data Incident.

By submitting a claim and signing the certification below, you are verifying that you were notified by mail of the Data Incident announced by Bosley in 2021.

In addition, to allow the Claims Administrator to confirm your membership in the Class, you must provide either:

(1) The unique identifier provided in the Notice you received by postcard or e-mail;

or

(2) name and one of the following: (a) physical address you provided to Bosley for hair restoration services, employment, or inquiries for the same or (b) e-mail address provided to Bosley for hair restoration services, employment, or inquiries for the same.

Thus, please **EITHER**:

> (1)     Provide the unique identifier provided in the Notice you received: _____.

**OR**

> (2)     Provide your name _____and one of the following:
>
>> (a)  physical address as provided to Bosley for hair restoration services, employment, or inquiries for the same: _____ _____, or
>>
>> (b)  e-mail address as provided to Bosley for hair restoration services, employment, or inquiries for the same: _____.

**<u>UPLOAD DOCUMENT</u>** [SETTLEMENT ADMINISTRATOR TO ADD]

B. Out-Of-Pocket Expenses

Check the box for each category of out-of-pocket expenses or lost time that you incurred as a result of the Data Incident.  Please be sure to fill in the total amount you are claiming for each category and attach the required documentation as described in **bold type** (if you are asked to provide account statements as part of required proof for any part of your claim, you may redact unrelated transactions and all but the first four and last four digits of any account number).  Please round total amounts down or up to the nearest dollar.

I.      Ordinary Expenses Resulting from the Data Incident

☐  Unreimbursed fees or other charges from your bank or credit card company due incurred between August 17, 2020 and [INSERT DATE] (the "Claims Deadline") due to the Data Incident.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

Examples: Unreimbursed overdraft fees, over-the-limit fees, late fees, or charges due to insufficient funds or interest.

**[UPLOAD DOCUMENTS] Required: A copy of a bank of credit card statement or other proof of claimed fees or charges (you may redact unrelated transactions and all but the first four and last four digits of any account number).**

☐  Unreimbursed fees relating to your account being frozen or unavailable incurred between August 17, 2020 and the Claims Deadline due to the Data Incident.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

Examples: You were charged interest by a payday lender due to card cancellation or due to an over-limit situation, or you had to pay a fee for a money order or other form of alternative payment because you could not use your debit or credit card, and these charges and payments were not reimbursed.

**[UPLOAD DOCUMENTS] Required: Attach a copy of receipts, bank statements, credit card statements, or other proof that you had to pay these fees (you may redact unrelated transactions and all but the first four and last four digits of any account number).**

☐  Unreimbursed fees or other charges relating to the reissuance of your credit or debit card incurred between August 17, 2020 and the Claims Deadline due to the Data Incident.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

Examples: Unreimbursed fees that your bank charged you because you requested a new credit or debit card.

**[UPLOAD DOCUMENTS] Required: Attach a copy of a bank or credit card statement or**

**other receipt showing these fees (you may redact unrelated transactions and all but the first four and last four digits of any account number).**

☐ Other unreimbursed incidental telephone, internet, mileage or postage expenses directly related to the Data Incident incurred between August 17, 2020 and the Claims Deadline due to the Data Incident.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

Examples: Unreimbursed long distance phone charges, cell phone charges (only if charged by the minute), or data charges (only if charged based on the amount of data used).

**[UPLOAD DOCUMENTS] Required: Attach a copy of the bill from your telephone company, mobile phone company, or internet service provider that shows the charges (you may redact unrelated transactions and all but the first four and last four digits of any account number.**

☐ Credit Reports or credit monitoring charges purchased between August 17, 2020 and the Claims Deadline due to the Data Incident. This category is limited to services purchased primarily as a result of the Data Incident and if purchased between August 17, 2020 and the Claims Deadline

To obtain reimbursement under this category, you must attest to the following:

☐ I purchased credit reports between August 17, 2020 and the Claims Deadline, primarily due to the Data Incident and not for other purposes.

| DATE | COST |
|------|------|
|      |      |
|      |      |

Examples: The cost of a credit report(s) that you purchased after hearing about the Data Incident.

**[UPLOAD DOCUMENT] Required: Attach a copy of a receipt or other proof of purchase for each product or service purchased (you may redact unrelated transactions).**

☐ Between one (1) and four (4) hours of documented time spent monitoring accounts or otherwise dealing with the aftermath / clean-up of the Data Incident between August 17, 2020 and the Claims Deadline (round down to the nearest hour and check only one box).

☐ 1 Hour          ☐ 2 Hours          ☐ 3 Hours          ☐ 4 Hours

Examples: You spent at least one (1) full hour calling customer service lines, writing letters or e-mails, or on the internet in order to get fraudulent charges reversed or in updating automatic payment programs because your card number changed.  Please note that the time that it takes to

fill out this Claim Form is not reimbursable and should not be included in the total number of hours claimed.

Check all activities, below, which apply.

☐ Calling bank/credit card customer service lines regarding fraudulent transactions.

☐ Writing letters or e-mails to banks/credit card companies in order to have fraudulent transactions reversed.

☐ Time on the internet verifying fraudulent transactions.

☐ Time on the internet updating automatic payment programs due to new card issuance.

☐ Calling credit reporting bureaus regarding fraudulent transactions and/or credit monitoring.

☐ Writing letters or e-mails to credit reporting bureaus regarding correction of credit reports.

☐ Other. Provide description(s) here: _____
_____
_____
_____.

**<u>Attestation (You must check the box below to obtain compensation for lost time)</u>**

☐ **I attest under penalty of perjury that I spent the number of hours claimed above making reasonable efforts to deal with the Data Incident.**

II.   <u>Extraordinary Expenses</u>

If you have expenses related to the Data Incident that are more than the value or different than the type of ordinary expenses covered in the categories in Section I above, you may be entitled to compensation for your extraordinary expenses. To obtain reimbursement under this category, you must attest to the following:

☐ I incurred out-of-pocket unreimbursed expenses that occurred more likely than not as a result of the Data Incident during the time period from August 17, 2020 through the end of the Claims Deadline other than those expenses covered by one or more of the categories above, and I made reasonable efforts to avoid, or seek reimbursement for the loss, including but not limited to exhausting all available credit monitoring insurance and identity theft insurance.

☐ Unreimbursed fraudulent charges incurred between August 17, 2020 and the Claims Deadline due to the Data Incident.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|

|  |  |  |
|---|---|---|
|  |  |  |

Examples: Fraudulent charges that were made on your credit or debit card account and that were not reversed or repaid even though you reported them to your bank or credit card company. *Note: most banks are required to reimburse customer in full for fraudulent charges on payment cards that they issue.*

**[UPLOAD DOCUMENTS] Required: The bank statement or other documentation reflecting the fraudulent charges, as well as documentation reflecting the fact that the charge was fraudulent (you may redact unrelated transactions and all but the first four and last four digits of any account number). If you do not have anything in writing reflecting the fact that the charge was fraudulent (e.g., communications with your bank or a police report), please identify the approximate date that you reported the fraudulent charge, to whom you reported it, and the response.**

Date reported:

_____

Description of the person(s) to whom you reported the fraud:

_____

_____

☐ Check this box to confirm that you have exhausted all applicable insurance policies, including but not limited to credit monitoring insurance and identity theft insurance, and that you have no insurance coverage for these fraudulent charges.

☐ Between one (1) and four (4) hours of documented time spent remedying actual documented fraud relating to the Data Incident between August 17, 2020 and the Claims Deadline (round down to the nearest hour and check only one box), which has not already been claimed in Section I, above.

    ☐ 1 Hour        ☐ 2 Hours        ☐ 3 Hours        ☐ 4 Hours

Examples: You spent at least one (1) full hour calling customer service lines, writing letters or e-mails, or on the internet in order to get fraudulent charges reversed or in updating automatic payment programs because your card number changed.  Please note that the time that it takes to fill out this Claim Form is not reimbursable and should not be included in the total number of hours claimed.

Check all activities, below, which apply.

☐      Calling bank/credit card customer service lines regarding fraudulent transactions.

☐      Writing letters or e-mails to banks/credit card companies in order to have fraudulent transactions reversed.

☐      Time on the internet verifying fraudulent transactions.

☐      Time on the internet updating automatic payment programs due to new card issuance.

☐      Calling credit reporting bureaus regarding fraudulent transactions and/or credit monitoring.

☐      Writing letters or e-mails to credit reporting bureaus regarding correction of credit reports.

☐      Other. Provide description(s) here: _____

_____

_____

_____.

**[UPLOAD DOCUMENT] Required: Attach a copy of any and all receipts, correspondence, confirmations, and other documents supporting the lost time claimed immediately above.**


☐ Other unreimbursed out-of-pocket expenses that were incurred between August 17, 2020 and the Claims Deadline as a result of the Data Incident that are not accounted for in your response above.

| DATE | DESCRIPTION | AMOUNT |
|------|-------------|--------|
|      |             |        |
|      |             |        |

Examples: This category includes any other unreimbursed expenses or charges that are not otherwise accounted for in your answers to the questions above, including any expenses or charges that you believe were the result of an act of identity theft.

**[UPLOAD DOCUMENTS] Required: Describe the expense, why you believe that it is related to the Data Incident, and provide as much detail as possible about the date you incurred the expense(s) and the company or person to whom you had to pay it.  Please provide copies of any receipts, police reports, or other documentation supporting your claim.  For claims of reimbursement for lost time, you must provide actual documentation reflecting the amount of time you spent dealing with replacement card issues or in reversing fraudulent charges sufficient to prove how much time was spent, on what, and that the time was spent on issues related to the Data Incident.  The Claims Administrator may contact you for additional information before processing your claim.**

_____
_____
_____
_____

☐ Check this box to confirm that you have exhausted all credit monitoring insurance and identity theft insurance you might have for these out-of-pocket expenses before submitting this Claim Form.

III.    <u>California Residents.</u>

If you resided in the State of California at the time of the Data Incident announced by Defendant on or about January 26, 2021, you are eligible to claim up to a $50 cash payment. This amount may be reduced on a *pro rata* basis if the claims made exceeds the funds available. In order to make this claim, please check the applicable box below, and provide the required information or documents:

☐ If your mailing address on file with Bosley at the time of the Data Incident in August 2020 was a physical residence located in the State of California, please check this box and provide your physical California residential address, below:

_____

☐ If your mailing address on file with Bosley at the time of the Data Incident in August 2020 was <u>NOT a physical residence located in the State of California</u>, please check this box and provide proof of California residency as required below:

**[UPLOAD DOCUMENTS] Required: Please include proof of California residency for the applicable time period. Examples may include mortgage statement, property tax statement, utility bill, or other document evidencing residency in the State of California at the time of Data Incident.**

**<u>Attestation (You must check the box below to obtain compensation as a California resident)</u>**

**☐ I attest under penalty of perjury that I resided in the State of California at time of the August 2020 Data Incident, and that I resided at the residential address set forth above or as evidenced by the proof of residency submitted herewith.**

C.    Certification

I declare under penalty of perjury under the laws of the United States and the State of California that the information supplied in this Claim Form by the undersigned is true and correct to the best of my recollection, and that this form was executed at _____ [City], _____ [State] on the date set forth below.

I understand that I may be asked to provide supplemental information by the Claims Administrator before my claim will be considered complete and valid.

Print Name:_____

Signature:_____

Date:_____

D. Submission Instructions

Once you've completed all applicable sections, please mail this Claim Form and all required supporting documentation to the address provided below, postmarked by _____, 2022.

*Hashemi, et al. v. Bosley, Inc.*
[INSERT CLAIMS ADMINISTRATOR
MAILING INFORMATION]

# EXHIBIT B

**Subject Line:**          **Bosley, Inc. 2020 Data Incident Class Action Settlement**

**\*\*\*\*\***

## If you were notified by mail of a Data Incident impacting Bosley, Inc. in 2020, you may be eligible for a payment from a class action settlement.

A Settlement has been reached in a class action lawsuit about a data incident that occurred in August 2020, which potentially exposed the personal information of Bosley, Inc. ("Bosley") customers and employees (the "Data Incident"). The lawsuit alleges that Bosley was responsible for the Data Incident because it did not take appropriate care to protect personal information it collected from hacking. Bosley denies the claims and denies any wrongdoing.

### Who Is Included?

Bosley's records show you are a likely member of the Settlement Class and/or the California Settlement Subclass. The Settlement Class includes all persons residing in the United States who were notified by mail in January or February 2021 of the Data Incident, and whose personally identifiable information (PII) was potentially compromised in the Data Incident. Members of the Settlement Class who were residing in the State of California at the time of the Data Incident are also included in the California Settlement Subclass.

### What Can I Get?

The Settlement will reimburse people who submit claims for:

(1) Unreimbursed, documented out-of-pocket expenses and/or compensation for lost time, that resulted from the Data Incident, up to a maximum of $300 per person; and

(2) Unreimbursed, documented extraordinary expenses and lost time related to actual fraud that were caused by the Data Incident, up to a maximum of $5,000 per person.

(3) Enrollment in Aura's Financial Shield Services  for a period of 2 years from the effective date of the Settlement without the need to submit a claim. A link with a redeemable code to be used directly with Aura is provided here: **Link; Redemption Code.**

In addition, California residents who are members of the California Settlement Subclass are eligible for a California statutory damages award of up to $50.

Individual payments may be reduced if the total value of all valid claims exceeds $500,000.

Finally, as part of the Settlement, Bosley has agreed to implement and/or maintain certain data security measures.

**If you are a Settlement Class Member and/or California Settlement Subclass Member and you want to receive any benefits from the Settlement, you must complete and submit a Claim Form along with any required supporting information. Claim Forms can be found and completed on this website: www.bosleysettlement.com. The deadline to submit a Claim Form is Month 00, 2022.**

**What Are My Rights?**

**Do Nothing.** You will be legally bound by decisions of the Court and you give up the right to sue for the claims in this case.

**Exclude Yourself.** If you exclude yourself, you are not to be legally bound by the Settlement and you keep your right to sue.  However, you will not get any money from the Settlement.  You must submit your exclusion by Month 00, 2022.

**Object.** You can stay in the Settlement and tell the Court why you do not like the Settlement.  Objections must be submitted by Month 00, 2022.  Detailed instruction on how to exclude yourself or object to the Settlement are found in the full Class Notice on the website or by calling 000-000-0000

**When Will the Court Approve the Settlement?**

The Court will hold a Final Settlement Approval Hearing on Month 00, 2022 at 00:00 a.m. at the United States District Court for the Central District of California located at 350 West First Street, Courtroom 6A, Los Angeles, CA 90012 (or via Zoom if the Court so orders), to consider whether to approve the Settlement. The Court will consider objections, determine if the Settlement is fair, and consider Class Counsel's request for attorneys' fees, costs, and expenses of up to $262,500 and service awards of $1,250 for each of the Representative Plaintiffs. You or your own lawyer may ask to appear at the hearing at your own expense to be heard by the Court, but you do not have to. The motion for attorneys' fees and costs and service awards for the Representative Plaintiffs will be posted on the website after it is filed with the Court.

**Who Represents the Settlement Class?**

The Court has appointed the following Class Counsel to represent the Settlement Class in this Lawsuit: M. Anderson Berry of Clayeo C. Arnold, 865 Howe Avenue, Sacramento, CA 95825, (916) 777-7777; Jeffrey S. Goldenberg of Goldenberg Schneider, LPA, 4445 Lake Forest Drive, Suite 490, Cincinnati, OH 45242, (513) 345-8297; David K. Lietz of Mason Lietz & Klinger LLP, 5101 Wisconsin Avenue, NW, Suite 305, Washington D.C. 20016, (202) 429-2290;, and Charles E. Schaffer of Levin Sedran & Berman, LLP, 510 Walnut Street, Suite 500, Philadelphia, PA 19106, (215) 592-1500.

**Where Can I Find More Information?**

*This is only a summary*. You can find the full Class Notice, along with a full description of the proposed Settlement, related Court documents, dates and forms, and additional information on how Settlement Class Members can exclude themselves from the Settlement or object to it by visiting **www.bosleysettlement.com** or calling 1-000-000-0000. You may also contact the Claims Administrator at Bosley Settlement, c/o Claims Administrator, PO Box 0000, City, State, Zip.  **DO NOT CONTACT THE JUDGE, THE COURT, OR THE DEFENDANTS.**

**www.bosleysettlement.com**

**1-000-000-0000**

# EXHIBIT C

**If you were notified by mail of a Data Incident impacting Bosley, Inc. in 2021, you may be eligible for a payment from a class action settlement.**

A Settlement has been reached in a class action lawsuit ("Lawsuit") filed by Ken Hashemi, Steve Altes, Sandra Johnson-Foster, Gregory Boute, Rafael Artime, and John Bowden (the "Representative Plaintiffs") about a data incident that occurred in August 2020 ("Data Incident"), which potentially exposed personal information of Bosley, Inc. ("Bosley") customers and employees. The Lawsuit alleges that Bosley was responsible for the Data Incident because it did not take appropriate care to protect personal information it collected from hacking. Bosley denies the claims and denies any wrongdoing.

**Bosley records show you are a likely member of the Settlement Class.** The Settlement will reimburse eligible people who submit claims for: (1) unreimbursed, documented out-of-pocket expenses and compensation for lost time, that resulted from the Data Incident, up to a maximum of $300 per person; and (2) unreimbursed, documented extraordinary expenses that were caused by the Data Incident, up to a maximum of $5,000 per person.  In addition, California residents are eligible for a California statutory damages award of up to $50.

**If you are a Settlement Class Member and you want to receive any cash benefits from the Settlement, you must complete and submit a Claim Form along with any required supporting information. Claim Forms can be found and completed on this website: www.bosleysettlement.com. The deadline to submit a Claim Form is Month 00, 2022.**

The Settlement also includes automatic enrollment in Aura's Financial Shield Services  for a period of 2 years from the effective date of the Settlement without the need to submit a claim.  A link with a redeemable code to be used directly with Aura is provided on the other side of this Notice.

Settlement Class Members may also request exclusion from the Settlement or object to it. Requests for exclusion are due by Month 00, 2022. Settlement Class Members who do not request exclusion can object to the Settlement.  Objections are due by Month 00, 2022. The Court will hold a Final Settlement Approval Hearing on Month 00, 2022 at 00:00 a.m. at the United States District Court for the Central District of California located at 350 West First Street, Courtroom 6A, Los Angeles, CA 90012, to consider whether to approve the settlement. The Court will hear objections, determine if the Settlement is fair, and consider Class Counsel's request for attorneys' fees, costs, and expenses of up to $262,500 and service awards of $1,250 for each of the Representative Plaintiffs. You or your own lawyer may ask to appear at the hearing to be heard by the Court, but you do not have to. The motion for attorneys' fees and costs and service awards for the Representative Plaintiffs will be posted on the website after it is filed with the Court.

The Court has appointed the following Class Counsel to represent the Settlement Class in this Lawsuit: M. Anderson Berry of Clayeo C. Arnold, 865 Howe Avenue, Sacramento, CA 95825, (916) 777-7777; Jeffrey S. Goldenberg of Goldenberg Schneider, LPA, 4445 Lake Forest Drive, Suite 490, Cincinnati, OH 45242, (513) 345-8297; David K. Lietz of Mason Lietz & Klinger LLP, 5301 Wisconsin Avenue, NW, Suite 305, Washington D.C. 20016, (202) 429-2290; and Charles E. Schaffer of Levin Sedran & Berman, LLP, 510 Walnut Street, Suite 500, Philadelphia, PA 19106, (215) 592-1500.

***This is only a summary***. For detailed information visit **www.bosleysettlement.com** or call **1-000-000-0000**. You may contact the Claims Administrator at Bosley Settlement, c/o Claims Administrator, PO Box 0000, City, State, Zip.

# EXHIBIT D

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

## If you were notified by mail of the Data Incident impacting Bosley, Inc. in 2020, you may be eligible for a class action settlement payment.

*A court authorized this notice.  This is not a solicitation from a lawyer.*

*Si desea recibir esta notificación en español, llámenos al 1-XXX-XXX-XXXX.*

- A Settlement has been reached in a class action lawsuit about a data incident that occurred in August 2020 (the "Data Incident"), which potentially exposed the personal information of Bosley, Inc. ("Bosley") customers and employees.

- The cyber criminals responsible for the Data Incident uploaded a virus onto Bosley's systems, encrypting Bosley's data, including personal information of certain Bosley customers and employees.  The potentially compromised personal information included Social Security numbers, driver's license numbers, financial account information, medical information and/or health insurance information.  Subsequently, lawsuits were filed against Bosley, alleging that it did not take appropriate care to protect its customers and employees from the Data Incident.

- The Settlement includes all persons all persons residing in the United States whose personally identifiable information (PII) was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, including but not limited all such persons who were residing in the State of California at the time of the Data Incident.

- The Settlement provides payments to people who submit valid claims for out-of-pocket expenses and lost time that were incurred and plausibly arose as a result of the Data Incident, and for other extraordinary unreimbursed monetary losses and lost time.  In addition, California residents are eligible for a California statutory damages award of up to $50.

- The Settlement also provides for automatic enrollment in Aura's Financial Shield Services for a period of 2 years from the effective date of the Settlement without the need to submit a claim.

**Your legal rights are affected even if you do nothing.  Read this Notice carefully.**

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **Submit a Claim** | The only way to get a payment.<br>You must submit a claim by Month Day, 2022. |
| **Ask to be Excluded** | Get no payment.  The only option that allows you to sue Bosley over the claims resolved by this Settlement.<br>You must exclude yourself by Month Day, 2022. |
| **Object** | Write to the Court about why you do not like the Settlement.<br>You must object by Month Day, 2022. |
| **Do Nothing** | Get no payment.  Give up rights. |

- These rights and options – **and the deadlines to exercise them** – are explained in this notice.

- The Court in charge of this case still has to decide whether to grant final approval of the Settlement.  Payments will only be made after the Court grants final approval of the Settlement and after any appeals are resolved.

**Questions?  Call 1-XXX-XXX-XXXX or visit [WEBSITE]**

1

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**........................................................................ Page __
1.  Why was this Notice issued?
2.  What is this lawsuit about?
3.  Why is this lawsuit a class action?
4.  Why is there a Settlement?

**WHO IS IN THE SETTLEMENT?** ........................................................ Page __
5.  How do I know if I am included in the Settlement?
6.  What if I am not sure whether I am included in the Settlement?

**THE SETTLEMENT BENEFITS**............................................................ Page __
7.  What does the Settlement provide?
8.  What payments are available for Expense Reimbursement?
9.  What payments are available for Extraordinary Expense Reimbursement?

**HOW TO GET BENEFITS**...................................................................... Page __
10. How do I get benefits?
11. How will claims be decided?

**REMAINING IN THE SETTLEMENT** ................................................. Page __
12. Do I need to do anything to remain in the Settlement?
13. What am I giving up as part of the Settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT**........................ Page __
14. If I exclude myself, can I get a payment from this Settlement?
15. If I do not exclude myself, can I sue Bosley for the same thing later?
16. How do I exclude myself from the Settlement?

**THE LAWYERS REPRESENTING YOU** ............................................. Page __
17. Do I have a lawyer in this case?
18. How will the lawyers be paid?

**OBJECTING TO THE SETTLEMENT** ................................................. Page __
19. How do I tell the Court that I do not like the Settlement?
20. What is the difference between objecting and asking to be excluded?

**THE COURT'S FAIRNESS HEARING**................................................. Page __
21. When and where will the Court decide whether to approve the Settlement?
22. Do I have to attend the hearing?
23. May I speak at the hearing?

**IF YOU DO NOTHING** ......................................................................... Page __
24. What happens if I do nothing?

**GETTING MORE INFORMATION** ..................................................... Page __
25. How do I get more information?

## BASIC INFORMATION

**1.  Why was this Notice issued?**

The Court authorized this notice because you have a right to know about the proposed Settlement in this class action lawsuit and about all of your options before the Court decides whether to give "final approval" to the Settlement.  This notice explains the legal rights and options that you may exercise before the Court decides whether to approve the Settlement.

Judge Philip S. Gutierrez of the United States District Court for the Central District of California is overseeing this case.  The case is known as *Hashemi, et. al. v. Bosley, Inc.*, Case No. 21-cv-00946-PSG (RAOx).  The persons who sued are called the Plaintiffs.  Bosley is called the Defendant.

**2.  What is this lawsuit about?**

The lawsuit claims that Bosley was responsible for the Data Incident and asserts claims such as: negligence, breach of confidence, violation of California's Unfair Competition Law, violation of the California Consumer Privacy Act, breach of implied contract, violation of the California Confidentiality of Medical Information Act, violation of the California Customer Records Act, violation of the Florida Deceptive and Unfair Trade Practices Act, violation of New York General Business Law § 349, intrusion into private affairs / invasion of privacy, and declaratory Judgment.  The lawsuit seeks compensation for people who experienced unreimbursed, documented out-of-pocket expenses, fraudulent charges, and/or lost time spent dealing with the aftermath / clean-up of the Data Incident; or unreimbursed, documented extraordinary monetary losses as a result of the Data Incident.

Bosley denies all of the Plaintiffs' claims and maintains that it did not do anything wrong.

**3.  Why is this lawsuit a class action?**

In a class action, one or more people called "Representative Plaintiffs" sue on behalf of all people who have similar claims.  All of these people together are the "Class" or "Class Members."  In this case, the Representative Plaintiffs are Ken Hashemi, Steve Altes, Sandra Johnson-Foster, Gregory Boute, Rafael Artime, and John Bowden.  In addition, Steve Altes is representing a subclass of California residents whose personal information was potentially compromised in the Data Incident.  One Court resolves the issues for all Class Members, except for those who exclude themselves from the Class.

**4.  Why is there a Settlement?**

By agreeing to settle, both sides avoid the cost and risk of a trial, and people who submit valid claims will get compensation.  The Representative Plaintiffs and their attorneys believe the Settlement is fair, reasonable, and adequate and, thus, best for the Class and its members.  The Settlement does NOT mean that Bosley did anything wrong.

# WHO IS IN THE SETTLEMENT?

> **5.  How do I know if I am included in the Settlement?**

You are included in the Settlement Class if you were notified by mail of the Data Incident in 2021, and you were a person residing in the United States whose personally identifiable information (PII) was potentially compromised in the Data Incident.  Members of the Settlement Class who were residing in the State of California at the time of the Data Incident are also included in the California Settlement Subclass.

Specifically excluded from the Settlement Class and California Settlement Subclass are: (i) Bosley and Bosley's parents, subsidiaries, affiliates, officers and directors, and any entity in which Bosley has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (iii) any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; (iv) banks and other entities that issued payment cards which were utilized at Bosley during the Data Incident; (v) the attorneys representing the any of the parties in the lawsuit; (vi) all judges assigned to hear any aspect of the lawsuit, as well as their immediate family members; and (vii) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the Data Incident, or who pleads *nolo contendere* to any such charge.

> **6.  What if I am not sure whether I am included in the Settlement?**

If you are not sure whether you are included in the Settlement, you may call 1-XXX-XXX-XXXX with questions or visit [WEBSITE]. You may also write with questions to Bosley Claims Administrator, PO Box XXXX, City, State zip code. Please do not contact the Court with questions.

# THE SETTLEMENT BENEFITS

> **7.  What does the Settlement provide?**

The Settlement will provide payments to people who submit valid claims.

There are two types of general payments that are available:

    (1) <u>Ordinary Expense Reimbursement</u> (Question 8) and

    (2) <u>Extraordinary Expense Reimbursement</u> (Question 9).

You may submit a claim for either or both types of payments.  You must also provide proof of your class membership in the form of either (1) the unique identifier provided in the notice you received by postcard or e-mail; or (2) name and one of the following: (a) physical address you provided to Bosley for hair restoration services, employment, or inquiries for the same or (b) e-mail address provided to Bosley for hair restoration services, employment, or inquiries for the same.  If you provide a bill or payment card statement as part of required proof for any part of your claim, you may redact unrelated transactions and all but the first four and last four digits of any account number. In order to claim each type of payment, you must provide related documentation with the Claim Form, and the expense for which you are submitting a claim form cannot have been reimbursed through any other source.

**Questions?  Call 1-XXX-XXX-XXXX or visit [WEBSITE]**

The Settlement also provides for automatic enrollment in Aura's Financial Shield Services for a period of 2 years from the effective date of the Settlement without the need to submit a claim. A link with a redeemable code to be used directly with Aura was provided in the Notice received from the Claims Administrator.

In addition, California residents who are members of the California Settlement Subclass are eligible for a California statutory damages award of up to $50.

Finally, as part of the Settlement, Bosley has agreed to implement and/or maintain certain data security measures. More details are provided in the Settlement Agreement, which is available at [WEBSITE].

## 8.  What payments are available for Expense Reimbursement?

Class Members are each eligible to receive reimbursement of up to $300 (in total, per person) for the following categories of unreimbursed, documented out-pocket expenses resulting from the Data Incident:

- Cost to obtain credit reports;
- Fees relating to a credit freeze;
- Card replacement fees;
- Late fees;
- Overlimit fees;
- Interest on payday loans taken as a result of the Data Incident;
- Other bank or credit card fees;
- Postage, mileage, and other incidental expenses resulting from lack of access to an existing account;
- Costs associated with credit monitoring or identity theft insurance purchased prior to the, if purchased primarily as a result of the Data Incident; and
- up to four (4) hours of unreimbursed attested lost time (at $20 per hour) spent monitoring accounts, reversing fraudulent charges, or otherwise dealing with the aftermath / clean-up of the Data Incident (only if at least one full hour was spent and the Class Member provides a description of the activities performed during the time claimed as reflected in the Claim Form.

## 9.  What payments are available for Extraordinary Expense Reimbursement?

Class Members who had other extraordinary unreimbursed fraudulent charges or out-of-pocket losses and/or lost time incurred as a result of, or in resolving issues and losses caused by, the Data Incident, are eligible to make a claim for reimbursement of up to $5,000 per Class Member.  As part of the claim, the Class Member must plausibly show that:

(1) it is an actual, documented, and unreimbursed monetary loss;

(2) the loss was caused by the Data Incident;

(3) the loss occurred during the time period from August 17, 2020 through and including the end of the Claims Deadline;

(4) the loss is not already covered by one or more of the categories in Question 8 or reimbursed through any other source; and

(5) a reasonable effort was made to avoid or seek reimbursement for the loss (including exhaustion of all available credit monitoring insurance and identity theft insurance).

Class Members who had documented extraordinary unreimbursed expenses may also make a claim for up to four (4) hours of unreimbursed attested lost time (at $20 per hour) spent monitoring accounts, reversing fraudulent charges, or otherwise dealing with the aftermath / clean-up of the Data Incident (only if at least one full hour was spent and the Class Member provides a description of the activities performed during the time claimed as reflected in the Claim Form.

More details are provided in the Settlement Agreement, which is available at [WEBSITE].

## HOW TO GET BENEFITS

| 10.  How do I get benefits? |
| --- |

To ask for a payment, you must complete and submit a Claim Form.  Claim Forms are available at [WEBSITE], or you may request one by mail by calling [PHONE #].  Read the instructions carefully, fill out the Claim Form, and mail it postmarked no later than **Month Day,** 2022 to:

Bosley Claims Administrator
PO Box XXXXX
City, State zip code

| 11.  How will claims be decided? |
| --- |

The Claims Administrator will decide whether the information provided on a Claim Form is complete and valid.  The Claims Administrator may require additional information from any claimant.  If the required information is not provided timely, the claim will be considered invalid and will not be paid.

## REMAINING IN THE SETTLEMENT

| 12.  Do I need to do anything to remain in the Settlement? |
| --- |

You do not have to do anything to remain in the Settlement, but if you want a payment you must submit a Claim Form postmarked by **Month Day,** 2022.

| 13.  What am I giving up as part of the Settlement? |
| --- |

If the Settlement becomes final, you will give up your right to sue for the claims being resolved by this Settlement.  The specific claims you are giving up are described in Section 1.23 of the Settlement Agreement.  You will be "releasing" Bosley and all related people or entities as described in Section 6 of the Settlement Agreement.  The Settlement Agreement is available at [WEBSITE].

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully.  If you have any questions you can talk to the law firms listed in Question 17 for free or,

**Questions?  Call 1-XXX-XXX-XXXX or visit [WEBSITE]**

you can, of course, talk to your own lawyer at your own expense if you have questions about what this means.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want a payment from this Settlement, but you want to keep the right to sue Bosley about issues in this case, then you must take steps to get out of the Settlement Class. This is called excluding yourself from – or is sometimes referred to as "opting out" of – the Settlement Class.

| **14. If I exclude myself, can I get a payment from this Settlement?** |
| --- |

No. If you exclude yourself, you will not be entitled to any benefits of the Settlement, but you will not be bound by any judgment in this case.

| **15. If I do not exclude myself, can I sue Bosley for the same thing later?** |
| --- |

No. Unless you exclude yourself, you give up any right to sue for the claims that this Settlement resolves. You must exclude yourself from the Settlement Class to start your own lawsuit or to be part of any different lawsuit relating to the claims in this case. If you exclude yourself, do not submit a Claim Form to ask for a payment.

| **16. How do I exclude myself from the Settlement?** |
| --- |

To exclude yourself, send a letter that says you want to be excluded from the Settlement in *Hashemi, et. al. v. Bosley, Inc. et. al.*, Case No. 21-cv-00946-PSG (RAOx). Include your name, address, and signature. You must mail your Exclusion Request postmarked by **Month Day**, **2022**, to:

Bosley Settlement Exclusions
PO Box XXXXX
City, State zip code

## THE LAWYERS REPRESENTING YOU

| **17. Do I have a lawyer in this case?** |
| --- |

Yes. The Court appointed the following lawyers as "Class Counsel": M. Anderson Berry of Clayeo C. Arnold, 865 Howe Avenue, Sacramento, CA 95825, (916) 777-7777; Jeffrey S. Goldenberg of Goldenberg Schneider, LPA, 4445 Lake Forest Drive, Suite 490, Cincinnati, OH 45242, (513) 345-8291; David K. Lietz of Mason Lietz & Klinger LLP, 5101 Wisconsin Avenue, NW, Suite 305, Washington D.C. 20016, (202) 429-2290;, and Charles E. Schaffer of Levin Sedran & Berman, LLP, 510 Walnut Street, Suite 500, Philadelphia, PA 19106, (215) 592-1500.

You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense.

| 18.  How will the lawyers be paid? |
|---|

Class Counsel will request the Court's approval of an award for attorneys' fees and reasonable costs and expenses of up to $262,500.  Class Counsel will also request approval of an incentive award of $1,250 for each of the Representative Plaintiffs.  Any amount that the Court awards for attorneys' fees, costs, expenses, and an incentive award will be paid separately by Bosley and will not reduce the amount of payments to Class Members who submit valid claims.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or some part of it.

| 19.  How do I tell the Court that I do not like the Settlement? |
|---|

You can object to the Settlement if you do not like it or some part of it.  The Court will consider your views.  To do so, you must **file** a written objection in this case, *Hashemi, et. al. v. Bosley, Inc.*, Case No. 21-cv-00946-PSG (RAOx), with the Clerk of the Court at the address below.

Your objection must include all of the following:

- your full name , address, telephone number, and e-mail address (if any);

- information identifying you as a Settlement Class Member, including proof that you are a member of the Settlement Class, which is described in response to Question 5;

- a written statement of all grounds for the objection, accompanied by any legal support for the objection that you believe is applicable;

- the identity of all counsel representing you, if any, in connection with your objection;

- a statement confirming whether you intend to personally appear and/or testify at the Final Fairness Hearing;

- your signature or the signature of your duly authorized attorney or other duly authorized representative;

To be timely, your objection must be **filed** with the Clerk of the Court for the United States District Court for the Central District of California no later than **Month Day**, 2022.

In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel, postmarked no later than **Month Day,** 2022:

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Office of the Clerk U.S. District Court for the Central District of California [INSERT ADDRESS] | M. Anderson Berry Clayeo C. Arnold 865 Howe Avenue Sacramento, CA 95825 | Teresa C. Chow Baker & Hostetler LLP 11601 Wilshire Blvd. Suite 1400 Los Angeles, CA 9002 |

## 20.  What is the difference between objecting and asking to be excluded?

Objecting is telling the Court that you do not like the Settlement and why you do not think it should be approved.  You can object only if you do not exclude yourself from the Class.  Excluding yourself is telling the Court that you do not want to be part of the Class.  If you exclude yourself, you have no basis to object because the case no longer affects you.

# THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to decide whether to grant final approval of the Settlement.

## 21.  When and where will the Court decide whether to approve the Settlement?

The Court will hold a Fairness Hearing at __:__ on **Month Day, 2022**, at the United States District Court for the Central District of California located at 350 West First Street, Courtroom 6A, Los Angeles, CA 90012 (or by Zoom if the Court so orders).  The hearing may be moved to a different date or time without additional notice, so it is a good idea to check [WEBSITE] or call [PHONE #].  At this hearing, the Court will consider whether the Settlement is fair, reasonable, and adequate.  If there are timely objections, the Court will consider them and will listen to people who have asked to speak at the hearing if such a request has been properly made.  The Court will also rule on the request for an award of attorneys' fees and reasonable costs and expenses, as well as the request for an incentive award for each of the Representative Plaintiffs.  After the hearing, the Court will decide whether to approve the Settlement.  We do not know how long these decisions will take.

## 22.  Do I have to attend the hearing?

No.  Class Counsel will present the Settlement Agreement to the Court.  You or your own lawyer are welcome to attend at your expense, but you are not required to do so.  If you send an objection, you do not have to come to the Court to talk about it.  As long as you filed your written objection on time with the Court and mailed it according to the instructions provided in Question 19, the Court will consider it.

| 23. May I speak at the hearing? |
|---|

You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must file an objection according to the instructions in Question 19, including all the information required therein. Your Objection must be **filed** with the Clerk of the Court for the United States District Court for the Central District of California by mailing it postmarked no later than **Month Day, 2022**. In addition, you must **mail** a copy of your objection to both Class Counsel and Defense Counsel listed in Question 19, postmarked no later than **Month Day, 2022**.

## IF YOU DO NOTHING

| 24. What happens if I do nothing? |
|---|

If you do nothing, you will get no benefits from this Settlement. Unless you exclude yourself, after the Settlement is granted final approval and the judgment becomes final, you will not be able to start a lawsuit, continue with a lawsuit, or be part of any other lawsuit against Bosley about the legal issues in this case, ever again.

## GETTING MORE INFORMATION

| 25. How do I get more information? |
|---|

This Notice summarizes the proposed Settlement. More details are in a Settlement Agreement. You can get a copy of the Settlement Agreement at [WEBSITE]. You may also write with questions to Bosley Claims Administrator, PO Box XXXXX, City, State Zip. You can also get a Claim Form at the website, or by calling the toll-free number, [PHONE].

**Questions? Call 1-XXX-XXX-XXXX or visit [WEBSITE]**

# EXHIBIT E

1
2
3
4
5
6
7
8

**THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| KEN HASHEMI, STEVE ALTES, SANDRA JOHNSON-FOSTER, GREGORY BOUTE RAFAEL ARTIME, and JOHN BOWDEN as individuals and all others similarly situated, | Case No.: 2:21-cv-00946-PSG(RAOx) |

10
11
12
13

         Plaintiffs,

vs.

14

BOSLEY, INC.,

15

         Defendant.

16

**DECLARATION OF JULIE N. GREEN IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**Date:**      , 2022
**Time:**     9:00 a.m.
**Courtroom:** 6A
**Judge:**    Hon. Philip S. Gutierrez

17
18
19
20
21
22
23
24
25
26
27
28

I, Julie N. Green, declare and state as follows:

1.      I am the Senior Vice President of Operations, Class Action Services of CPT Group, Inc. ("Settlement Administrator" or "CPT"). The following statements are based on my personal knowledge, information provided to me by counsel for Defendant Bosley, Inc. ("Bosley" or "Defendant") and by other CPT employees working on this matter, and records of CPT generated and maintained in the usual course of its business. If called on to do so, I could and would testify competently thereto.

2.      For this matter, CPT is able and willing to provide Notice and Claims Administration services as provided in the Settlement Agreement between the parties, if the parties' motion is approved by the Court.

3.      CPT Group, Inc. is located at 50 Corporate Park, Irvine, CA 92606.

4.      I have been employed by CPT for over 15 years, managing the operations department and supervising multiple notice and claims administration programs. As Senior Vice President of Operations, I am responsible for the oversight, supervision and evaluation of all departments and positions related to the administration of class action matters to ensure superior quality and successful execution of each component required to complete the settlement process. In my career at CPT, I have been responsible for the design and/or implementation of hundreds of class action administration plans. I submit this declaration at the request of Counsel in support of their Motion for Preliminary Approval.

**CPT'S EXPERIENCE RELEVANT TO THIS CASE**

5.      CPT is a leader in the settlement administration industry and has extensive experience in providing court approved notice of class actions and administering various types of notice programs and settlements. In the past 30-plus years, CPT has provided notification and/or claims administration services in thousands of class action cases, including data breach settlements and other privacy violation related matters. Throughout our history, CPT has disbursed billions of dollars in settlement funds, and serviced over 65,000,000 class members. CPT offers a wide range of class action administrative services

for developing, managing and executing all stages of integrated settlement plans. A true and correct copy of CPT's company resume is attached as **Exhibit A**, which provides detailed information concerning our class action settlement and claims administration qualifications and experience.

6. As a class action notice administrator, CPT has regularly been approved by both federal and state courts throughout the United States to provide notice of settlement and claim processing services, including in actions involving consumer classes. In this capacity, CPT handles all services related to the implementation of class action settlements, including:  (a) issuing all types of legal notice by way of direct mail, email notification, and supplemental media including, but not limited to, print publication, digital display, television, radio, informational press release, paid search, and social media advertisement; (b) establishing dedicated URLs and case websites with online claim filing capabilities; (c) providing live call center support through a dedicated toll-free number also with interactive voice response (IVR); (d) providing electronic and hard copy claims processing; (e) receiving/processing other communications about the settlement; (f) providing secure data management and reporting; (g) distributing paper and digital payment through physical check, gift card, mobile wallet, merchandise credits, direct deposit and other means; (h) providing Qualified Settlement Fund reporting and banking services; (i) filing applicable tax returns; (j) filing any required reports with the court; and (k) handling other tasks related to the administration of class action settlements that may be requested by the parties or court.

7. CPT has been entrusted by counsel and appointed by courts to handle complex nationwide and statewide class action matters. Some of our recent multi-state representative matters include *Bokelman v. FCH Enterprises, Inc.,* Case No. 18-cv-00209-RJB-RLP (D. Haw); *Christofferson v Creation Entertainment, Inc.* Case No. 19STCV11000 (Cal.); *Hartranft, et al. v. TVI, Inc. d/b/a/ Savers, Inc., Apogee Retail, LLC*, Case No. 8:15-cv-01081 CJC-DFM (C.D. Cal.);  *Lim, et al. v. Vendini, Inc.,* Case No. 1-14-CV-259897 (Cal.); *Thompson v. 1-800 Contacts, Inc., Vision Direct, Inc., Walgreens*

3

*Boots Alliance, Inc., Walgreen Co., Arlington Contact Lens Service, Inc., National Vision, Inc., Luxottica of America, Inc. (f/k/a Luxottica Retail North America, Inc.)*, Case No. 2:16-cv-01183 (D. Utah); *Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF (N.D. Cal); *Jacobo, et al., v. Ross Stores, Inc.*, Case No. 2:15-cv-04701-MWF-AGRx (C.D. Cal); *Livingston v. MiTAC Digital Corporation*, Case No. 3:18-cv-05993-JST (N.D. Cal); and *Gold, et al. v. Lumber Liquidators, Inc.*, Case No. 3:14-cv-05373-RS (N.D. Cal.). Some of our single-state representative matters include *Krinsk, et al. v Monster Beverage Corporation, et al.*, San Diego Superior Court, Case No. 37-2014-00020192-CU-BT-CTL; *Kerr v. The New York Times Co.*, et al., San Diego Superior Court Case No. 37-2016-000010125-CU-MC-CTL; and *Mount v. Wells Fargo Bank*, Los Angeles County Superior Court, Case No. BC395959.

## CASE BACKGROUND

8.      CPT understands the Settlement Class consists of a Nationwide class and a California subclass as follows:

<u>Settlement Class:</u> All persons residing in the United States whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, including but not limited to the California Settlement Subclass. The Settlement Class specifically excludes: (i) Bosley and Bosley's parents, subsidiaries, affiliates, officers and directors, and any entity in which Bosley has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (iii) any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; (iv) banks and other entities that issued payment cards which were utilized at Bosley during the Data Incident; (v) the attorneys representing the Parties in the Litigation; (vi) all judges assigned to hear any aspect of the Litigation, as well as their immediate family members; and (vii) any person found by a court of competent

DECLARATION OF JULIE N. GREEN

jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the Data Incident, or who pleads *nolo contendere* to any such charge.

California Settlement Subclass: All persons whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, and who were residing in the State of California at the time their PII was potentially compromised in the Data Incident. The California Settlement Subclass specifically excludes: (i) Bosley and Bosley's parents, subsidiaries, affiliates, officers and directors, and any entity in which Bosley has a controlling interest; (ii) all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; (iii) any and all federal, state, or local governments, including but not limited to their departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; (iv) banks and other entities that issued payment cards which were utilized at Bosley during the Data Incident; (v) the attorneys representing the Parties in the Litigation; (vi) all judges assigned to hear any aspect of the Litigation, as well as their immediate family members; and (vii) any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding or abetting the Data Incident, or who pleads *nolo contendere* to any such charge.

## NOTICE

9.      Within 10 days of Proposed Class Counsel filing for preliminary approval of the Settlement, CPT will provide notice to relevant state and federal attorneys general in compliance with the Class Action Fairness Act.

10.      The parties anticipate that most members to the Settlement Class can be identified and located from Defendant's records; the primary method to reach the class will include both direct mail and email. Upon receipt of the class data CPT will assign a unique identifier to each person identified in the list that will be used throughout the

duration of the administration process. The proposed notification methods will include the following components:

11.      **Direct Mail:** CPT will provide individual notice of the proposed Settlement via U.S. mail to all Class Members identified in the data from Defendant with a mailing address where either the email address is unavailable or undeliverable. To increase the success rate of deliverability of the notice, CPT will scrub the records to reduce duplicates, and update the addresses first using National Change of Address (NCOA) prior to mailing. CPT will track notices that are returned as undeliverable from the post office and will promptly re-mail any with a forwarding address. For notices returned without a forwarding address CPT will run an Accurint skip trace in attempt to obtain a current mailing address.

12.      **Email Notice:** CPT will disseminate a summary notice by e-mail to the Class Members for whom Defendant provides a valid email address. Prior to sending email notice, CPT will run the email addresses through a third-party validation scan to improve the success rate of deliverability. CPT will track undeliverable emails.

13.      **Website**: CPT will maintain and administer a dedicated settlement website that will be informative and easy for potential members of the Settlement Classes to navigate. The Settlement Website will include links to the Complaint, Settlement Agreement and Exhibits, Court Order, Long Form Notice (in English and Spanish), a downloadable version of the Claim Form, and other relevant filings as instructed by the parties or the Court. In addition, the website will provide the information necessary to file a claim online. The website address or a hyperlink will also be displayed on all notifications described above.

14.      **Toll-Free Number/IVR/Live Class Member Support**: CPT will establish a dedicated 24-hour, toll-free support line with Interactive Voice Response ("IVR") capabilities to provide potential members of the Settlement Class with: (a) general and detailed information about the Action; (b) answers to frequently asked questions; and (c) information relating to filing a claim form or opt out; and (d) bilingual, live class member support during normal business hours.

DECLARATION OF JULIE N. GREEN

**PROCESSING OF RESPONSES FROM CLASS**

15.     CPT understands that Settlement Class Members can make a claim by completing the claim form and submitting it by mail to CPT at the address shown in the Notice or by submitting it online via the settlement website. CPT will review all claim forms and supporting documents submitted by confirming they are appropriate, complete, and timely subject to the Dispute Resolution process set forth in the Settlement Agreement.

16.     CPT also understands that objections and exclusion requests (opt-outs) must be served in writing as instructed in the Long Form Notice. CPT will maintain a record of and inform the parties of all Opt-Out requests submitted by Settlement Class Members, as well as any Objections CPT may receive.

**ADMINISTRATION FEES**

17.     CPT estimates its costs for the notice and administration of this matter will be $69,000 based on 100,839 anticipated Settlement Class Members.

**CONCLUSION**

18.     The Notice Program described herein includes direct notice to all reasonably identifiable Settlement Class Members combined with implementation of a dedicated settlement website and toll-free hotline to further inform Class Members of their rights and options in the Settlement. Based on CPT's experience, this notice program is consistent with similar, effective, court-approved notice programs and will provide the best notice practicable given the circumstances and comports with due process requirements.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

Executed on January 6, 2022, at Irvine, California.

JULIE N. GREEN

7

# EXHIBIT A



 1 (800) 542-0900

 50 Corporate Park
Irvine, CA 92606

www.CPTGROUP.com

# CURRICULUM VITAE

## COMPANY PROFILE

CPT Group, Inc. ("CPT"), founded in 1984, is a leading provider of notice and settlement class action administration services and has been appointed as the third-party administrator by all major courts. Throughout our history, CPT has disbursed billions of dollars in settlement funds and serviced tens of millions of class members while administrated approximately 5,000 cases. CPT offers a wide range of class action administrative services for developing, managing, and executing all stages of integrated notice plans and settlements. This includes pre-certification and discovery mailings, class-certification mailings, claims processing and administration, data management, data reporting, settlement fund administration, legal noticing campaigns, website design and web hosting. The project management, call center, data entry, IT and production facilities are all located at the corporate headquarters in Irvine, CA.

## QUALITY ASSURANCE & SECURITY

The integrity of CPT's work and the stringent quality assurance protocols are strengthened by the staff's ability to work in close-proximity and keep the work handled in-house. CPT has an obligation to our clients to maintain a rigorous commitment to data and cyber security by implementing proactive measures, conducting extensive audits, implementing security controls and procedures throughout our business that comply with NIST 800-171.

## EXPERIENCE

CPT has extensive experience providing court-approved notice and administration services in complex, large fund, and top tier class action settlements across a broad spectrum of unique subject matters. Below are highlights from a few relevant cases we handled:

- *Helmick v. Air Methods Corp.* (Top Settlements, 2020): Administration of this $78,000,000 employment settlement included direct mailed notice to class members, production and maintenance of a settlement website and distribution of over $48,000,000 to eligible claimants.

- *Wackenhut Wage and Hour Cases* (Top Settlements, 2019)**:** To notify potential class members in this $130,000,000 wage and hour settlement, CPT' provided email and text notice in both English and Spanish, maintained a dedicated settlement website with an online claims portal and a toll-free support hotline. CPT's outreach efforts resulted in a 57.14% filing rate.

- *Sanchez v McDonald's Restaurants of California* (Top Settlements, 2019*)*: Notice methods in this $26,000,000 wage and hour settlement included both mailed notice in both English and Spanish and email notification, as well as settlement website and toll-free case support hotline.

- *Thompson v. 1-800 Contacts, Inc., et al.***:** This $40 million-dollar anti-trust settlement comprised of four settlement classes required design and implementation of a robust, multi-faceted two-part notice program with a multi-layered media campaign combining the use of various digital advertisement platforms, a press release, a dedicated settlement website with an online claims portal, and a toll-free support hotline. The notice program also included an e-mail notice campaign to approximately 10,000,000 potential class members. Combined notice efforts resulted in over 140,000 claimants.

- *Broomfield v. Craft Brew Alliance, Inc.:* CPT's outreach efforts in this $20 million consumer settlement included a multi-media channel approach to notice which employed direct mailed notice and a digital, social, and mobile media campaign which reached an impressive 91.43% of the targeted 8,000,000 class members. CPT processed both electronic and hard copy claim forms and valid claimants were paid via paper checks, e-Check, and ACH.

- *Abdullah v U.S. Security Associates, Inc.* (Top Settlements, 2018*)*: Administration of this $21,000,000 wage and hour settlement included direct mailed notice to class members, class member support hotline and distribution of over $13,000,000 to eligible claimants.

- *Augustus et al. v. American Commercial Security Services, Inc.* (Top Settlements, 2018): Administration duties in this $110,000,000 employment settlement included direct mailed notice to class members in both English and Spanish and distributing over $72,000,000 in settlement funds to valid claimants.

- *Jacobo, et al. v. Ross Stores, Inc.:* In this $4.85 million consumer settlement, CPT notified approximately 9,000,000 potential class members via direct email notice and a media campaign that combined the use of various digital advertisement platforms, a nationwide press release, print publication in People Magazine, a dedicated settlement website, and a toll-free support hotline. Ultimately, CPT processed 285,000 claims and disbursed $3,000,000 in merchandise certificates.

## DIVERSITY & INCLUSION

CPT believes that promoting diversity starts with a commitment to building understanding and awareness. Diversity is not just cultural or ethnic, it includes people of all ages and backgrounds. We are guided by a commitment to removing barriers to the recruitment, retention, and advancement of talented individuals from historically excluded populations. CPT recruits and rewards team members based on capability and performance, regardless of race, gender, sexual orientation, gender identity or expression, lifestyle, age, educational background, national origin, religion, or physical ability.

## AREAS OF EXPERTISE

- **Project Management –** At the heart of CPT's administrative capabilities is our ability to manage and process our cases as a neutral third party with efficiency, accuracy and in compliance with the terms of the parties' agreement. Our skilled approach in the use of technology, effective management, and quality assurance is the core of our operation.

- **Claims Administration –** CPT executes an extensive Quality Assurance process throughout the duration of the claims period. Any and all responses received from Class Members are processed according to our strict internal procedures and in accordance with Settlement Agreement. Once claims processing is completed, Counsel is provided with all required reporting, including, where applicable, a list of approved claimants and the settlement calculations for each.

- **Call Center** – CPT's case support representatives stand ready to service all case inquiries offering live, multi- lingual, 1-1 response, 5 days a week during business hours (extended hours available). Interactive Voice Response (IVR) assures that class members receive the assistance and support they require 24-hours a day. A proprietary call tracking system combined with highly trained representatives ensures an accurate class member history for each and every call.

- **Data Management/Reporting –** Through programmatic analysis, CPT will standardize the class data to compile a master mailing list. CPT prepares weekly status reports for each case that summarize the status of returns and responses such as mail pieces and claim form submissions. CPT Group, Inc. is NIST SP 800-171 compliant, which ensures that necessary measures are taken to guarantee that all class member data is handled and stored in a safe and secure manner.

- **Noticing Expertise –** CPT's legal notice experts have a combined experience of over 25 years in the industry and come together to plan a successful notice campaign based upon the requirements of the Settlement. After strategizing and consulting with Counsel, our team will determine the best method of notification to reach your intended target audience. Whether notification will be through means of a known or unknown data set, CPT will execute the campaign with precision and accountability.

- **Settlement Fund Administration** – CPT's team of tax and accounting professionals manage all fund distributions through a rigorous and supervised process. Stringently following the terms of the Court Order, CPT maintains its Qualified Settlement Fund (QSF) accounts through federally insured banks with access restricted to authorized personnel only. On behalf of the QSF, CPT will handle all remittance and reporting to local, state and federal tax authorities.

## SERVICES

- Settlement Administration
- Pre-Certification Notification
- Data Analysis
- Bilingual Call Center
- Publication & Media Campaigns
- Claims Processing
- Class Certification Notification
- Secure Data Management
- In-House Print & Mail House
- Website Hosting
- Settlement Fund Administration
- Electronic Notification
- Secure Data Reporting
- NCOA & Skip Tracing
- Website Design

## REFERENCES

For reference, the following Exhibits are attached:

1. CPT's Information Security Statement.
2. CPT's Data and Settlement Fund Transmission Methods
3. CPT's Company Brochure.
4. CPT's Client Testimonials.

# EXHIBIT 1



## Information Security Statement
### Confidential

CPT Group, Inc. ("Company" or "CPT") maintains a comprehensive, written Information Security Program that complies with all applicable laws and regulations and is designed to (a) ensure the security, privacy and confidentiality of Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of the Class Member Information, and (c) deny unauthorized access to, use, deletion, or modification of Class Member Information.  As part of an ongoing effort, throughout its business CPT has implemented the following security controls and procedures:

1) Company uses Class Member Information only for the purposes for which Client provided it, as described in any Agreements and/or Court Order's governing the provisions of the Company's services on any particular engagement.
2) Company has designated one of more specifically named employees to be responsible for the administration of its Information Security Program.
3) Company has and maintains processes for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of the Company's operations and evaluating the effectiveness of the safeguards for controlling these risks.
4) Company runs and analyzes daily Risk Assessment and Threat Intelligence scans on all company computer stations, servers and protected network subnets.  These scans search for any software vulnerabilities along with data containing sensitive information ("SI").
5) All computers are provisioned with an advanced security stack.  Company's Endpoint Protection centrally reports activity, handles patch management and security policies.  Company's security stack is based on DNS and content filtering, deep packet inspection at the firewall level, antivirus/antimalware, email filtering and user behavior analysis. Each endpoint is monitored with modern Data Loss Prevention ("DLP") software.  Company's DLP system prevents connection to unauthorized external storage, cloud systems or email accounts.  It actively blocks screen prints and will not allow confidential user information to be sent out of our trusted network.
6) Login access to Company email or systems requires two factor authentication, which requires not only a password and username but also something physical, like user location, secure ID token or biometrics.
7) Company regularly monitors, tests and updates its Information's Security Program.
8) Company restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs.
9) Company performs an annual audit of its Information Security Program. This includes a review of the controls: vulnerability scans, secure software development life cycle, patch management, intrusion detection and prevention, encryption of storage media and devices. Company makes reasonable changes to its Information Security Program to ensure it can maintain safeguards that are appropriate for the Class Member Information at issue.
10) At Client's request, but only when and in a manner consistent with applicable Agreements and/or Court Orders, Company will securely destroy or return all Class Member Information in its possession and certify to Client in writing that Company has done so. If Company destroys Class Member Information rather than return it, Company will use destruction methods that are in compliance with all applicable state and federal laws and regulation including NIST Special Publication 800-88, Revision 1 (2014). This obligation to return or destroy information shall not apply to Class Member Information that is stored in backup or other disaster recovery systems, archives or other storage systems that make it impractical to

destroy the information, but if Company retains Class Member Information for these reasons, its obligation under the Settlement Agreement will continue to apply for so long as it retains the information. Additionally, the Company will retain all hard copy documents (i.e. Claim Forms, etc.) for a period of 6 months, at which time they are scanned and shredded on Company premises in compliance with NIST Cybersecurity Framework.

11) Company performs extensive background checks (County Criminal, County Civil and National Criminal Database Search) of all its employees, including a review of their references, employment edibility, and education verification to ensure they do not pose a risk to the security of Class Member Information or Clients employees. Company will provide, upon request, a copy of its background check requirements for Clients review and approval. Nothing in this document shall compel Company to disclose the results of such background information of its employees.

12) Company conducts a monthly third-party credentialed vulnerability assessment with Trustwave. Vulnerabilities rated as high are patched/resolved with 48 hours. Medium is 1 week and Low is within 2 weeks. If a vulnerability cannot be resolved within our standard time, a compensating control will be introduced to protect the vulnerable systems. To ensure Company receives timely information regarding new threats and vulnerabilities, Company subscribes to US-CERT notices as well as notices are received from Sonicwall our firewall manufacturer. New threats are communicated to our executive and leadership team to disseminate to all employees within the company.

13) Company has implement the following safeguards for systems that process, store or transmit Class Member Information:

- Identify and Access Management;
- Windows password complexity with a specific length, history, upper and lower characters, numbers, expiration every 45 days, and separate password for email and computer;
- Two-Factor authentication for remote access;
- Removable media devices, personal web-based email, instant message, or online storage (i.e. Dropbox, Google Drive, iCloud, etc.) are blocked and restricted by the firewall;
- Company uses the Microsoft Azure cloud to host corporate email. Remote access to the email system is disabled;
- Company uses the HTTPS or FTP standard for all data transmissions, and shall ensure that all Client Data is encrypted while in transmission between Company's data center and the Company's computer system or other device (as applicable) and at rest, consistent with the NIST standard, but no less than a 128-bit key for symmetric encryption and a 1024-bit key for asymmetric encryption.
- Company requires its clients and self to transfer files with personal Class Member Information via a secure transmission protocol through Citrix Sharefile FTP which secures file during transfer with SSL/TFL encryption protocols and in storage using AES 256-bit encryption. Links to file expire after 7 days. Company requires all files transferred in this method to be password protected during transmission and password to be provided telephonically only. Files are retrieved by Company, and then deleted manually upon successful download (or auto-deleted after 7 days from upload by system)'
- Upon hire and annually thereafter, security training of all employees using the online security training platform Knowbe4. Users are required to do one hour of security training per year in additional to 20
  minutes of training per quarter. Users are required to take tests online to ensure they've retained the knowledge. Topics covered are spear phishing emails, compromised website, social engineering, strong passwords, ransomware, handling sensitive information, mobile device security;
- Company actively tests security defenses. Staff participate in simulated phishing exercises to reinforce previous training. Company also conducts monthly external penetration tests and daily internal vulnerability scans to ensure the integrity of our security measures;
- Preventing terminated employees from accessing Class Member Information;
- Appropriately configured and updated firewall, antivirus, and spyware software;
- Separation of Duties;
- Business Continuity Planning;

- Disaster Recovery Planning;
- Pandemic Recovery Planning

14) Company's physical security requires that employees use an encoded card-key to gain access to the facility as all doors are mechanically locked at all times.  Employees can only enter or exit through a front door or back door, both of which are protected by security cameras.  Inside the facility, secure areas in the office that contain checks or sensitive material are also protected by the electronic card-key badge access and limited to select employees. Security cameras monitor the areas that contain the sensitive material and audits are conducted periodically on the area. Access to the server room is strictly limited to only five individuals and protected by the encoded card-key badge access. Security cameras monitor the inside and outside of the secured area with audits being conducted periodically.

15) Company staff are required to maintain in compliance with the Information Security Policies, Compliance Manual, and Non-Disclosure Agreement. The matters covered in the Code of Business Conduct and Ethics are of the utmost importance to the Company and are essential to the Company's ability to conduct its business in accordance with its stated values. We expect all of our officers, directors, employees, agents, contractors and consultants to adhere to these rules in carrying out their duties for the Company. The Company will take appropriate action against any officer, director, employee, agents, contractor or consultant whose actions are found to violate these policies or any other policies of the Company. Disciplinary actions may include immediate termination of employment or business relationship at the Company's sole discretion.  If the Company has suffered a loss, then it may pursue its remedies against the individuals or entities responsible. If laws have been violated, then the Company will fully cooperate with the appropriate authorities.

**Definitions**

1) **"Class Member Information"** means Class Member name, address, or other contact information and class member claim filing information necessary for Company to perform services required by applicable Agreements or Court Orders in context to the Administration of a Settlement or other Class Action litigation.
2) **"Client"** means collectively Plaintiff Counsel and Defense Counsel.
3) **"Client Data"** means proprietary or personal data regarding Client or any of its Class Members under the Settlement Agreement, as provided by Client.
4) **"Company"** means CPT Group, Inc. a reputable third-party Claims Administrator selected by all the Parties (Plaintiff and Defense Counsel) to administer the Settlement or Notification Mailing.
5) **"Sensitive Personal Information"** means any non-public information of CPT or Client disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection of tangible objects, or to which the other party may have access, which a reasonable person would consider confidential and/or which is marked "confidential" or "proprietary" or some similar designation by the disclosing party. Confidential Information shall not include any information which the recipient can establish: (i) was or has become generally known or available or is part of the public domain without direct or indirect fault, action, or omission of the recipient; (ii) was known by the recipient prior to the time of disclosure, according to the recipient's prior written documentation; (iii) was received by the recipient from a source other than the discloser, rightfully having possession of and the right to disclose such information; or (iv) was independently developed by the recipient, where such independent development has been documented by the recipient.

# EXHIBIT 2



**TRANSMISSION METHODS FOR SENSITIVE INFORMATION**

CPT Group, Inc. ("CPT") maintains strict guidelines for the submission, transfer, and protection of Client Data and Wire Information.

A.   <u>**CLIENT DATA TRANSMISSION METHODS**</u>

Counsel shall submit all Client Data to CPT as follows:

1. Link provided by CPT to secure FTP (sharefile) for transfer of data files.
2. All files uploaded should be password protected.
3. Password provided to CPT personnel telephonically.
4. Once files are uploaded to and retrieved, files are deleted (files set on autodelete after 7 days of upload).

Counsel agrees and acknowledges that the above method is the only method authorized by CPT to receive Client Data.  Attempts to transmit Client Data by other means are customarily not accepted.  In the event Counsel utilizes other means to transmit or attempt to transmit Client Data, CPT disclaims all responsibility for such transmissions or attempted transmissions.

B.   <u>**BANK WIRE INFORMATION**</u>

*Incoming from Defense Counsel to QSF.*

CPT provides Qualified Settlement Fund bank account wire instructions to Defense Counsel as follows:

1. Wire instructions are printed in PDF format, are uploaded with password protection, and are made available to Defense Counsel via secure Sharefile.
2. CPT will call Defense Counsel directly and provide the password telephonically.
3. Defense Counsel is requested to then call CPT prior to wiring funds to confirm receipt of all applicable information.

Defense Counsel agrees and acknowledges that the above method is the only method authorized by CPT to communicate QSF wire instructions.  CPT will decline attempts by Defense Counsel to receive such instructions by other means.  In the event Defense Counsel utilizes other means to transmit or attempt to transmit wire instructions, CPT disclaims all responsibility and liability for such transmissions or attempted transmissions including without limitation for any unauthorized access, acquisition, destruction or loss of such wire instructions.

*Outgoing from QSF to Plaintiff Counsel.*

1. CPT does not send passwords via email either internally or externally.
2. For wire instructions for Plaintiff Counsel, such instructions should be communicated to CPT either by phone or by secure Sharefile.
3. CPT will confirm wire information on file with the bank name and last four digits of the account number only.

Plaintiff Counsel agrees and acknowledges that the above method is the only method authorized by CPT to communicate wire instructions.  CPT will decline attempts by Plaintiff Counsel to receive such instructions by other means.  In the event Plaintiff Counsel utilizes other means to transmit or attempt to transmit wire instructions, CPT disclaims all responsibility and liability for such transmissions or attempted transmissions including without limitation for any unauthorized access, acquisition, destruction or loss of such wire instructions.

# EXHIBIT 3



The Industry's Premier
Class Action Administrator



**CPT Group is the Nation's premier Class Action Claims Administrator handling a broad spectrum of cases with value-added, single-source expertise, and premier service.**

Putting CPT Group in place as your Administrator influences every element of the process thereafter. Rely on us to analyze, plan, and administrate with integrity, drawing from a broad base of administration experience with class action settlement and beyond.

**Value Added Philosophy**

CPT Group's cadre of experts understands how each piece of the administrative puzzle fits seamlessly into the big picture. Dynamic, capable, and service-centric our elite staff delivers peak productivity and value. The longevity of our Administrators, stringently tested Case Managers, and trusted Consultants merge to assure neutrality, attention to detail and quality for "true-number" proposals and no costly surprises.

**Best In Class Service**

From informed Case Managers who are your single point of contact, to secure in-house resources, we work as one to bring you superior service you can rely on. Count on us to be fully up to date, aware of all contingencies, and espond with speed and accuracy.

## Capabilities

Selecting CPT Group is the first step in determining the outcome of your settlement. Multifaceted capabilities, the distinct advantage of experience, particularly in cross category settlements, require that all pieces are organized, positioned correctly and put into place.

## One team. One purpose. We put you first.

**Proprietary Technology and Superior Workflow**

Without doubt, the security of settlement information is of the utmost importance.

## AdminLink: Internal Case Information Access Management

Exclusive proprietary technology offers access to real time reports, response rates and more, 24/7. With AdminLink, our operations staff can access current case information in one single location, ensuring every CPT staff member involved in your case is up to date and has all the information they need at their fingertips.

## Comprehensive Marketing

Our onsite print/mail house and web development team not only affords you greater value and tighter security, we assure full legal compliance in all materials and up to date information for all class members, thereby reducing demands on client time and resources.

# Comprehensive Service

## Pre-Settlement Consulting

Entrusting class action administration to CPT Group is the first step in the confident achievement of the goals of the goals of the lawsuit. Our full spectrum consultation services address every critical area of need, providing clear and actionable planning combined with cost-effective administration.

- Preliminary Approval Declarations
- Settlement Agreement Consultation
- Timelines
- Scheduling
- Statistical Reporting
- Notice Campaign Planning
- Neutral Third Party Administrator

## Legal Notification

CPT Group is adept at third-party data hosting and communication services using proprietary technology across multiple platforms, including print, media and online. Clear-language documents, translated according to class member needs, support and guide members through a seamless case rollout, regardless of scope or complexity.

- Pre-Certification/Belaire West/Privacy Mailing
- Class Certification Noticing
- Settlement Notification
- Formatting Legal Notices
- Electronic Notification email/website
- Translation Services
- In-House Production
- Expert Legal Noticing Campaigns
- In-House Translation Services

## Data Management

Quality, accuracy, speed and security are the cornerstones of CPT's proprietary technology and data management systems. We developed our specialized data management, analysis and reporting tools to move the skillset up, innovate new and better solutions and create a superior workflow with complete and timely accountability and efficiency.

- Data Analysis
- Data Entry
- Data Management
- Secure Data Transfer
- Data Reporting

## Class Member Assistance

Customer response and targeted outreach receive multilevel attention. We have a massive capacity to handle this all-important aspect of settlement administration. Our multilingual call center offers class members 1:1 responsiveness. Interactive Voice Response assures that class members receive the assistance and support they require. Our proprietary, case-specific call tracking system uses dedicated toll-free numbers, and highly trained



representatives to document and maintain an accurate class member history of interaction.

- Live Call Center Support (multilingual)
- Interactive Voice Response (IVR) capabilities
- Proprietary Call Tracking System

## Claims Administration

At the heart of CPT's administrative capabilities is our ability to process claims accurately, efficiently and in full compliance. Our skilled approach to using technology and controlling management costs is the bedrock of our effectiveness. Regardless of class size or case intricacy, we address all aspects of administration to provide comprehensive and complete solutions.

- In-House Secure Data Processing
- Track & Process Undeliverable Mail
- Claims Processing (mail/online)
- Host & Maintain Case Websites
- Secure Claims Validation

## Settlement Fund Administration

CPT's centralized fund distribution process manages fully audited and securely supervised accounts, handling all aspects of Federal and State tax filings and forms printing and distribution to all recipients.

- Secure Disbursement Processing

- Qualified Settlement Fund (QSF) Management (establish/maintain)
- Federal and Multi-State Tax Reporting (W2/1099)
- Physical Checks, ACH, eCheck, Merchant eGift Cards, Merchant Physical Gift Cards, and Prepaid Debit Cards Options
- Escheatment of Unclaimed Settlement Funds Cy Pres Distribution

## Widespread Experience

- FLSA
- Wage & Hour
- Labor & Employment
- PAGA
- Consumer
- Product Liability
- Data Breach Notification

- Government Services
- Insurance
- Securities
- Finance
- Antitrust
- ERISA

## Contact Us 800.542.0900

CPT Group, Inc. is not just part of the solution. It is the solution. Please allow us to answer your questions and discuss your immediate and future needs.

# EXHIBIT 4



## What our clients have to say about CPT Group, Inc.

"*I have worked with CPT for 10+ years. CPT is detail-oriented, excellent at meeting deadlines, anticipates potential issues while proposing resolutions, mindful of sensitive private information and safeguards it accordingly, reliable and communicates proactively. CPT is priced competitively for service that surpasses its competition. I have worked with numerous service providers; CPT is by far the best.*"
**Anthony Orshansky, Esq.,** CounselOne, P.C.

"*CPT has extraordinary customer service. They always go above and beyond to resolve any questions we may have. Their responses to our emails are always prompt and are incredibly helpful with last minute needs. Their weekly reports are incredibly useful!*"
**Craig Ackermann, Esq.,** Ackermann & Tilajef, P.C.

"*I have successfully worked with CPT in administering several multi-million settlements and several Bel-Air privacy notices. CPT was cost-conscious in each instance, often capping their costs to ensure Court approval. Moreover, they quickly respond to inquiries, and expeditiously address problems that surface — maintaining a professional demeanor at all times.*"
**Raul Perez, Esq.,** Capstone Law, APC.

"*I have utilized the services of CPT over the past five or six years to handle all aspects of wage and hour class actions of various sizes. They consistently deliver on time with extremely competitive pricing. The case managers are reliable, efficient and accessible to handle any issue that comes up. I am so pleased with CPT's handling of wage and hour matters that I am now turning to them to administer our consumer class actions as well.*"
**Marcus J. Bradley, Esq.,** Bradley & Grombacher, LLP.

"*CPT's employees pay great attention to detail, are extremely hard-working, are particularly conscious of deadlines, foresee potential issues that may arise and address them proactively, are smart, high-IQ individuals and are easy to work with. I've worked with many of the "best" Class Action Administration firms, and CPT is the best!*"
**Zach Dostart, Esq.,** Dostart Hannink & Coveney, LLP.

"*CPT Group is by far my preferred Settlement Administrator!*"
**Tim Johnson, Esq.,** Ogletree Deakins Nash Smoak & Stewart

*"CPT is always quick to respond ot any calls or emails and work on the tasks needed. They follow up and always keep their word on pricing. We have used CPT many times and never once have had an unpleasant experience. That is hard to find with any vendor."*
**Doug Johnson, Esq.,** Johnson & Johnson


*"CPT understands Class Actions and the requirements for properly noticing the Class. They have experience project manager overseeing the Administration."*
**Diana Khoury, Esq.,** Cohelan Khoury & Singer


*"I am extremely happy with all that you have done with the administration of this matter. Excellent service, from start to finish, as to all matters and you stayed within budget! You don't know how happy that makes me. CPT is our #1 admin company. Please feel free to use me as a reference."*
**Denise M. Caprioli, Esq.,** McMillion & Hirtensteiner


*"I routinely go back to CPT for class action services because they have proven over and over that they provide excellent service for a great value. When I hire CPT, I know that I can get instant, personal attention on any issue that comes up, and that my matter will be handled with the attention to detail that I expect. I Ike being able to call and reach people I trust."*
**Jeff Ames, Esq.,** Paul Plevin Sullivan & Connaughton


*"I have used CPT successfully over the last four or five years on a variety of wage hour class action cases. I find them to be very professional class action administrators in their on-time delivery of work product, their great process of keeping counsel updated and their reasonable pricing. I will use them again."*
**Robert Yonowitz, Esq.,** Fisher & Phillips LLP


*"Fast, friendly responses to all my questions. High quality work."*
**Patrick Stark, Esq.,** Ford, Walker, Haggerty, & Behar


*"CPT can handle all aspects of our wage and hour class actions, from privacy opt out notices to administering claims. CPT handles these matters quickly and efficiently and always on budget."*
**Derek S. Sachs, Esq.,** Lewis Brisbois Bisgaard & Smith LLP

*"It's one thing to retain a third-party administrator. It's another to retain professionals who communicate well and will go the extra mile to ensure that all parties are completely satisfied."*
**Joel P. Kelly, Esq.**, Jackson Lewis


*"CPT is great, they have tremendous service, knowledgeable staff and make the experience seamless and efficient. I would recommend them for jobs big or small."*
**Eric B. Kingsley, Esq.**, Kingsley & Kingsley


*"CPT is as professional as they come. Their team really goes the extra mile to work with you and your team. Do yourself a favor and get to know the CPT Group."*
**Brian S. Kabateck, Esq.**, Kabateck Brown Kellner, LLP


*"On behalf of the defendants, we were extremely pleased with the service that CPT Group provided and would not hesitate using your services again."*
**Philip L. Ross, Esq.**, Littler Mendelson, P.C.


*"I truly appreciate your patience and assistance on this. I will certainly recommend you and your company in the future when "class action administration" services are needed…it seems the administration part of the case has been handled with minimal headaches for me personally."*
**Rhonda Wolf, Esq. General Counsel,** United Oil Company


*"I have used CPT Group as a wage and hour class action administrator in several cases. On each occasion, CPT has been thorough, responsive, and efficient. I have enjoyed working with CPT and look forward to working with CPT in the future."*
**Howard Z. Rosen, Esq.,** Posner & Rosen LLP


*"The administration of a class action settlement–even an uncomplicated one—involves a lot of moving parts, and there are a lot of companies that proclaim expertise in this filed. But my "go to" claims/settlement administrator is CPT Group because they manage things seamlessly—which is something my Firm counts on. CPT anticipates and solves problems before they become big "issues." And they are all good people too."*
**Dylan Pollard, Esq.,** Pollard & Bailey

# EXHIBIT F

1   M. Anderson Berry (SBN 262879)
2   **CLAYEO C. ARNOLD,**
    **A PROFESSIONAL LAW CORP.**
3   865 Howe Avenue
4   Sacramento, CA 95825
    Telephone: (916)777-7777
5   Facsimile: (916) 924-1829
6   aberry@justice4you.com

7   Jeffrey S. Goldenberg (*pro hac vice*)
8   **GOLDENBERG SCHNEIDER, LPA**
    4445 Lake Forest Drive, Suite 490
9   Cincinnati, OH 45242
    Telephone: (513) 345-8297
10   Facsimile: (513) 345-8294
11   jgoldenberg@gs-legal.com

12   *Attorneys for Plaintiffs*

13   [additional counsel listed on the following page]

14
15       **THE UNITED STATES DISTRICT COURT**
      **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
16

| | |
|---|---|
| 17   KEN HASHEMI, STEVE ALTES, SANDRA JOHNSON-FOSTER, GREGORY BOUTE, RAFAEL ARTIME, and JOHN BOWDEN as individuals and all others similarly situated, | Case No.: 2:21-cv-00946-PSG(RAOx) |
| 18 | |
| 19 | **[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| 20 | |
| 21         Plaintiffs, | |
| 22   vs. | |
| 23   BOSLEY, INC., | |
| 24         Defendant. | |

25
26
27
28

David K. Lietz (*pro hac vice*)
Email: dlietz@masonllp.com
**MASON LIETZ & KLINGER LLP**
5301 Wisconsin Avenue, NW. Suite 305
Washington, DC 20016
Tel: (202) 429-2290

Charles E. Schaffer (*pro hac vice*)
Email: cschaffer@lfsblaw.com
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Ex Kano S. Sams II (SBN 192936)
Email: esams@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: 310-201-9150

2

[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

This matter is before the Court on Plaintiffs' unopposed motion for preliminary approval of the proposed class action settlement. Plaintiffs, individually and on behalf of the proposed Settlement Class, and Defendant have entered into a Settlement Agreement and Release, dated January __, 2022 (the "Settlement Agreement") that, if approved, would settle the above-captioned litigation. Having considered the motion, the Settlement Agreement together with all exhibits and attachments thereto, the record in this matter, and the briefs and arguments of counsel, IT IS HEREBY ORDERED as follows:

1.      Unless otherwise defined herein, all terms that are capitalized herein shall have the same meanings ascribed to those terms in the Settlement Agreement.

2.      The Court has jurisdiction over this litigation, Representative Plaintiffs, Defendant, and Settlement Class Members, and any party to any agreement that is part of or related to the Settlement Agreement.

## PRELIMINARY APPROVAL

3.      The Court has reviewed the terms of the proposed Settlement Agreement, the exhibits, and attachments thereto, Plaintiffs' motion papers and briefs, and the declaration of counsel and the Claims Administrator. Based on its review of these papers, the Court finds that the Settlement Agreement appears to be the result of serious, informed, non-collusive negotiations conducted with the assistance of Bennett Picker, Esq., a well-regarded private mediator with considerable experience mediating data breach class actions, during two day-long mediation sessions on August 12 and 27, 2021, through which the basic terms of the settlement were negotiated and finalized. The Court further observes that the Settlement Agreement is the product of an informal exchange of fact discovery. The terms of the Settlement Agreement fall within the range of possible approval as fair, reasonable, and adequate.

4.      The Court therefore GRANTS preliminary approval of the Settlement Agreement and all the terms and conditions contained therein.

[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

C:\Users\nbrazil\Desktop\Bosley Settlement\7 - Exh F - Preliminary Approval Order (01.07.2022).DOCX

## PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS

5.      Pursuant to Federal Rule of Civil Procedure 23, the Court preliminarily certifies, for settlement purposes only, the Settlement Class defined in the Settlement Agreement as follows:

>   All persons residing in the United States whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, including but not limited to the California Settlement Subclass.

6.      The California Settlement Subclass is defined in the Settlement Agreement as follows:

>   All persons whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, and who were residing in the State of California at the time their PII was potentially compromised in the Data Incident.

7.      The Court preliminarily finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(a) for settlement purposes: (1) the Settlement Class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the Settlement Class; (3) the Representative Plaintiffs' claims are typical of those of Settlement Class Members; and (4) the Representative Plaintiffs will fairly and adequately protect the interests of the Settlement Class.

8.      The Court preliminarily finds that the Settlement Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3) for settlement purposes:  (1) the questions of law or fact common to the Settlement Class predominate over individual questions; and (2) class action litigation is superior to other available methods for the fair and efficient adjudication of this controversy.

9.      The Court hereby appoints Ken Hashemi, Steve Altes, Sandra Johnson-Foster, Gregory Boute, Rafael Artime, and John Bowden as the Representative Plaintiffs of the Settlement Class.

[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

C:\Users\nbrazil\Desktop\Bosley Settlement\7 - Exh F - Preliminary Approval Order (01.07.2022).DOCX

10.     The Court hereby appoints as Class Counsel M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, Jeffrey S. Goldenberg of Goldenberg Schneider, LPA, David K. Lietz of Mason Lietz & Klinger LLP, and Charles E. Schaffer of Levin Sedran & Berman, LLP.

## NOTICE AND ADMINISTRATION

11.     Pursuant to the Settlement Agreement, the Parties have designated CPT Group, Inc. as the Claims Administrator. The Claims Administrator shall perform all the duties of the Claims Administrator set forth in the Settlement Agreement.

12.     The Court finds that the Class Notice and Notice Program set forth in the Settlement Agreement satisfy the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure and provide the best notice practicable under the circumstances. The Class Notice and Notice Program are reasonably calculated to apprise Settlement Class Members of the nature of this Litigation, the scope of the Settlement Class, the terms of the Settlement Agreement, the right of Settlement Class Members to object to the Settlement Agreement or exclude themselves from the Settlement Class and the process for doing so, and of the Final Approval Hearing. The Court therefore approves the Class Notice and Notice Program and directs the parties and the Claims Administrator to proceed with providing notice to Settlement Class Members pursuant to the terms of the Settlement Agreement and this Order.

13.     The Claims Administrator shall commence the Notice Program within the time required by the Settlement Agreement.

14.     The Court also approves the Claim Form.

## EXCLUSION AND OBJECTIONS

15.     Settlement Class Members who wish to opt-out and exclude themselves from the Settlement Class may do so by notifying the Claims Administrator in writing, postmarked no later than _____, 2022 (60 calendar days after Notice Commencement Date). To be valid, each request for exclusion must be made in writing and:  (a) state the Settlement Class Member's full name, address and telephone number;

5

(b) contain the Settlement Class Member's personal and original signature or the original signature of a person authorized by law to act on the Settlement Class Member's behalf with respect to a claim or right such as those asserted in the Litigation, such as a trustee, guardian or person acting under a power of attorney; and (c) state unequivocally the Settlement Class Member's intent to be excluded from the Settlement. All Requests for Exclusion must be submitted individually in connection with a Settlement Class Member, *i.e.*, one request is required for every Settlement Class Member seeking exclusion.

16. All Settlement Class Members who do not opt out and exclude themselves shall be bound by the terms of the Settlement Agreement upon entry of the Final Approval Order and Judgment.

17. Settlement Class Members who wish to object to the Settlement may do so by filing a written objection in accordance with the procedures outlined in the Class Notice, filed or postmarked no later than _____, 2022 (the Objection Date). Any Settlement Class Member wishing to object to the Settlement Agreement shall mail the objection to the attorneys listed in section 5 of the Settlement Agreement. The written objection must contain: (i) the objector's full name, address, telephone number, and email address (if any); (ii) the case name and docket number, *Hashemi, et al. v. Bosley, Inc.,* Case No. 2:21-cv-00946-PSG (RAOx) (C.D. Cal.); (iii) information identifying the objector as a Settlement Class Member, including proof that the objector is a member of the Settlement Class (*e.g.*, copy of original notice of the Data Incident or a statement explaining why the objector believes he or she is a Settlement Class Member); (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of all counsel representing the objector in connection with the objection; (vi) a statement whether the objector and/or his or her counsel will personally appear at the Final Fairness Hearing; and (vii) the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative.

6

18.    Any Settlement Class Member who does not timely submit a written objection in accordance with these procedures and the procedures detailed in the Class Notice and Settlement Agreement shall be deemed to have waived any objection, shall not be permitted to object to the Settlement, and shall be precluded from seeking any review of the Settlement Agreement and/or the Final Approval Order by appeal or other means.

## FINAL APPROVAL HEARING

19.    The Court will hold a Final Approval Hearing on _____, 2022 at First Street Courthouse, 350 West 1st Street, Courtroom 6A, 6th Floor, Los Angeles, California 90012-4565.

20.    At the Final Approval Hearing, the Court will consider whether: (a) the Settlement is fair, reasonable, and adequate; (b) the Settlement Class should be finally certified for settlement purposes; (c) a final judgment should be entered and the action dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; (e) Class Counsel's motion for attorneys' fees and costs should be granted; and (f) the service awards sought for Representative Plaintiffs should be granted.

21.    Plaintiffs' Motion for Attorneys' Fees, Costs, and a Service Award shall be filed 35 Days prior to Settlement Class Members' Deadlines to object to or exclude themselves from the Settlement Agreement. By no later than 14 Days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any objections, and any replies in support of Plaintiffs' Motion for Attorneys' Fees, Costs, and a Service Award.

22.    Plaintiffs' Motion for Final Approval of the Settlement shall be filed with the Court at least 28 Days prior to the Final Approval Hearing. By no later than 14 Days prior to the Final Approval Hearing, the Parties shall file responses, if any, to any objections, and any replies in support of final approval of the Settlement and/or the Service Award Request and Fee Request.

7

23.     The Court reserves the right to continue the date of the Final Approval Hearing without further notice to Settlement Class Members.

## DEADLINES, INJUNCTION & TERMINATION

| Event | Date |
|---|---|
| Defendant to provide Settlement Class Member data to Claims Administrator | 10 business days after entry of this Order, *i.e.*, _____, 2022 |
| Notice Program per Settlement Agreement commences with the establishment of the settlement website | 7 days after Claims Administrator receives Settlement Class Member data, *i.e.*, _____ 2022 |
| Class Counsel's Motion for Attorneys' Fees and Costs and Service Awards | 35 days prior to the Objection Deadline, *i.e.*, _____, 2022 |
| Opt-Out and Objection Deadlines | 60 days after Notice Commencement Date, *i.e.*, _____, 2022 |
| Motion for Final Approval | 28 days prior to the Final Approval Hearing, *i.e.*, _____, 2022 |
| Replies in Support of Motion for Final Approval and Motion for Attorneys' Fees and Costs | 14 days prior to the Final Approval Hearing, *i.e.*, _____, 2022 |
| Final Approval Hearing | At the Court's convenience at least 120 days after entry of this Order, *i.e.*, _____, 2022 |

24.     All proceedings and deadlines in this matter, except those necessary to implement this Order and the settlement, are hereby stayed and suspended until further order of the Court.

25.    All Settlement Class Members who do not validly opt out and exclude themselves are hereby enjoined from pursuing or prosecuting any of the Released Claims as set forth in the Settlement Agreement until further order of the Court.

26.    In the event that the Settlement Agreement is terminated pursuant to the terms of the Settlement Agreement: (a) the Settlement Agreement and this Order shall become void, shall have no further force or effect, and shall not be used in the Litigation or any other proceedings for any purpose other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination; (b) this matter will revert to the status that existed before execution of the Settlement Agreement; and (c) no term or draft of the Settlement Agreement or any part of the Settling Parties' settlement discussions, negotiations or documentation (including any briefs filed in support of preliminary or final approval of the settlement) shall (i) be admissible into evidence for any purpose in this Litigation or in any other action or proceeding other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination, (ii) be deemed an admission or concession by any Settling Party regarding the validity of any of the Released Claims or the propriety of certifying any class against Defendant, or (iii) be deemed an admission or concession by any Settling Party regarding the truth or falsity of any facts alleged in the Litigation or the availability or lack of availability of any defense to the Released Claims.

**IT IS SO ORDERED**.

DATED: _____    _____

HON. PHILIP S. GUTIERREZ
UNITED STATES DISTRICT COURT JUDGE

[PROPOSED] ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

C:\Users\nbrazil\Desktop\Bosley Settlement\7 - Exh F - Preliminary Approval Order (01.07.2022).DOCX

# EXHIBIT G

1  M. Anderson Berry (SBN 262879)
2  **CLAYEO C. ARNOLD,**
   **A PROFESSIONAL LAW CORP.**
3  865 Howe Avenue
4  Sacramento, CA 95825
   Telephone: (916)777-7777
5  Facsimile: (916) 924-1829
6  aberry@justice4you.com

7  Jeffrey S. Goldenberg (*pro hac vice*)
8  **GOLDENBERG SCHNEIDER, LPA**
   4445 Lake Forest Drive, Suite 490
9  Cincinnati, OH 45242
   Telephone: (513) 345-8297
10 Facsimile: (513) 345-8294
   jgoldenberg@gs-legal.com
11

12

13 *Attorneys for Plaintiffs*

14

15 [additional counsel listed on following page]

16           **THE UNITED STATES DISTRICT COURT**
           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
17

18

19 KEN HASHEMI, STEVE          Case No.: 2:21-cv-00946-PSG(RAOx)
   ALTES, SANDRA JOHNSON-
20 FOSTER, GREGORY BOUTE,
   RAFAEL ARTIME, and JOHN     **[PROPOSED] FINAL APPROVAL**
21 BOWDEN as individuals and all **ORDER AND JUDGMENT**
   others similarly situated,

22           Plaintiffs,
23 vs.
24 BOSLEY, INC.,

25           Defendant.
26

27

28

           [PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David K. Lietz (*pro hac vice*)
Email: dlietz@masonllp.com
**MASON LIETZ & KLINGER LLP**
5301 Wisconsin Avenue, NW. Suite 305
Washington, DC 20016
Tel: (202) 429-2290

Charles E. Schaffer (*pro hac vice*)
Email: cschaffer@lfsblaw.com
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500

Ex Kano S. Sams II (SBN 192936)
Email: esams@glancylaw.com
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Tel: 310-201-9150

2

[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT

On _____, 2021, the Court entered an order granting preliminary approval (the "Preliminary Approval Order") to the January __, 2022 Settlement Agreement and Release ("Settlement Agreement") between Plaintiffs Ken Hashemi, Steve Altes, Sandra Johnson-Foster, Gregory Boute, Rafael Artime, and John Bowden, individually and on behalf of the Settlement Class (as defined below), and Defendant Bosley, Inc.[1]

Commencing on _____, pursuant to the notice requirements in the Settlement Agreement and the Preliminary Approval Order, _____ (the "Claims Administrator"), provided Notice to Settlement Class Members in compliance with the Settlement Agreement and the Notice Program, due process, and Rule 23 of the Federal Rules of Civil Procedure. The notice:

(a) fully and accurately informed Settlement Class Members about the Litigation and the existence and terms of the Settlement Agreement;

(b) advised Settlement Class Members of their right to request exclusion from the Settlement and provided sufficient information so that Settlement Class Members were able to decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the proposed settlement;

(c) provided procedures for Settlement Class Members to file written objections to the proposed settlement, to appear at the Final Approval Hearing, and to state objections to the proposed settlement; and

(d) provided the time, date, and place of the Final Approval Hearing.

On _____, 2021, the Court held a Final Approval Hearing to determine whether the proposed settlement is fair, reasonable, and adequate and whether

---

[1]   Capitalized terms used in this Final Approval Order shall have the same meaning as defined in the Settlement Agreement unless otherwise expressly stated.

[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT
C:\Users\nbrazil\Desktop\Bosley Settlement\8 - Exh G - Final Approval Order (01.07.2022).DOCX

judgment should be entered dismissing this Litigation with prejudice. The Court reviewed (a) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plaintiffs' Motion for an Award off Attorneys' Fees, Reimbursement of Expenses and Service Awards (together, the "Motions") and all supporting materials, including but not limited to the Settlement Agreement and the exhibits thereto; (b) any objections filed with or presented to the Court; and (c) the Parties' responses to any objections. The Court also considered the oral argument of counsel and any objectors who appeared. Based on this review and the findings below, the Court finds good cause to grant the Motions.

**IT IS HEREBY ORDERED:**

1.      The Court has jurisdiction over the subject matter of this Litigation, all claims raised therein, and all Parties thereto, including the Settlement Class.

2.      The Settlement Agreement is fair, reasonable, adequate and in the best interests of Settlement Class Members. The Settlement Agreement was negotiated at arm's-length, in good faith and without collusion, by capable and experienced counsel, with full knowledge of the facts, the law, and the risks inherent in litigating the Litigation, and with the active involvement of the Parties. Moreover, the Settlement Agreement confers substantial benefits on the Settlement Class Members, is not contrary to the public interest, and will provide the Parties with repose from litigation. The Parties faced significant risks, expense, and/or uncertainty from continued litigation of this matter, which further supports the Court's conclusion that the settlement is fair, reasonable, adequate and in the best interests of the Settlement Class Members.

3.      The Court grants final approval of the Settlement Agreement in full, including but not limited to the releases therein and the procedures for distribution of funds to Settlement Class Members, Class Counsel and the Claims Administrator. All Settlement Class Members who have not excluded themselves from the Settlement Class are bound by this Final Approval Order and Judgment.

[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT
C:\Users\nbrazil\Desktop\Bosley Settlement\8 - Exh G - Final Approval Order (01.07.2022).DOCX

4.      The Parties shall carry out their respective obligations under the Settlement Agreement in accordance with its terms. The relief provided for in the Settlement Agreement shall be made available to the various Settlement Class Members submitting valid Claim forms, pursuant to the terms and conditions in the Settlement Agreement. The Settlement Agreement is incorporated herein in its entirety as if fully set forth herein and shall have the same force and effect of an order of this Court.

## OBJECTIONS AND REQUESTS FOR EXCLUSION

5.      _____ objections to the Settlement were submitted by Settlement Class Members. The Court has considered all objections and finds that they do not warrant or support rejection or non-approval of the Settlement. All objections are hereby overruled in all respects. All persons who did not object to the Settlement in the manner set forth in the Settlement Agreement are deemed to have waived any objections, including but not limited to by appeal, collateral attack, or otherwise.

6.      _____ persons made valid and timely requests to be excluded from the Settlement and the Settlement Class (the "Opt-Out Members"). The Opt-Out Members are not bound by the Settlement Agreement and this Final Approval Order and Judgment and shall not be entitled to any of the benefits afforded to Settlement Class Members under the Settlement Agreement.

## CERTIFICATION OF THE SETTLEMENT CLASS

7.      Solely for purposes of the Settlement Agreement and this Final Approval Order and Judgment, the Court hereby certifies the following Settlement Class:

All persons residing in the United States whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, including but not limited to the California Settlement Subclass.

[PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT
C:\Users\nbrazil\Desktop\Bosley Settlement\8 - Exh G - Final Approval Order (01.07.2022).DOCX

8.     Solely for purposes of the Settlement Agreement and this Final Approval Order and Judgment, the Court hereby certifies the following California Settlement Subclass:

> All persons whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, and who were residing in the State of California at the time their PII was potentially compromised in the Data Incident.

9.     The Court incorporates its preliminary conclusions in the Preliminary Approval Order regarding the satisfaction of Federal Rules of Civil Procedure 23(a) and 23(b). Because the Settlement Class is certified solely for purposes of settlement, the Court need not address any issues of manageability for litigation purposes.

10.    The Court grants final approval to the appointment of Representative Plaintiffs Ken Hashemi, Steve Altes, Sandra Johnson-Foster, Gregory Boute, Rafael Artime, and John Bowden as the class representatives and concludes that they have fairly and adequately represented the Settlement Class and shall continue to do so.

11.    The Court grants final approval to the appointment as Class Counsel to M. Anderson Berry of Clayeo C. Arnold, A Professional Law Corporation, Jeffrey S. Goldenberg of Goldenberg Schneider, LPA, David K. Lietz of Mason Lietz & Klinger LLP, and Charles E. Schaffer of Levin Sedran & Berman, LLP. Class Counsel have fairly and adequately represented the Settlement Class and shall continue to do so.

## <u>NOTICE TO THE CLASS</u>

12.    The Court finds that the Notice Program, set forth in the Settlement Agreement and effectuated pursuant to the Preliminary Approval Order: (i) was the best notice practicable under the circumstances; (ii) was reasonably calculated to provide, and did provide due and sufficient notice to the Settlement Class regarding the existence and nature of the Litigation, certification of the Settlement Class for settlement purposes only, the existence and terms of the Settlement Agreement, and

the rights of Settlement Class Members to exclude themselves from the Settlement, to object and appear at the Final Approval Hearing, and to receive benefits under the Settlement Agreement; and (iii) satisfied the requirements of the Federal Rules of Civil Procedure, the United States Constitution, and all other applicable law.

## ATTORNEYS' FEES AND COSTS, SERVICE AWARDS

13.    The Court awards Class Counsel a total of $262,500 in combined attorneys' fees and reimbursement of $_____ in costs. The Court finds these amounts to be fair and reasonable. Payment shall be made from the Settlement Fund pursuant to the procedures in paragraph 7.4 of the Settlement Agreement.

14.    The Court awards $1,250 to each Representative Plaintiff as service awards. The Court finds these amounts are justified by their service to the Settlement Class. Payment shall be made from the Settlement Fund pursuant to the procedures in paragraph 7.4 of the Settlement Agreement.

## RELEASE

15.    Each Settlement Class Member, including Representative Plaintiffs, are: (1) deemed to have completely and unconditionally released, forever discharged and acquitted Defendant and the other Released Persons from all the Released Claims (including Unknown Claims) as defined in the Settlement Agreement; and (2) barred and permanently enjoined from asserting, instituting, or prosecuting, either directly or indirectly, these claims. The full terms of the release described in this paragraph are set forth in Paragraphs 1.24-1.25 and 6.1-6.2 of the Settlement Agreement and are specifically approved and incorporated herein by this reference (the "Release"). In addition, Representative Plaintiffs and Settlement Class Members are deemed to have waived (i) the provisions of California Civil Code § 1542, which provides that a general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party, and (ii) any law of

7

any state or territory of the United States that is similar, comparable, or equivalent to California Civil Code § 1542.

16.     The Settlement Agreement and this Final Approval Order and Judgment apply to all claims or causes of action settled under the Settlement Agreement and binds Representative Plaintiffs and all Settlement Class Members who did not properly request exclusion. The Settlement Agreement and this Final Approval Order and Judgment shall have maximum res judicata, collateral estoppel, and all other preclusive effect in all causes of action, claims for relief, suits, demands, petitions, or any other challenges or allegations that arise out of or relate to the subject matter of the Litigation and/or the Complaint.

## **OTHER PROVISIONS**

17.     Defendant shall pay all costs of the settlement, including all Awards and payments to Settlement Class Members, costs of Claims Administration, the Attorneys' Fees and Expenses Award to Class Counsel, and the Representative Plaintiffs' Service Awards.

18.     The Settlement Agreement and this Final Approval Order and Judgment, and all documents, supporting materials, representations, statements and proceedings relating to the settlement, are not, and shall not be construed as, used as, or deemed evidence of, any admission by or against Defendant of liability, fault, wrongdoing, or violation of any law, or of the validity or certifiability for litigation purposes of the Settlement Class or any claims that were or could have been asserted in the Litigation.

19.     The Settlement Agreement and this Final Approval Order and Judgment, and all documents, supporting materials, representations, statements and proceedings relating to the Settlement shall not be offered or received into evidence, and are not admissible into evidence, in any action or proceeding, except that the Settlement Agreement and this Final Approval Order and Judgment may be filed in

any action by any Defendant or the Settlement Class Members seeking to enforce the Settlement Agreement or the Final Approval Order and Judgment.

20.     Consistent with Paragraphs 9.1-9.4 of the Settlement Agreement, if the Effective Date does not occur for any reason, the following will occur:  (a) the Final Approval Order and Judgment and all of its provisions, will be vacated, including, but not limited to the Attorneys' Fees and Expenses Award and the Representative Plaintiffs' Service Awards, and the Final Approval Order and Judgment will not waive, release or otherwise impact the Parties' rights or arguments in any respect; and (b) the Litigation will revert to the status that existed before the Settlement Agreement's execution date, and the Parties shall be restored to their respective positions in the Litigation as if the Settlement Agreement had never been entered into.  No term or draft of the Settlement Agreement, or any part of the Parties' settlement discussions, negotiations, or documentation, will have any effect or be admissible in evidence for any purpose in the Litigation.

21.     Without affecting the finality of this Final Approval Order and Judgment, the Court will retain jurisdiction over this Litigation and the Parties with respect to the interpretation, implementation, and enforcement of the Settlement Agreement for all purposes.

22.     The Court hereby dismisses the Action in its entirety with prejudice, and without fees or costs except as otherwise provided for herein.

**NOW, THEREFORE,** the Court hereby enters judgment in this matter pursuant to Rule 58 of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED**:

DATED: _____        _____

                                      HON. PHILIP S. GUTIERREZ
                                      UNITED STATES DISTRICT COURT
                                      JUDGE