UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  #41(2/25)

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

Present: The Honorable  Philip S. Gutierrez, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**   Order GRANTING Plaintiffs' motion for preliminary approval of class action settlement.

Before the Court is a motion for preliminary approval of class action settlement filed by Plaintiffs Ken Hashemi ("Hashemi"), Steve Altes ("Altes"), Rafael Artime ("Artime"), Sandra Johnson-Foster ("Johnson-Foster"), Gregory Boute ("Boute"), and John Bowden ("Bowden") (collectively, "Plaintiffs"). *See generally* Dkt. # 42[1] ("*Mot.*"). Defendant Bosley, Inc. ("Defendant") did not oppose. The Court finds the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. Having considered the moving papers, the Court **GRANTS** the motion.

I.  Background

    A.  Factual and Procedural History

This case stems from a data breach. In August 2020, cyber criminals gained access to Defendant's computer systems that stored Plaintiffs' personal identifiable information ("PII")—i.e., Social Security numbers, driver's license numbers, financial account information, medical information, and health insurance information. *Mot.* 1:10–18. In early 2021, Defendant notified over 100,000 individuals who may have had their PII compromised in the data breach and offered them a year of free credit and identity theft monitoring services. *Id.* 1:19–23.

Shortly thereafter, Plaintiffs began filing separate putative class actions against Defendant, alleging that Defendant did not adequately protect Plaintiffs' PII, provide timely

---

[1] The Court cites Plaintiffs' memorandum in support of their motion because it contains their substantive arguments. Plaintiffs' preliminary approval motion itself is Docket Entry # 41.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

notice to affected individuals, or monitor its network for potential vulnerabilities. *Id.* 1:25–2:1. Hashemi and Altes filed the instant case in February 2021, and Bowden separately filed a putative class action complaint in April 2021. *Id.* 2:17–21. Hashemi, Altes, and Bowden then consolidated their cases and added additional putative class representatives Johnson-Foster, Boute, and Artime. *Id.* 2:22–27. Plaintiffs' operative first amended class action complaint advances 12 causes of action on behalf of Plaintiffs, a putative nationwide class, and a putative California subclass. *See generally* Dkt. # 18.

The parties negotiated a settlement over several months and agreed to take part in early mediation. *Mot.* 3:3–11. They selected Mediator Bennett Picker, who has "considerable experience mediating data breach class actions," and exchanged informal discovery and mediation briefs in advance. *Id.* After an all-day mediation session in August 2021, the parties agreed on most of the settlement terms but could not reach a final agreement. *Id.* 3:11–13. Mr. Picker then made a mediator's proposal that the parties ultimately accepted. *Id.* 3:13–14. Over the next several months, the parties hammered out the details of their Settlement Agreement (the "Settlement"), which they finalized in January 2022. *Id.* 3:14–18.

B.   Settlement Terms

The settlement class (the "Class" or "Class Members") includes "all persons residing in the United States whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, including but not limited to the California Settlement Subclass." *Settlement Agreement*, Dkt. # 43-1, Ex.1 ("*Settlement*"), ¶ 1.28. The California Settlement Subclass (the "California Subclass") is identically defined but specifies that it is limited to "those who were residing in the State of California at the time their PII was potentially compromised." *Id.* ¶ 1.3

The Settlement offers the Class three types of monetary relief capped at a maximum of $500,000 for the Class: (1) reimbursement for ordinary expenses and lost time up to $300 per Class Member; (2) reimbursement for extraordinary expenses up to $5,000 per Class Member; and (3) California Statutory Claim benefits of $50 per California Subclass Member. *Id.* ¶¶ 2.1–2.4. Class Members will also automatically receive free access to Aura Financial Shield Services for two years following the Court's final approval of the Settlement. *Id.* ¶ 2.5. This service provides fraud monitoring, home and property title monitoring, and income tax protection and carries a $1 million insurance policy for each subscriber. *Id.* Assuming the entire Class takes advantage of this service, the estimated cost to Defendant will be approximately $27 million. *See Joint Declaration of M. Anderson Berry and Jeffrey S. Goldenberg*, Dkt. # 43

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

("*Joint Decl.*"), ¶¶ 20–21. Defendant additionally has agreed to implement various enhanced data security measures and to provide yearly information security training for its staff. *Settlement* ¶ 2.9. In exchange, Class Members have agreed to release Defendant from all claims arising from the data breach, which the Settlement describes in great detail. *See id.* ¶¶ 1.24, 6.1.

Plaintiffs seek the Court's preliminary approval of the proposed Settlement. *See generally Mot.* Specifically, Plaintiffs move for an order (1) granting preliminary approval of the Settlement; (2) conditionally certifying the Class for settlement purposes; (3) appointing Plaintiffs Hashemi, Altes, Johnson-Foster, Boute, Artime, and Bowden as Class Representatives; (4) appointing M. Anderson Berry, Jeffrey S. Goldenberg, David K. Lietz, and Charles E. Schaffer as Class Counsel; (5) scheduling a hearing date for final approval of the settlement and entry of judgment; (6) appointing CPT Group, Inc. ("CPT") as the Settlement Administrator; and (7) approving the proposed notice and opt-out procedures for the Class Members. *See Proposed Order*, Dkt. # 43-1, Ex. F.

II.   Class Certification for Settlement Purposes

When parties settle an action prior to class certification, the Court is obligated to "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Preliminary approval of a class settlement is generally a two-step process. First, the Court must assess whether a class exists. *Id.* (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Second, the Court must determine "whether [the] proposed settlement is fundamentally fair, adequate, and reasonable." *Id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)) (internal quotation marks omitted). The decision to approve or reject a settlement is within the Court's discretion. *Hanlon*, 150 F.3d at 1026.

A.   Legal Standard

Parties seeking certification of a settlement-only class must still satisfy the Federal Rule of Civil Procedure 23 standards. *See Hanlon*, 150 F.3d at 1019–24. Under Rule 23, a plaintiff must satisfy the four prerequisites of Rule 23(a) *and* demonstrate that the action is maintainable under Rule 23(b). *See Amchem*, 521 U.S. at 613–14. The four prerequisites of Rule 23(a) are: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). Plaintiffs seek certification under Rule 23(b)(3), *see generally Mot.*, which requires that "questions of law or fact common to class members predominate over any questions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed R. Civ. P. 23(b)(3).

   B.   Discussion

      i.   *Numerosity*

The first requirement for maintaining a class action under Rule 23(a) is that the class is "so numerous that joinder of all members would be impracticable." Fed. R. Civ. P. 23(a)(1). Courts generally presume numerosity when there are at least 40 members in the proposed class. *See Charlebois v. Angels Baseball, LP*, No. SACV 10-0853 DOC (ANx), 2011 WL 2610122, at *4 (C.D. Cal. June 30, 2011). Here, the Class is composed of approximately 100,000 individuals, *Mot.* 13:12–14, which is sufficiently numerous for settlement purposes, *see Charlebois*, 2011 WL 2610122, at *4.

      ii.   *Commonality*

To fulfill the commonality requirement, plaintiffs must establish questions of law or fact common to the class as a whole. *See* Fed. R. Civ. P. 23(a)(2). The class claims must depend on a common contention that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (internal quotation marks omitted) (emphasis omitted). For the purposes of Rule 23(a)(2), even a single common question is sufficient. *See id*. at 359; *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013) (citing *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

Here, Plaintiffs maintain that there are multiple common question of law or fact—i.e., whether Defendant breached its duty to safeguard the Class's PII, whether Defendant unreasonably delayed in notifying the Class about the data breach, and whether Defendant's security measures or lack thereof violated various statutory provisions. *See Mot.* 14:6–12. Because Plaintiffs contend—and the Court agrees—that at least one common legal and factual issue would arise were the parties to litigate these claims, the commonality requirement is satisfied. *See Dukes*, 564 U.S. at 359.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

### iii. Typicality

Typicality requires a showing that the named plaintiffs are members of the class they represent and that their claims are "reasonably co-extensive with those of absent class members," but not necessarily "substantially identical." *Hanlon*, 150 F.3d at 1020; *see* Fed. R. Civ. P. 23(a)(3). The test of typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)) (internal quotation marks omitted). The typicality and commonality requirements somewhat overlap. *See Gen. Tel. Co. Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Here, Plaintiffs allege that both they and the absent Class Members had their PII compromised by Defendant's inadequate data security measures and failure to timely notify Class Members of the breach. *See Mot.* 14:15–24. Plaintiffs' claims are "reasonably co-extensive with those of absent class members" and, therefore, "typical" of the Class because they arise from Defendant's uniform failure to protect all Class Members' PII, involve a uniform source of injury, and are based on the same factual and legal theories. *See Hanlon*, 150 F.3d at 1020.

### iv. Adequacy

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Ninth Circuit has indicated that "[t]he proper resolution of this issue requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

Here, Plaintiffs have no apparent conflicts of interest between themselves and the absent Class Members. *Mot*. 15:9–15. Plaintiffs share common interests with the other Class Members, as they all had their PII compromised in a single information security breach. Additionally, Plaintiffs' attorneys appear qualified and committed to representing the Class.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

They have expended considerable time and effort on this case by conducting informal discovery, preparing for and participating in adversarial mediation, and negotiating with Defendant over several months. *See id.* 3:3–18, 15:16–18. Plaintiffs' attorneys additionally have "decades of experience" in data breach litigation and have served as class counsel in other consumer class actions. *Joint Decl.* ¶¶ 48–49 & Exs. 2–5. Accordingly, the Court is satisfied that both Plaintiffs and their attorneys are adequate representatives for the Class.

       v.       *Predominance and Superiority*

Having concluded that the Class satisfies the Rule 23(a) factors, the Court now turns to Rule 23(b)(3). Rule 23(b)(3) provides that a class may be certified where common questions of law or fact predominate over individual questions and a class action is the superior method for adjudicating the controversy as a whole. The predominance aspect specifically "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022 (internal quotation marks omitted).

As for predominance, Plaintiffs' case rises or falls on several questions broadly applicable to the entire Class: (1) whether Defendant's security measures met or exceeded mandatory statutory minimums; (2) whether Defendant timely notified the class of the breach; and (3) whether Defendant breached its duty to safeguard Class Members' PII. Courts in similar data breach cases have found common questions like these sufficient to satisfy the predominance requirement. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *7 (N.D. Cal. July 22, 2020) (finding predominance satisfied because plaintiffs' case turned on whether defendant "used reasonable data security" and whether defendant "provided timely notice in connection with the [d]ata [b]reaches"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312 (N.D. Cal. 2018) (finding predominance satisfied because "the focus would remain on the extent and sufficiency of the specific security measures [defendant] employed").

Variation in state law is the only factor that could undermine predominance in otherwise uniform data breach cases like this. *See In re Anthem, Inc.*, 327 F.R.D. at 312. However, "a court adjudicating a multistate class action is free to apply the substantive law of a single state to the entire class." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (en banc). And where, as here, there is no showing that the law of one or more states should apply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

over California law, potential variations in state law do not undermine predominance at this stage. *See id.* at 562–64. Accordingly, the Court concludes that common questions of law and fact predominate here.

As for superiority, requiring more than 100,000 Class Members to litigate their claims separately would be inefficient and costly, resulting in duplicative and potentially conflicting proceedings. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) ("Numerous individual actions would be expensive and time-consuming and would create the danger of conflicting decisions as to persons similarly situated."). Class Members could face difficulty finding legal representation and could lose the incentive to bring their claims if forced to do so in isolation. A class action would thus be the superior method for adjudicating this action.

In short, the Court concludes that both the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

C.     Conclusion

Plaintiffs have met the requirements for class certification under Rule 23. Therefore, the Court **CERTIFIES** the Class for settlement purposes only. The Court also **APPOINTS** M. Anderson Berry, Jeffrey S. Goldenberg, David K. Lietz, and Charles E. Schaffer as Class Counsel and **APPOINTS** Plaintiffs Hashemi, Altes, Johnson-Foster, Boute, Artime, and Bowden as Class Representatives.

III.    Preliminary Approval of the Proposed Class Action Settlement

The next step is to determine whether the settlement reached is "fair, reasonable, and adequate" under Rule 23(e). *See* Fed. R. Civ. P. 23(e)(2).

A.     Legal Standard

The approval of a class action settlement is a two-step process under Rule 23(e) in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted. *See In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10-6352 MMM (CGx), 2014 WL 10212865, at *5 (C.D. Cal. July 28, 2014). "At the preliminary approval stage, a court determines whether a proposed settlement is within the range of possible approval and whether or not notice should

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

be sent to class members." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1063 (C.D. Cal. 2010) (internal quotation marks omitted). Preliminary approval amounts to a finding that the terms of the proposed settlement warrant consideration by members of the class and a full examination at a final approval hearing. *See Manual for Complex Litigation* (Fourth) § 13.14 (2004).

Preliminary approval is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Ma v. Covidien Holding, Inc.*, No. SACV 12-2161 DOC, 2014 WL 360196, at *4 (C.D. Cal. Jan. 31, 2014); *see also Eddings v. Health Net, Inc.*, No. CV 10-1744 JST (RZx), 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013).

After notice is given to the class, preliminary approval is followed by a review of the fairness of the settlement at a final fairness hearing, and, if appropriate, a finding that it is "fair, reasonable, and adequate." Fed R. Civ. P. 23(e)(2); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1027. In making this determination, the district court must balance many factors:

> the strength of the plaintiffs' case; the risk, expense complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Staton*, 327 F.3d at 959; *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list").

The district court must approve or reject the settlement as a whole. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The Court may not delete, modify, or rewrite particular provisions of the settlement. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 868 (9th Cir. 2012); *Hanlon*, 150 F.3d at 1026.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

Where the parties negotiate a settlement agreement before the class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'" *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048–49 (9th Cir. 2019) (quoting *Dennis*, 697 F.3d at 864). Specifically, "such [settlement] agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair," and this "more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotations omitted). Courts must especially scrutinize "subtle signs of collusion," such as a reversionary clause, a clear sailing agreement, or a disproportionately large attorneys' fees award. *Id.*

    B.    <u>Overview of the Settlement Agreement</u>

The Settlement offers the Class three types of monetary relief, capped at a maximum of $500,000 for the entire Class: (1) reimbursement for ordinary expenses and lost time up to $300 per Class Member; (2) reimbursement for extraordinary expenses up to $5,000 per Class Member; and (3) California Statutory Claim benefits of $50 per California Subclass Member. *Settlement* ¶¶ 2.1–2.4. Class Members will also automatically receive free access to Aura Financial Shield Services for two years following the Court's final approval of the Settlement. *Id.* ¶ 2.5. This service provides fraud monitoring safeguards for Class Members' assets, home and property title monitoring, and income tax protection and carries a $1 million insurance policy for each subscriber. *Id.* The estimated cost to supply this service to the entire class is approximately $27 million. *See Joint Decl.* ¶¶ 20–21. Defendant further agrees to implement various enhanced data security measures and to provide yearly information security training for its staff. *Settlement* ¶ 2.9. In exchange, Class Members agree to release Defendant from all claims arising from the data breach, as exhaustively described in the Settlement. *See id.* ¶¶ 1.24, 6.1.

    C.    <u>Analysis of Settlement Agreement</u>

        i.    *Fair and Honest Negotiations*

In general, evidence that a settlement agreement is arrived at through genuine arms-length bargaining with a mediator supports a conclusion that the settlement is fair. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."); *Sarabi v. Weltman, Weinberg & Reis*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

*Co., L.P.A.*, No. CV 10-1777 AJB (NLSx), 2012 WL 3809123, at *1 (S.D. Cal. Sept. 4, 2012) (granting motion for settlement approval after the parties engaged in extensive negotiations); *Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *10 (C.D. Cal. Apr. 29, 2014) (declining to apply a presumption but considering the arms-length nature of the negotiations as evidence of reasonableness).

Here, all evidence supports the conclusion that the Settlement is fair and honest. The parties extensively negotiated the Settlement over several months prior to mediation and ultimately reached a final agreement only after arms-length negotiations before mediator Mr. Picker. *Mot.* 28:27–29:12. Moreover, the fact that the Settlement was reached through Mr. Picker's proposal further suggests that the Settlement was not a result of collusion. *See Hanlon*, 150 F.3d at 1029 (explaining that having a mediator present at the negotiations assured the court that the settlement was "not the result of collusion or a sacrifice of the interests of the class"). Nothing indicates that the negotiations were dishonest or collusive in any way, and the informal discovery conducted prior to mediation further suggests that the parties had sufficient information to assess the merits of their claims and, therefore, reach a well-informed settlement. *See Glass v. UBS Fin. Servs., Inc.*, No. CV 06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (reasoning that informal discovery prior to settling supports approving the class action settlement). The Court is therefore satisfied that the Settlement is the product of fair and honest negotiations.

   ii. *Settlement Amount*

To evaluate whether a settlement falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

Here, the Settlement provides up to $500,000 to the Class, available through a claims process, to reimburse Class Members for their basic expenses, time lost, and extraordinary expenses due to the data breach. *Settlement* ¶¶ 2.1–2.4. The Class also automatically receives access to Aura Financial Shield services for two years, which carries a market value of approximately $270 per Class Member—i.e., a $27 million cost to Defendant to provide this service, assuming the entire Class signs up. *See id.* ¶ 2.5; *Joint Decl.* ¶¶ 20–21. On the high end, Plaintiffs estimate that the Settlement could be worth as much as $27.5 million, which is approximately $275 per Class Member. *See Joint Decl.* ¶ 21. However, Plaintiffs' more conservative estimates—factoring in that only a small percentage of the Class may choose to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

subscribe to Aura Financial Shield's services—place the Settlement value closer to $1.5 million, which is approximately $15 per Class Member. *See id.*

Plaintiffs acknowledge that they faced significant risks maintaining a class through to trial largely due to potential difficulties with trying causation and injury. *Mot.* 25:20–26. Moreover, these risks are compounded by the fact that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury. *See In re Anthem, Inc.*, 327 F.R.D. at 317 ("Data-breach litigation is in its infancy with threshold issues still playing out in the courts."). In other words, it is difficult to estimate Plaintiffs' expected recovery were this case to proceed to trial given the relative dearth of precedent and exemplar cases that have proceeded to trial. However, Plaintiffs' $15 to $275 per Class Member value estimates greatly exceed the settlement value per class member in comparable data breach cases. *See id.* at 318 (describing settlement value of $0.68 per class member as "meaningful consideration" in a data breach case); *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-02583-TWT, 2016 WL 6902351, at *5 (N.D. Ga. Aug. 23, 2016) (finding an estimated settlement value of $0.52 per class member fair and reasonable given the substantial risks of data breach litigation); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. MDL 14-2522 (PAM), 2017 WL 2178306, at *2 (D. Minn. May 17, 2017) (noting that an estimated settlement value of approximately $0.21 per class member was fair and reasonable).[2]

In short, given the ongoing risks and uncertainties of data breach litigation, as well as the fact that the Settlement provides significantly greater value per Class Member as compared to similar data breach class action settlements, the Court concludes that the Settlement amount is within the range of approval.

### iii. Attorneys' Fees and Costs

When reviewing attorneys' fees requests in settlement class actions, courts have discretion to apply the percentage-of-the-fund method or the lodestar method to determine reasonable attorneys' fees. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011) (finding that when

---

[2] These cases largely focus on the reimbursement fund value rather than the value of additional identity protection services. But even by that metric, the $5 per Class Member share of the reimbursement fund here also far exceeds the average per class member share in any of these cases.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

a settlement establishes a common fund for the benefit of a class, courts may use either method to gauge the reasonableness of a fee request, but encouraging courts to employ a second method as a cross-check after choosing a primary method).

If employing the percentage-of-the-fund method, the "starting point" or "benchmark" award is 25% of the total settlement value. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993). A court may exceed the benchmark but must explain its reasons for so doing. *See Powers*, 229 F.3d at 1255–57. Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award. *Vizcaino*, 290 F.3d at 1050. To determine attorneys' fees under the lodestar method, a court must multiply the reasonable hours expended by a reasonable hourly rate. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294 n.2 (9th Cir. 1994). The court may then enhance the lodestar with a "multiplier," if necessary, to arrive at a reasonable fee. *Id.*

Here, Class Counsel request an award of attorneys' fees not to exceed $262,500, inclusive of all costs and expenses. *Settlement* ¶ 7.2. Plaintiffs note that this is only 16.6% of even their most conservative estimate of the Settlement's value, but they do not explicitly or clearly provide briefing using the lodestar method to support this request. Nor do they make clear which settlement value the Court should use as a reference—i.e., the value of identity theft protection services *plus* the reimbursement fund or just the reimbursement fund. Accordingly, the Court **ORDERS** Class Counsel to provide the requested hourly rate and hours expended in this case so the Court can calculate the lodestar value and use it to cross-check the reasonableness of the fees and costs award. Class Counsel must also submit a detailed summary of their costs and expenses for the Court's consideration. Class Counsel should also address whether, in data breach class actions, courts have generally justified attorneys' fees by reference to the reimbursement fund alone or the entire settlement value.

      iv.     Service Awards

Service awards are fairly typical in settlement class actions. *Rodriguez*, 563 F.3d at 958. When considering requests for service awards, courts consider five principal factors: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; [and] (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

Here, each Class Representative seeks a service award of $1,250 in addition to his or her individual monetary reimbursement, if any, and Aura Financial Shield services. *See Settlement* ¶ 7.3. This represents 1.5% of the $500,000 reimbursement fund or 0.25% each. If the Court factors in the Aura Financial Shield benefits, the requested service awards for all Plaintiffs represent only 0.02% of the total Settlement value. However, because Plaintiffs do not make clear which baseline settlement value the Court should use, the Court cannot readily assess the reasonableness of the requested service awards at this time.

Courts also typically examine the propriety of a service award by comparing it to the total amount other class members will receive. *See Staton*, 327 F.3d at 975. Here, each Class Member's average value from the Settlement is $275—i.e., a $5 share per Class Member of the reimbursement fund plus $270 for Aura Financial Shield services. The requested service award of $1,250 per Class Representative is approximately 4.5 times greater than the average value for each Class Member, which is generally within the reasonable range of approval. *See Dawson v. Hitco Carbon Composites, Inc.*, No. CV 16-7337 PSG (FFMx), 2019 WL 6138467, at *7 n.2 (C.D. Cal. July 9, 2019) (finding a service award of 5 times the average award reasonable). However, if considering only the reimbursement fund, Plaintiffs' requested service awards are 250 times greater than the $5 share per Class Member, which is clearly disproportionate to the available per-Class Member recovery.

Ultimately, the Court will determine the reasonableness of the requested service awards when ruling on Plaintiffs' motion for final approval. Before the final approval hearing, the Court **ORDERS** Plaintiffs to submit a memorandum further justifying their requested service awards. Plaintiffs should also address whether, in data breach class actions, courts have generally justified service awards by reference to the reimbursement fund alone or the entire settlement value.

    v. *Administration Costs*

The parties have agreed to use CPT—an organization that has served as an administrator for thousands of class actions over the years—as their settlement and claims administrator. *Joint Decl.* ¶ 40. Plaintiffs estimate that the cost of notice and claims administration will be approximately $69,000, which Defendant will pay separate and apart from any relief to the class. *Id.* This request appears reasonable considering the Class size of over 100,000 individuals—i.e., an approximate cost of only $0.69 per Class Member. *See Holt v. Parsec, Inc.*, No. CV 10-9540-DMG (PJWx), 2012 WL 12882712, at *1–3 (C.D. Cal. Mar. 5, 2012) (approving an estimated settlement administration cost of approximately $16 per class member); *Ching v.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

*Siemens Indus.*, No. 11–cv–04838–MEJ, 2014 WL 2926210, at *2 (N.D. Cal. June 27, 2014) (approving an estimated settlement administration cost of approximately $220 per class member).

    D.     Notice to Class Members

Before the final approval hearing, parties must provide adequate notice of the settlement to all class members. Federal Rule of Civil Procedure 23 provides:

> For any class certified under Rule 23(b)(3) . . . the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. . . . The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, Plaintiffs have provided both a proposed notice form and a proposed claims form. *See* Dkt. # 43-1, Ex. B. The notice form sets forth in clear language: (1) the nature of the action and the essential terms of the Settlement; (2) the meaning and nature of the Class; (3) Class Counsel's application for attorneys' fees and the proposed service award payments for Plaintiffs; (4) the claim process for reimbursement and directions for enrolling in Aura Financial Shield services; (5) how to opt out of the Settlement; (6) how to object to the Settlement; (7) the Court's procedure for final approval of the Settlement; and (8) how to obtain additional information regarding this case and the Settlement. *See generally id.* Separately, the settlement claim form also explains in clear language precisely what information is needed to submit a claim, the definitions of ordinary and extraordinary expenses, and how California Subclass Members can claim their $50 statutory payments. *See generally* Dkt. # 43-1, Ex. A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

Plaintiffs propose both "short-form" and "long-form" notice. *Joint Decl.* ¶ 28. The "short-form" notice will be both mailed and e-mailed to the addresses provided to Defendant when Class Members created their online accounts. *Declaration of Julie Green*, Dkt. # 43-1, Ex. E ("*Green Decl.*"), ¶¶ 11–12. If notices are returned without a forwarding address, CPT will run an "Accurint skip trace" to attempt to obtain a current mailing address. *Id.* ¶ 11. The "long-form" notice will be posted on the Settlement website, **www.BosleySettlement.com,** and will contain links to important documents in both English and Spanish, including the Settlement itself, the claim forms, and any other relevant court filings. *Id.* ¶ 13; *Joint Decl.* ¶ 29. CPT will also have a 24/7 toll-free phone line with a live operator available to answer any Class Member questions. *Green Decl.* ¶ 14.

Class Members will have 90 days from the date the notice is mailed to complete and submit a claim form to CPT. *Settlement* ¶ 2.4. Class Members who alternatively wish to opt out or object to the Settlement must do so in writing within 60 days after notice is sent. *Id.* ¶¶ 1.18–1.19.

Having reviewed the parties' plan to notify Class Members, as well as the proposed notice and settlement claim forms, the Court finds them satisfactory.

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. As such, the Court **PRELIMINARILY APPROVES** the Settlement; **APPOINTS** M. Anderson Berry, Jeffrey S. Goldenberg, David K. Lietz, and Charles E. Schaffer as Class Counsel; **APPOINTS** Plaintiffs Hashemi, Altes, Johnson-Foster, Boute, Artime, and Bowden as Class Representatives; **APPOINTS** CPT as the Settlement Administrator; and **APPROVES** the proposed class notice and settlement claims forms.

The final approval hearing is set for **August 5, 2022 at 1:30 p.m.** At least 30 days before the final approval hearing, and in addition to the motion for final approval of class action settlement, the Court **ORDERS** Plaintiffs to file:

- A memorandum justifying Class Counsel's requested award of attorneys' fees and costs that includes declarations supporting the reasonableness of each attorney's requested hourly rate and itemized billing statements showing hours worked, hourly rates, expenses incurred thus far, and expenses to be incurred in the future. The memo should also explain whether a multiplier should be applied to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | February 22, 2022 |
|---|---|---|---|
| Title | Ken Hashemi, et al. v. Bosley, Inc. | | |

lodestar value for the attorneys' fees and, if so, why the proposed multiplier is appropriate in this case.  Class Counsel should also address whether, in data breach class actions, courts have justified attorneys' fees awards by reference to the reimbursement fund alone or the entire settlement value; and

- A memorandum justifying Plaintiffs' requested service awards, supported by Plaintiffs' declarations, and addressing whether, in data breach class actions, courts have justified service awards by reference to the reimbursement fund alone or the entire settlement value.

**IT IS SO ORDERED.**