UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**                                  JS-6

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

| Present: The Honorable | Philip S. Gutierrez, United States District Judge |
|---|---|

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
| Not Present | Not Present |

**Proceedings (In Chambers):**    **Order GRANTING the motions for final approval of the class settlement, for attorneys' fees, costs, and service awards, and for approval of payment to Objectors.**

        Before the Court are three motions.  The first is a motion for final approval of class action settlement filed by Plaintiffs Ken Hashemi ("Hashemi"), Steve Altes ("Altes"), Rafael Artime ("Artime"), Sandra Johnson-Foster ("Johnson-Foster"), Gregory Boute ("Boute"), and John Bowden ("Bowden") (collectively, "Plaintiffs").  *See generally* Dkt. # 59-1 ("*FA Mot.*"). Defendant Bosley, Inc. ("Defendant") submitted a response in support of the final approval motion.  *See generally* Dkt. # 63.  The second is Plaintiffs' motion for attorneys' fees, expenses, and service awards.  *See generally* Dkt. # 60-1 ("*Fees Mot.*").  The third is a stipulation requesting approval of payment to Objectors pursuant to the Federal Rule of Civil Procedure 23(e)(5)(B).  *See generally* Dkt. # 72 ("*Obj. Stip.*").[1]  The Court held a fairness hearing on November 18, 2022.  Having considered the moving, opposing, and reply papers, as well as the arguments at the hearing, the Court **GRANTS** the motion for final approval, **GRANTS** the motion for attorneys' fees, expenses, and service awards, and **GRANTS** the Rule 23(e)(5)(B) request for approval of payment to Objectors.

---

[1] Originally, Objectors Jude Milson and Peter Henderson filed an objection to the proposed settlement, an opposition to the final approval motion, and an opposition to the motion for attorneys' fees, expenses, and service awards.  *See generally* Dkts. # 56, 64–65.  However, Objectors have since agreed to withdraw their objections in exchange for the requested payment of $15,000 to Objectors' counsel, the Wilshire Law Firm, in consideration of the fees and costs incurred in filing these objections.  *See generally Obj. Stip.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

I.    Background

    A.    Factual Background

This case stems from a data breach.  In August 2020, cyber criminals gained access to Defendant's computer systems that stored Plaintiffs' personal identifiable information ("PII")—i.e., Social Security numbers, driver's license numbers, financial account information, medical information, and health insurance information.  *FA Mot.* 2:20–27.  Plaintiffs began filing separate putative class actions against Defendant, alleging that Defendant did not adequately protect Plaintiffs' PII, provide timely notice to affected individuals, or monitor its network for potential vulnerabilities.  *Id.* 3:1–9.  Hashemi and Altes filed the instant case in February 2021, and Bowden separately filed a putative class action complaint in April 2021.  *Id.* Hashemi, Altes, and Bowden then consolidated their cases and added additional putative class representatives Johnson-Foster, Boute, and Artime.  *Id.*  Plaintiffs' operative first amended class action complaint advances 12 causes of action on behalf of Plaintiffs, a putative nationwide class, and a putative California subclass.  *See generally* Dkt. # 18.

    B.    Settlement Agreement and Preliminary Approval

The parties negotiated a settlement over several months and agreed to take part in early mediation.  *FA Mot.* 3:10–21.  The parties selected Mediator Bennett Picker, who has significant experience mediating data breach class actions, and the parties exchanged informal discovery and mediation briefs in advance.  *Id.*  After an all-day mediation session in August 2021, the parties agreed on most of the settlement terms but could not reach a final agreement.  *Id.* 3:22–28.  Mr. Picker then made a mediator's proposal that the parties ultimately accepted.  *Id.* Over the next several months, the parties hammered out the details of their Settlement Agreement (the "Settlement"), which they finalized on January 6, 2022.  *Id.*

The settlement class (the "Class" or "Class Members") includes "all persons residing in the United States whose PII was potentially compromised in the Data Incident first announced by Bosley on or about January 26, 2021, including but not limited to the California Settlement Subclass."  *Settlement Agreement*, Dkt. # 49-2 ("*Settlement*"), ¶ 1.28.  The California Settlement Subclass (the "California Subclass") is identically defined but specifically limited to "those who were residing in the State of California at the time their PII was potentially compromised."  *Id.* ¶ 1.3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

The Settlement offers the Class the following three types of monetary relief capped at a maximum of $500,000 for the Class: (1) reimbursement for ordinary expenses and lost time up to $300 per Class Member; (2) reimbursement for extraordinary expenses up to $5,000 per Class Member; and (3) California Statutory Claim benefits of $50 per California Subclass Member. *Id.* ¶¶ 2.1–2.4. Class Members will also receive free access to Aura Financial Shield Services for two years if they sign up within 90 days of the date of final approval. *Id.* ¶ 2.5. This service provides fraud monitoring, home and property title monitoring, and income tax protection and carries a $1 million insurance policy for each subscriber. *Id.* Defendant additionally has agreed to implement various enhanced data security measures and to provide yearly information security training for its staff. *Id.* ¶ 2.9. In exchange, Class Members have agreed to release Defendant from all claims arising from the data breach, which the Settlement describes in detail. *See id.* ¶¶ 1.24, 6.1.

Plaintiffs moved for class certification for settlement purposes and for the Court's preliminary approval of their settlement. *See generally* Dkt. # 42. The Court certified the Settlement Class and preliminarily approved the Settlement Agreement. *See generally* Dkt. # 46 ("*PA Order*"). Plaintiffs and Defendant subsequently filed an ex parte application to modify one aspect of the settlement agreement *nunc pro tunc* following discussions with Court-approved Settlement Administrator. *See generally* Dkt. # 49. As described above, a key benefit of the Settlement is a free two-year enrollment in Aura Financial Shield identity theft monitoring services. *Settlement* ¶ 2.5. Originally, the Settlement provided that the two-year protection period would start on the date the Settlement became effective. *See* Dkt. # 43-1, ¶ 2.5. But that posed several administrative complications for CPT and Aura Financial Shield, so the parties agreed to a 90-day enrollment window instead, *see Settlement* ¶ 2.5, which the Court approved, *see generally* Dkt. # 50.

CPT sent notice by U.S. Mail to 21,174 Class Members and by e-mail to 86,927 Class Members. *Declaration of Katie Tran*, Dkt. # 59-2 ("*Tran Decl.*"), ¶¶ 13–14. After a skip trace and attempts to find mailing addresses for individuals with undeliverable e-mail accounts, CPT was able to reach over 98% of the 100,000+ Class Members. *Id.* ¶¶ 7, 13–16. As of July 5, 2022, 304 individuals submitted claims for ordinary reimbursements, 3 for extraordinary reimbursements, and 524 for California-resident statutory damages. *Id.* ¶ 20. Only two Class Members opted out of the Settlement, and two different Class Members filed objections, *id.* ¶¶ 22–23, which they are currently seeking to withdraw, *see Obj. Stip* 1:10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | | Date | November 21, 2022 |
|---|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | | |

II.    <u>Final Approval of the Settlement Agreement</u>

A.    <u>Legal Standard</u>

A court may finally approve a class action settlement "only after a hearing and on finding that the settlement . . . is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). Approval or rejection of a settlement agreement is committed to the district court's sound discretion. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

In determining whether a settlement is fair, reasonable, and adequate, courts must balance a number of factors:

> [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of proceedings; [6] the experience and views of counsel; [7] the presence of a government participant; and [8] the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026; *see also Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Officers for Justice v. Civil Serv. Comm'n of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) (noting that the list of factors is "by no means an exhaustive list"). Additionally, under Rule 23(e), the Court must "scrutiniz[e] the fee arrangement for potential collusion or unfairness to the class" by analyzing three factors: (1) whether counsel "receive[d] a disproportionate distribution of the settlement"; (2) whether the parties agreed to a "clear sailing arrangement"; and (3) whether the settlement includes a "kicker" or "reverter" clause. *See Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

The district court must either wholly approve or reject the settlement after comprehensively exploring all factors. *See Hanlon*, 150 F.3d at 1026 ("It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."). The court may not delete, modify, or rewrite particular provisions of the settlement. *See id.* A court should be cognizant that a settlement "is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Id.* In determining whether a proposed settlement should be approved, the Ninth Circuit has a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | | Date | November 21, 2022 |
|---|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | | |

"strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

B.    <u>*Hanlon* Factors</u>

i.    *Strength of Plaintiffs' Case*

"An important consideration in judging the reasonableness of a settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 488 (E.D. Cal. 2010) (citation omitted).  This factor generally weighs in favor of approval when plaintiffs must overcome barriers to make their case.  *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010).

Plaintiffs indicate that they had a relatively strong liability case. *Joint Declaration*, Dkt. # 43 ("*Joint Decl.*"), ¶¶ 50–51.  They argue that they had a "reasonably good chance" of proving that Defendant failed to maintain adequate data security measures, which would have been central to their various theories of liability.  *Id.* ¶ 51.  But as the Court acknowledged in its preliminary approval order, "damages methodologies in data breach cases are largely untested and have yet to be presented to a jury." *See PA Order* at 11.  In other words, even if Plaintiffs could readily establish liability, it is unclear what damages they would be entitled to at trial, in part because many Class Members have suffered no financial injury at all—just increased risk of financial injury.  Given the uncertain value of Plaintiffs' case, a settlement offering up to $500,000 to the small fraction of the Class that did suffer financial injury and two years of identity theft protection services to all others is reasonable even if Plaintiffs had a solid liability case.  Accordingly, this factor weighs in favor of final approval.

ii.    *Risk, Expense, Complexity, and Duration of Further Litigation*

The second factor in assessing the fairness of the proposed settlement is the complexity, expense, and likely duration of the lawsuit if the parties had not reached a settlement agreement.  *See Officers for Justice*, 688 F.2d at 625.

Plaintiffs argue that, without a settlement, they would need to endure expensive and protracted litigation that could have resulted in no recovery at all.  *FA Mot.* 10:7–11:16.  They cite several out of circuit cases highlighting causation-related standing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

issues common in data breach litigation. *See id.* (citing *Hammond v. Bank of N.Y. Mellon Corp.*, No. 08 CIV. 6060 RMB RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010), and *In re U.S. Off. Of Pers. Mgmt. Data Sec. Breach Litig.*, 266 F. Supp. 3d 1, 19 (D.D.C. 2017)). Courts in the Ninth Circuit have grappled with these issues too. *See, e.g.*, *I.C. v. Zynga, Inc.*, __ F. Supp. 3d __, 2022 WL 2252636, at 1*–2, *9–10 (N.D. Cal. 2022) (finding plaintiffs lacked standing to bring data breach claims because compromise of PII like e-mail addresses, phone numbers, and credit card numbers, "without more, fail[ed] to satisfy the injury-in-fact element in the absence of an identity theft"); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010) (finding plaintiffs had standing to bring data breach claims after laptop with employee PII and social security numbers was stolen); *In re Zappos.com, Inc.*, 888 F.3d 1020, 1026 (9th Cir. 2018) (finding that *Krottner* was still good law in the wake of recent changes to Supreme Court standing precedent). Moreover, the Supreme Court magnified any uncertainty already endemic to data breach litigation by calling into question class-wide standing to recover damages stemming from "an asserted risk of future harm." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211–12 (2021).

Given these causation issues, the "complicated and technical factual overlay," and likely appeals, *FA Mot.* 10:9–11:20, Plaintiffs would have faced prolonged litigation and significant obstacles as trial approached, *cf. Andrews v. Plains All Am. Pipeline, LP*, No. CV 15-4113 PSG (JEMx), 2022 WL 1840329, at *2–3 (C.D. Cal. Mar. 8, 2022) (addressing defendants' motion to certify class action trial plan order for interlocutory appeal regarding complex, standing-related damages questions even though liability was relatively straightforward). Accordingly, this factor weighs in favor of final approval.

### iii. Risk of Maintaining Class Action Status Through Trial

For many of the same reasons stated above, Plaintiffs likely would have had difficulty maintaining class action status through to trial. For example, coming up with a feasible trial plan would be difficult given that no data breach case for damages has ever proceeded to trial, and variations in state law may have ultimately defeated predominance had the case been certified for trial rather than settlement purposes. *See PA Order* at 6, 11 (citing *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561 (9th Cir. 2019) (en banc)). Accordingly, this factor also weighs in favor of final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

   *iv.  Amount Offered in Settlement*

  The next factor in assessing the fairness of the proposed settlement is the amount of the settlement.  "[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Officers for Justice*, 688 F.2d at 624 (internal quotation marks omitted).  The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by negotiators."  *Id.* at 625.  Rather, the settlement amount must account for the risks of further litigation and trial, as well as expenses and delays associated with continued litigation.  *Id.*

  Here, the Settlement offers the Class three types of monetary relief capped at a maximum of $500,000: (1) reimbursement for ordinary expenses and lost time up to $300 per Class Member; (2) reimbursement for extraordinary expenses up to $5,000 per Class Member; and (3) California Statutory Claim benefits of $50 per California Subclass Member.  *Settlement* ¶¶ 2.1–2.4.  Class Members who sign up will also receive free access to Aura Financial Shield Services for two years, valued at approximately $270 per Class Member.  *See id.* ¶ 2.5.

  Although it is true that the California Subclass Members, for example, could have received a minimum of $100 each if they prevailed at trial, that is beside the point because settlement is often "a yielding of absolutes and an abandoning of highest hopes."  *Officers for Justice*, 688 F.2d at 624.  That sum in no way accounts for the risks, costs, and delays they would have faced by prosecuting their claims through to a jury verdict.  *See id.* at 625.

  Further, the $500,000 made available is adequate as the parties contend that the current reimbursement process likely remedies "100 percent of the compensable losses sustained by a Class Member who submits a valid claim."  *Joint Decl.* ¶ 52.  The parties specifically contemplated a claims process whereby Class Members who actually suffered financial injury—above and beyond having their PII stolen by cyber criminals—can submit claims for up to $300 for ordinary expenses or $5,000 for extraordinary expenses.  *See Settlement* ¶¶ 2.1–2.4.  The fact that only 3 out of 100,000 plus Class Members even made extraordinary reimbursement claims strongly suggests that the reimbursement cap of 5,000 is reasonable, and any increased reimbursement cap could have a negligible effect on the Class.  *See Tran Decl.* ¶ 20.  And awarding monetary damages to absent class members without proof of loss—i.e., injury—would likely run afoul of clear Supreme Court precedent.  *See TransUnion*, 141 S. Ct. at 2208 ("Article III does not give

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

federal courts power to order relief to any uninjured plaintiff, class action or not." (citation omitted)).

In sum, weighing the clear risks of ongoing litigation against the meaningful remedies the Settlement provides for the Class, the amount offered in settlement is reasonable. *See Aarons v. BMW of N. Am., LLC*, No. CV 11-7667 PSG (CWx), 2014 WL 4090564, at *12 (C.D. Cal. Apr. 29, 2014) (noting that while settlements will not make most class members completely whole, class members must "discount their claims to obtain a certain and timely recovery, rather than bear the significant risk and delay associated with further litigation"); *Vasquez*, 266 F.R.D. at 489 (noting that "the risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" is a relevant factor). Accordingly, this factor favors final approval.

> *v.*     *Extent of Discovery Completed and Stage of the Proceedings*

This factor requires the Court to gauge whether Plaintiffs had sufficient information to make an informed decision about the merits of their case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). The more discovery that has been completed, the more likely it is that the parties have "a clear view of the strengths and weaknesses of their cases," and the more heavily this factor weighs in favor of final approval. *Young v. Polo Retail, LLC*, No. C 02- 4546 VRW, 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007) (citation omitted).

Here, the parties admit that no formal discovery took place, but they did conduct informal pre-mediation discovery which generally supports final approval. *See Johnson v. MetLife, Inc.*, No. SACV 13-128 JLS (RNBx), 2015 WL 1364553, at *6–7 (C.D. Cal. Mar. 19, 2018). There is also evidence that the parties had a "clear view of strengths and weaknesses" of their case before making an informed decision to settle. *See Young*, 2007 WL 951821, at *4. Specifically, Plaintiffs conducted an "extensive investigation" before mediation. *Joint Decl.* ¶ 11. They surveyed all Defendant's publicly available statements and actions following the data breach, received informal document productions from Defendant, assessed Defendant's insurance coverage and the composition of the Class, conducted legal research, and thoroughly evaluated Plaintiffs' claims. *Id.* ¶¶ 9, 11, 53. Accordingly, though formal discovery would have weighed strongly in favor of approval, the parties' informal discovery and pre-mediation investigation weighs slightly in favor—but certainly not against—final approval.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

     *vi.*    *Experience and Views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). While counsel's views are instructive, they do not entitle the plaintiff to a presumption of fairness. *See Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019).

Here, Class Counsel has considerable experience handling consumer protection and data breach cases. *See Joint Decl.* ¶¶ 48–49. Based on their experience, they opine that the Settlement benefits adequately reflect the risks and delays likely in this case. *Id.* ¶ 54. The Court is satisfied that Class Counsel's extensive experience permitted them to evaluate the merits of the claims and risks associated with prosecuting them through trial and appeal. The Court accordingly credits Class Counsel's determination that the settlement is fair and reasonable and finds that this factor weighs slightly in favor of final approval.

     *vii.*    *Presence of a Government Participant*

Because there is no government entity directly participating in the case, this factor is not relevant to the analysis.

     *viii.*    *Class Members' Reaction to the Proposed Settlement*

In evaluating the fairness, adequacy, and reasonableness of settlement, courts also consider the reaction of the class to the settlement. *See Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003), *overruled on other grounds by Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571 (9th Cir. 2010); *Arnold v. Fitflop USA, LLC*, No. CV 11-0973 W (KSC), 2014 WL 1670133, at *8 (S.D. Cal. Apr. 28, 2014) (concluding that the reaction to the settlement "presents the most compelling argument favoring settlement").

Here, only two Class Members originally objected and two opted out of the Settlement. *Tran Decl.* ¶¶ 22–23. Very few objections and opt-outs create a strong presumption that the Settlement is beneficial to the Class and thus warrants final approval. *See Nat'l Rural Telecomms. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|----------|----------------------|------|-------------------|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

of a proposed class action settlement are favorable to the class members.").  Accordingly, the Class's positive reaction to the Settlement weighs in favor of final approval.

     *ix.*   *Balancing the* Hanlon *Factors*

   Having considered each of the *Hanlon* factors, the Court finds that all relevant factors weigh in favor final approval.

   C.   *Briseño* Factors

   In *Briseño*, the Ninth Circuit stressed that, before approving class action settlements, district courts must look for signs that class counsel has pursued their own self-interests in the negotiations.  *See* 998 F.3d at 1023.  The court identified three "red flags" that are indicative of collusion between class counsel and the defendant: (i) if class counsel receives a disproportionate distribution of the gross settlement amount; (ii) if any of the gross settlement amount reverts to the defendant; and (iii) if there is a "clear sailing arrangement."  *See id.*  The Court discusses each "red flag" in turn.

     *i.*   *Disproportionate Distribution of Attorneys' Fees*

   One sign that class counsel pursued their own self-interests over those of the class is if class counsel receives a disproportionate distribution of the common settlement fund. *See Briseño*, 998 F.3d at 1023.  In cases that do not involve a common fund, a defendant pays attorneys' fees separate and apart from the relief offered to the class and therefore does not reduce—at least not directly—the amount available to class members.  *Lowery v. Rhapsody Int'l, Inc.*, No. 16 CV 01135 JSW JSC, 2021 WL 7448610, at *3 (N.D. Cal. Sept. 20, 2021), *report and recommendation adopted*, No. 16-CV-01135-JSW, 2022 WL 319983 (N.D. Cal. Jan. 4, 2022).  And if a settlement offers injunctive or other non-monetary benefits, Courts must either determine the value of the benefit if it is readily quantifiable or exclude the benefit from the attorneys' fees valuation.  *See Roes, 1-2*, 944 F.3d at 1056; *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1126 (9th Cir. 2020) (explaining that the "caselaw affords district courts discretion to refrain from attempting to measure the unmeasurable" but encouraging district courts to "at least attempt to approximate the value" of non-monetary relief to assess the proportionality of attorneys' fees).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|----------|----------------------|------|-------------------|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

Here, Class Counsel seeks $262,500 in attorneys' fees. *Settlement* ¶ 7.2. The Class may receive up to $500,000 in claims-made, and all 100,000+ Class Members are eligible for free identity theft protection services that carry a $270 retail value per Class Member. *Settlement* ¶ 2.5; *Joint Decl.* ¶¶ 20–21. In other words, the maximum value of the Settlement could be over $27.5 million. But even taking a conservative approach and assuming only 1% of the Class signs up for the free identity theft protection services, the total value of the Settlement would be a little over $1.1 million. *See Reply* 4 n.2. In either instance, a $262,00 attorneys' fee award would be less than 25% of the total settlement value. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (recognizing 25% of the fund as a benchmark for a reasonable fee award).

Ultimately, the true value of the financial identity theft monitoring services will not be clear until 90 days after final approval. *See Settlement* ¶ 2.5. But at this juncture, the Court has "discretion to refrain from attempting to measure the unmeasurable" and has "at least attempt[ed] to approximate the value" of the Settlement which is, conservatively, over $1 million. *See Campbell*, 951 F.3d at 1126. Accordingly, because Class Counsel is not receiving a disproportionate amount of attorneys' fees in relation to the value of the Settlement, this factor does not indicate collusion or inappropriate self-interest.

### ii.    Presence of a Reverter Clause

A reverter clause is one that "returns unawarded fees to the defendant, rather than the class." *Briseño*, 998 F.3d at 1023. Here, the parties are using a claims process—rather than creating a common fund—because the majority of the Class likely suffered no financial injury at all. As such, no money reverts back to Defendant but rather does not leave Defendant's pocket until a claim is made. Accordingly, this is not a true reverter clause. Moreover, the Court recognizes that distributing "unclaimed" funds to the Class would result in many Class Members receiving a windfall for injuries they never suffered—and thus lack standing to prosecute. Awarding unclaimed reimbursements or deducted attorneys' fees to uninjured Class Members also contradicts clear Supreme Court authority. *See TransUnion*, 141 S. Ct. at 2208; *see also Shames v. Hertz Corp.*, No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *14 (S.D. Cal. Nov. 5, 2012) ("[B]ecause the attorneys' fees in this case are wholly separate from the class settlement—and will have no impact one way or the other on the amount the class recovers—a 'savings' for Defendants does not implicate the concerns the Ninth Circuit expressed about [a] 'kicker' provision."). Accordingly, there is no "reverter" clause

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|----------|----------------------|------|-------------------|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

present in the Settlement, which tends to suggest the negotiations were free from collusion.

### iii.    Presence of a "Clear Sailing Arrangement"

A settlement agreement contains a "clear sailing arrangement" when "the defendant agrees not to challenge a request for an agreed-upon attorney's fee." *Briseño*, 998 F.3d at 1023. But the mere presence of a clear sailing arrangement is not "an independent basis for withholding settlement approval." *Id.* at 1027. Instead, such arrangements are material only if there is evidence of at least one of the other two *Briseño* factors—reverters and unreasonably high attorneys' fees. *See McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 610 (9th Cir. 2021) ("[A] clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members." (citation omitted)).

Although the Settlement contains a clear sailing arrangement, its presence is not dispositive in the Court's analysis. *See Settlement* ¶ 7.2. Rather, any potential for collusion that could come from the arrangement is offset because neither the attorneys' fees are excessively high nor is there a "reverter" clause. Moreover, the fact that the parties did not discuss the amount of attorneys' fees until after they negotiated and finalized all benefits to the Class, *id.* ¶ 7.1, tends to suggest that Defendant did not offer Class Counsel's attorneys' fees "in exchange for counsel accepting a lower amount for the class," *see McKinney-Drobins*, 16 F.4th at 610. Accordingly, this factor weakly indicates collusion or inappropriate self-interest. *See Briseño*, 998 F.3d at 1027.

### iv.    Briseño *Conclusion*

After considering each of the *Briseño* factors, the Court finds that the Settlement Agreement, on balance, was not collusive or based on inappropriate self-interest.

### D.    Rule 23(e)(5)(B) Request to Withdraw Objections

Under Federal Rule 23(e)(5)(B), "no payment or other consideration may be provided in connection with . . . forgoing or withdrawing an objection" unless approved by the court after a hearing. As previously mentioned, Plaintiffs and Objectors reached an agreement where Objectors agreed to withdraw their objections, and in exchange, Class Counsel agreed to share $15,000 of their fee award with Objectors' counsel,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

Wilshire Law Firm, in consideration of the fees and costs incurred in the filing of the objections. *See generally Obj. Stip.*; *see also Exhibit 1*, Dkt. # 72-1. At the hearing, Class Counsel explained in further detail how the agreement was reached and the reasons underlying the agreement. The $15,000 award to Objectors' counsel encompasses $4,722.23 in costs and represents a lodestar multiplier of 0.75. *Obj. Stip.* 2:3–7. Moreover, the $15,000 award will be paid solely from the award approved for Class Counsel. *Id.* 1:14–20; *cf. Feller v. Transamerica Life Ins. Co.*, 16-cv-01378 CAS (GJSx), 2019 WL 6605886, at *10 (C.D. Cal. Feb. 6, 2019) (approving agreement to pay objectors' counsel's fees when such fees were being taken solely from class counsel's approved fee award).

Accordingly, the Court hereby approves the withdrawal of objections and the agreement with Wilshire Law Firm in accordance with Federal Rule of Civil Procedure 23(e)(5)(B).

E.    Final Approval Conclusion

Having concluded that the *Hanlon* factors favor final approval and that the Settlement Agreement is appropriate under *Briseño*, the Court **GRANTS** Plaintiffs' motion for final approval of the Settlement Agreement and **GRANTS** the request for approval of payment to Objectors pursuant to Rule 23(e)(5)(B). The Settlement in its current form is fair, adequate, and reasonable, and benefits under the Settlement shall be made immediately available to Class Members.

III.    Attorneys' Fees, Costs, and Enhancement Awards

A.    Attorneys' Fees

i.    Legal Standard

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. *See* Fed. R. Civ. Pro. 23(h). The Court "must carefully assess" the reasonableness of the fee award. *See Staton*, 327 F.3d at 963; *see also Browne v. Am. Honda Motor Co., Inc.*, No. CV 09-6750 MMM (DTB), 2010 WL 9499073, at *3–5 (C.D. Cal. Oct. 5, 2010) (explaining that in a class action

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

case, the court must scrutinize a request for fees when the defendant has agreed to not
oppose a certain fee request as part of a settlement).

Courts can determine the reasonableness of a request for attorneys' fees using
either the lodestar method or the percentage-of-recovery method. *See Kim v. Allison*, 8
F.4th 1170, 1180 (9th Cir. 2021). "Though courts have discretion to choose which
calculation method they use, their discretion must be exercised as to achieve a reasonable
result," and the Ninth Circuit recommends "cross-checking their calculations against a
second method." *In re Bluetooth Headset Prods. Liab.*, 654 F.3d 935, 942 (9th Cir.
2011). The loadstar appears to be an appropriate starting point "in class actions where the
relief sought and obtained is not easily monetized," *Yamada v. Nobel Biocare Holding
AG*, 825 F.3d 536, 546 (9th Cir. 2016), or "attorney's fees will be assessed against
defendant without reducing the relief available to the class," *Wilson v. Metals USA, Inc.*,
No. 2:12-cv-00568-KJM-DB, 2019 WL 1129117, at *7 (E.D. Cal. Mar. 12, 2019).
However, the fact "[t]hat the defendant . . . agrees to pay the fees independently of any
monetary award . . . does not detract from the need carefully to scrutinize the fee award."
*In re Bluetooth*, 654 F.3d at 948 (citing *Staton*, 327 F.3d at 964).

> ii.    *Discussion*

Plaintiffs request that the Court approve the fee award of $262,500, inclusive of
costs. *See generally Fees Mot.* Because the Settlement does not provide for a common
fund and the overall value of the Settlement—given the two years of Aura Financial
Shield Services for those who request it—is not so readily discernible, the Court first
evaluates the reasonableness of the fee request using the lodestar method. The Court will
then cross-check the reasonableness of the award using the percentage-of-recovery
method.

> a.    *Lodestar Method*

To calculate the "lodestar," the court must multiply the number of hours the
attorneys reasonably spent on the litigation by the reasonable hourly rate in the
community for similar work. *McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th
Cir. 1999).

Class Counsel asserts that the current lodestar is $358,684.30, not including the
$27,013.43 in expenses, based on 551.95 hours spent on this case. *See Declaration of*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

*Anderson Berry*, Dkt. # 60-2 ("*Berry Fees Decl.*"), ¶ 30; *Declaration of Jeffrey S. Goldenberg*, Dkt. # 60-3 ("*Goldenberg Fees Decl.*"), Ex. A; *Declaration of Charles E. Schaffer*, Dkt. # 60-4 ("*Schaffer Fees Decl.*"), ¶ 31; *Declaration of Gary E. Mason*, Dkt. # 60-5 ("*Mason Fees Decl.*"), ¶ 29.  In support of these figures, Class Counsel submitted timekeeping statements from the attorneys, paralegals, and legal secretary who worked on the case, *see Berry Fees Decl.*, Ex. 1; *Goldenberg Fees Decl.*, Ex. B; *Schaffer Fees Decl.*, Ex. B; *Mason Fees Decl.*, Ex. 1, as follows:

| Arnold Law Firm | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| M. Anderson Berry | Associate | 121.1 | $740 | $89,614.00 |
| Gregory Haroutunian | Associate | 34.6 | $575 | $19,895.00 |
| Leslie Guillon | Associate | 8.8 | $400 | $3,520.00 |
| Alex Sauerwein | Associate | 12.5 | $353 | $4,412.50 |
| Olya Velichko | Paralegal | 60.1 | $208 | $12,500.80 |
| **Total** | | **237.1** | **N/A** | **$129,942.30** |

| Goldenberg Schneider LPA | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| Jeffrey S. Goldenberg | Partner | 47.4 | $775 | $36,735.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

| | | | | |
|---|---|---|---|---|
| Todd B. Naylor | Partner | 2.8 | $725 | $2,030.00 |
| Robert B. Sherwood | Partner | 32.2 | $650 | $20,930.00 |
| Stephanie Vaaler | Paralegal | 11.3 | $175 | $1,977.50 |
| Cheryl Pence | Legal Assistant | 3.7 | $150 | $555.00 |
| **Total** | | **97.4** | **N/A** | **$62,227.50** |

| Levin Sedran and Berman | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| Charles E. Schaffer | Partner | 61.5 | $975 | $59,962.50 |
| Nicholas Elia | Associate | 11.75 | $500 | $5,875.00 |
| **Total** | | **73.25** | **N/A** | **$65,837.50** |

| Mason LLP | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| Gary E. Mason | Partner | 16.2 | $875 | $14,175.00 |
| David Lietz | Partner | 78.9 | $800 | $63,120.00 |
| Gary Klinger | Partner | 8.6 | $800 | $6,880.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

| | | | | |
|---|---|---|---|---|
| Danielle Perry | Partner | 13.9 | $700 | $9,730.00 |
| David Beiss | Associate | 12.5 | $350 | $4,375.00 |
| Taylor Heath | Paralegal | 7.2 | $170 | $1,224.00 |
| Sandra Martin | Paralegal | 6.9 | $170 | $1,173.00 |
| **Total** | | **144.2** | **N/A** | **$638,099.25** |

1.    *Reasonable Rate*

When calculating the lodestar, the reasonable hourly rate is the rate prevailing in
the community for similar work.  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1200
(9th Cir. 2013) ("[T]he court must compute the fee award using an hourly rate that is
based on the prevailing market rates in the relevant community." (citation omitted));
*Viveros v. Donahue*, No. CV 10-08593 MMM (Ex), 2013 WL 1224848, at *2 (C.D. Cal.
Mar. 27, 2013) ("The court determines a reasonable hourly rate by looking to the
prevailing market rate in the community for comparable services.").  The relevant
community is the community in which the court sits.  *See Schwarz v. Sec'y of Health &
Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  If an applicant fails to meet its burden,
the court may exercise its discretion to determine reasonable hourly rates based on its
experience and knowledge of prevailing rates in the community.  *See, e.g.*, *Viveros*, 2013
WL 1224848, at *2; *Ashendorf & Assocs. v. SMI-Hyundai Corp.*, No. CV 11-02398
ODW (PLAx), 2011 WL 3021533, at *3 (C.D. Cal. July 21, 2011); *Bademyan v.
Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *5
(C.D. Cal. Mar. 9, 2009).

The Court turns to the *2021 Real Rate Report: The Industry's Leading Analysis of
Law Firm Rates, Trends, and Practices* ("Real Rate Report") as a useful guidepost to
assess the reasonableness of these hourly rates in the Central District.  *See Eksouzian v.
Albanese*, No. CV 13-728 PSG (AJWx), 2015 WL 12765585, at *4–5 (C.D. Cal. Oct. 23,
2015).  The Real Rate Report identifies attorney rates by location, experience, firm size,
areas of expertise, and industry, as well as specific practice areas, and is based on actual
legal billing, matter information, and paid and processed invoices from more than 80

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

companies. *See Hicks v. Toys 'R' Us-Del., Inc.*, No. CV 13-1302 DSF JCG, 2014 WL
4670896, at *1 (C.D. Cal. Sept. 2, 2014). Courts have found that the Real Rate Report is
"a much better reflection of true market rates than self-reported rates in all practice
areas." *Id.*; *see also Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 3d 1249, 1258 (D. Nev.
2014) (considering the Real Rate Report); *G.B. ex rel. N.B. v. Tuxedo Union Free Sch.
Dist.*, 894 F. Supp. 2d 415, 433 (S.D.N.Y. 2012) (same).

The Real Rate Report provides that, in Los Angeles, partners litigating consumer-
related matters, such as data breach class actions, have hourly rates ranging from $304 to
$965, and associates have hourly rates ranging from $287 to $719. *See* Real Rate Report
at 138. Here, Class Counsel charged hourly rates of $650 to $975 for partners and $350
to $740 for associates. *See Berry Fees Decl.* ¶¶ 25, 30; *Goldenberg Fees Decl.*, Ex. A;
*Schaffer Fees Decl.* ¶ 31; *Mason Fees Decl.* ¶ 24, 29. Accordingly, the Court accepts the
following rates as within the reasonable rate charged in the relevant community: Gary E.
Mason's rate of $875, David Lietz's rate of $800, Gary Klinger's rate of $800, Jeffrey S.
Goldenberg's rate of $775, Todd B. Naylor's rate of $725, Danielle Perry's rate of $700,
Robert B. Sherwood's rate of $650, Gregory Haroutunian's rate of $575, Nicholas Elia's
rate of $500, Leslie Guillon's rate of $400, Alex Sauerwein's rate of $353, and David
Beiss' rate of $350. However, the following requested rates appears higher than that of
their counterparts in this community: Charles E. Schaffer's requested rate of $975 and M.
Anderson Berry's requested rate of $740. Considering Mr. Shaffer's 27 years of
experience as an attorney, including his extensive experience in consumer, privacy, and
data breach litigation, *see Schaffer Fees Decl.*, ¶¶ 1–12 & Ex. A, the Court adjusts Mr.
Shaffer's rate down to $965. Similarly, the Court adjusts Mr. Berry's rate down to $719
in light of his 13 years of experience as an attorney. *See Berry Fees Decl.* ¶¶ 1–7.

Finally, Class Counsel charged hourly rates of $150 to $208 for paralegals and
legal secretaries. *See Berry Fees Decl.* ¶ 30; *Goldenberg Fees Decl.*, Ex. A; *Mason Fees
Decl.* ¶ 29. Plaintiffs do not adequately detail the prevailing rate for paralegals or law
clerks to support these rates, and the Real Rate Report does not provide information for
paralegals or support staff. However, courts in this District have approved similar rates
for litigation support staff. *See, e.g., SAS v. Sawabeh Info. Servs. Co.*, No. CV 11- 4147
MMM MANx, 2015 WL 12763541, at *22–23 (C.D. Cal. June 22, 2015) (approving
hourly rate of $150 to $275 for litigation support staff). Therefore, the Court approves
the following rates as within the range charged in the relevant community: Olya
Velichko's rate of $208, Stephanie Vaaler's rate of $175, Taylor Heath's rate of $170,
and Sandra Martin's rate of $170.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

Finally, Class Counsel charged an hourly rate of $150 for Cheryl Pence, a legal secretary. *Goldenberg Fee Decl.*, Ex. A. However, time spent on clerical or secretarial tasks is excluded in lodestar analyses, because it is considered part of a firm's overhead. *Browne v. Am. Honda Motor Co., Inc.*, No. CV 09–06750 MMM (DTBx), 2010 WL 9499073, at *8 (C.D. Cal. Oct. 5, 2010). Plaintiffs have not made a sufficient showing that the time billed by Ms. Pence was spent on substantive case-related work that might be recoverable, as opposed to clerical work. *See Goldenberg Fees Decl.* ¶ 18. Accordingly, the Court declines to award any fees based on Ms. Pence's work. *See Aarons v. BMW of N. Am., LLC*, No. CV 11–7667 PSG (CWx), 2014 WL 4090564, at *16 (C.D. Cal. Apr. 29, 2014) (declining to award fees for work done by administrative assistant absent a showing that such work was substantive and case-related).

2.    *Reasonable Hours*

An attorneys' fee award should include compensation for all hours reasonably expended prosecuting the matter, but "hours that are excessive, redundant, or otherwise unnecessary" should be excluded. *Costa v. Comm'r of Soc. Sec. Admin.*, 690 F.3d 1132, 1135 (9th Cir. 2012). "[T]he standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).

Here, Class Counsel have spent 551.95 hours on this case. *Berry Fees Decl.*, Ex. 1; *Goldenberg Fees Decl.*, Ex. B; *Schaffer Fees Decl.*, Ex. B; *Mason Fees Decl.*, Ex. 1. Before reaching a Settlement Agreement, Class Counsel investigated the facts surrounding the data breach, drafted, finalized, and amended complaints, consolidated the cases before this Court, conducted informal discovery, prepared for and attended mediation, participated in post-mediation conferences, and negotiated and drafted a complex Settlement Agreement. *See Berry Fees Decl.* ¶ 12; *Goldenberg Fees Decl.* ¶ 4; *Schaffer Fees Decl.* ¶ 20; *Mason Fees Decl.* ¶ 10. Class Counsel expended significant effort to provide the Class quick recovery while avoiding duplicative efforts. *See, e.g.*, *Berry Fees Decl.* ¶ 12; *Goldenberg Fees Decl.* ¶ 5.

The Court ultimately finds that the time expended by Class Counsel was reasonable, with a few exceptions. As discussed previously, the Court will deduct any time spent on administrative or clerical work, rather than substantive case-related work. *Accord Browne*, 2010 WL 9499073, at *8. Accordingly, after reviewing Class Counsel's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

timekeeping statements, the Court reduces the time billed by Mr. Berry to 120.9 hours, the time billed by Ms. Velichko to 47.4 hours, the time billed by Ms. Heath to 6.4, and the time billed by Ms. Martin to 5.35. *See Berry Fees Decl.*, Ex. 1; *Mason Fees Decl.*, Ex. 1.

3.      *Adjusted Lodestar*

Based on the foregoing, the Court recalculates Class Counsel's lodestar as follows:

| Arnold Law Firm | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| M. Anderson Berry | Associate | 120.9 | $719 | $86,927.10 |
| Gregory Haroutunian | Associate | 34.6 | $575 | $19,895.00 |
| Leslie Guillon | Associate | 8.8 | $400 | $3,520.00 |
| Alex Sauerwein | Associate | 12.5 | $353 | $4,412.50 |
| Olya Velichko | Paralegal | 47.4 | $208 | $9,859.20 |
| **Total** | | **237.1** | **N/A** | **$124,613.80** |

| Goldenberg Schneider LPA | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| Jeffrey S. Goldenberg | Partner | 47.4 | $775 | $36,735.00 |
| Todd B. Naylor | Partner | 2.8 | $725 | $2,030.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

| | | | | |
|---|---|---|---|---|
| Robert B. Sherwood | Partner | 32.2 | $650 | $20,930.00 |
| Stephanie Vaaler | Paralegal | 11.3 | $175 | $1,977.50 |
| **Total** | | **93.8** | **N/A** | **$61,672.50** |

| Levin Sedran and Berman | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| Charles E. Schaffer | Partner | 61.5 | $965 | $59,347.50 |
| Nicholas Elia | Associate | 11.75 | $500 | $5,875.00 |
| **Total** | | **73.25** | **N/A** | **$65,222.50** |

| Mason LLP | | | | |
|---|---|---|---|---|
| **Name** | **Position** | **Hours** | **Rate** | **Fees** |
| Gary E. Mason | Partner | 16.2 | $875 | $14,175.00 |
| David Lietz | Partner | 78.9 | $800 | $63,120.00 |
| Gary Klinger | Partner | 8.6 | $800 | $6,880.00 |
| Danielle Perry | Partner | 13.9 | $700 | $9,730.00 |
| David Beiss | Associate | 12.5 | $350 | $4,375.00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | | Date | November 21, 2022 |
|----------|----------------------|---|------|-------------------|
| Title | Hashemi, et al. v. Bosley, Inc. | | | |

| | | | | |
|---|---|---|---|---|
| Taylor Heath | Paralegal | 6.4 | $170 | $1,088.00 |
| Sandra Martin | Paralegal | 5.35 | $170 | $909.50 |
| **Total** | | **141.85** | **N/A** | **$100,277.50** |

Even after making the above-mentioned adjustments, Class Counsel's lodestar of $351,786.30 is almost $90,000 more than the requested award of $262,500, representing the lodestar with a multiplier of 0.75.

A multiplier of less than 1.0 supports the reasonableness of the requested award. *Tamimi v. SGS N. Am. Inc.*, CV 19-965 PSG (KSx) (slip op.), at *19 (C.D. Cal. Sept. 1, 2021) (approving a 33% fee award with a 0.95 multiplier in a class action); *Taylor v. TIC–The Indus. Co.*, No. EDCV 16-186 VAP (SPx), 2018 WL 6131198, at *10 (C.D. Cal. Aug. 1, 2018) (finding a 0.5 multiplier reasonable); *Hillman v. Lexicon Consulting, Inc.*, No. EDCV 16-01186 VAP (SPx), 2017 WL 10434013, at *8 (C.D. Cal. Oct. 12, 2017) (finding a 0.8 multiplier reasonable). Moreover, Class Counsel's requested fee award encompasses roughly $27,000 of "reasonable expenses that would typically be billed to paying clients in non-contingency matters," *see In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008). *See Fee Mot.* 19:18–20:22; *see also Berry Fees Decl.* ¶ 31; *Goldenberg Fees Decl.*, Ex. A; *Schaffer Fees Decl.* ¶ 44; *Mason Fees Decl.* ¶ 32. As such, Class Counsel is in actuality requesting a fee award of roughly $235,500, which represents the lodestar with a multiplier of 0.67.

The Court thus finds that the requested fee award is reasonable using the lodestar method.

> b. *Percentage-of-Recovery Method Cross-Check*

Although not required, the Court turns to the percentage-of-recovery method to cross-check the reasonableness of the requested fee award. Under the percentage-of-recovery method, courts typically use 25% of the fund as a benchmark for a reasonable

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

fee award. *See In re Bluetooth Headset*, 654 F.3d at 942. The percentage can vary, however, and courts have awarded more or less than 25% of the fund in attorneys' fees as they deemed appropriate. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (noting that courts generally award between 20 and 30% of the common fund in attorneys' fees). Courts also consider various factors in assessing the reasonableness of a fee award, including "(1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; [and] (4) the contingent nature of the fee and the financial burden carried by the plaintiffs[.]" *In re Omnivision Techs., Inc.*, 559 F. Supp. at 1046 (citing *Vizcaino*, 290 F.3d at 1048–50).

As previously stated, the Settlement offers the Class three types of monetary relief capped at a maximum of $500,000: (1) reimbursement for ordinary expenses and lost time up to $300 per Class Member; (2) reimbursement for extraordinary expenses up to $5,000 per Class Member; and (3) California Statutory Claim benefits of $50 per California Subclass Member. *Settlement* ¶¶ 2.1–2.4. Further, all 100,000+ Class Members are eligible to receive Aura Financial Shield Services for two years, valued at approximately $270 per Class Member. Although the total value of the Settlement, including the value of the Aura Financial Shield Services, is not immediately discernible, the maximum value of the Settlement could be over $27.5 million. However, even if only 1% of the Class signs up for the free service, the total settlement value would be around $1.1 million. *See Reply* 4 n.2 Relying on this conservative estimation, the requested fee award of $262,500 is roughly 23% of the total settlement value, and below the federal benchmark of 25%. The Court, nonetheless, still considers relevant *Vizcaino* factors below to ensure the fee is reasonable.

*The Results Achieved.* "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046. "[T]he law appropriately provides for some upward adjustment [from the federal benchmark] where the results achieved are significantly better than the norm." *Rodman v. Safeway, Inc.*, No. CV 11-3003 JST, 2018 WL 4030558, at *3 n.3 (N.D. Cal. Aug. 22, 2018). Here, Class Counsel secured a range of recovery for the Class, which the Court preliminarily found provides "a significantly greater value per Class Member as compared to similar data breach class action settlements." *PA Order*, at 11. Further, the Court recognizes the practical benefit of settling the matter and providing immediate recovery to the Class, including two years of credit monitoring, fraud coverage, and identity theft protection through the Aura Financial Shield Services. *See Mot.* 10:22–11:6. Accordingly, this factor weighs in favor of the requested fee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

*Risk of Litigation.*  In assessing the fairness and reasonableness of an award of attorneys' fees, the risk that further litigation might result in no recovery is a "significant factor." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1046–47.  As mentioned above, data breach cases present substantial hurdles, including causation-related standing issues. *See, e.g.*, *Antman v. Uber Techs., Inc.*, No. 3:15-cv-00175, 2015 WL 6123054, at *9–11 (N.D. Cal. Oct. 19, 2015) (granting defendant's 12(b)(6) motion because plaintiff did not sufficiently plead an injury-in-fact or casual connection for purposes of Article III standing); *see also Hammond*, 2010 WL 2643307, at *2–4 (collecting cases in order to find that "every court to [analyze data breach cases] has ultimately dismissed under Rule 12(b)(6) . . . or under Rule 56 following the submission of a motion for summary judgment").  "Success at class certification has also been mostly nonexistent in these cases." *See Fee Mot.* 13:17 & n.3 (citing *In re Brinker Data Incident Litig.*, No. 3:18-cv-686 TJC-MCR, 2021 WL 1405508, at *14 (M.D. Fla. Apr. 14, 2021), where the court recognized that "it may be the first to certify a Rule 23(b)(3) class involving individual consumers complaining of a data breach").  As such, had Plaintiffs opted to litigate the matter rather than settle, they likely faced prolonged litigation and significant obstacles, including difficulty maintaining class action status through to trial. *See Fees Mot.* 12:26–14:12.  This factor accordingly militates in favor of granting Class Counsel's requested fee award.

*Skill Required and Quality of Work.*  The Court also considers the skill required to prosecute and manage this litigation, as well as Class Counsel's overall performance. *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.  Considering Class Counsel's experience, *see Berry Fees Decl.* ¶¶ 7–10; *Goldenberg Fees Decl.*, Ex. C; *Schaffer Fees Decl.*, Ex. A; *Mason Fees Decl.* ¶¶ 5–7, as well as their ability to settle the matter quickly and provide the Class with substantial recovery weighs in favor of the fee award of $262,500.

*Contingency Nature and Plaintiffs' Financial Burden.*  Class Counsel took this case on a contingency basis, while spending 546 hours and roughly $27,000 litigating the case, which could have failed given the potential standing issues. *Fees Mot.* 15:2–17; *see also Berry Fees Decl.* ¶ 11; *Schaffer Fees Decl.* ¶ 21; *Mason Fees Decl.* ¶ 9.  Therefore, because Class Counsel faced the risk of walking away with nothing after investing significant time and resources in this matter, this factor also weighs in favor of granting the requested fee award.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

The Court thus finds that Class Counsel's requested attorneys' fee award is reasonable and supported by both the lodestar and percentage-of-recovery methods. To the extent that Objectors' opposition raises the very same objections addressed earlier in the motion, *see generally Fees Opp.*, the Court **OVERRULES** the objections and **GRANTS** Plaintiffs' motion for $262,500 in attorneys' fees, inclusive of expenses.

B.     Enhancement Awards

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). When assessing requests for incentive awards, courts consider five principal factors:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995). Further, while "[t]he range of acceptable enhancement payments is discretionary, . . . courts have determined that a $5,000 payment is presumptively reasonable." *Gaston v. FabFitFun, Inc.*, No. 2:20-CV-09534-RGK-E, 2021 WL 6496734, at *4 (C.D. Cal. Dec. 9, 2021) (citation omitted); *see also Hawthorne v. Umpqua Bank*, No. 11-cv-06700-JST, 2015 WL 1927342, at *8 (N.D. Cal. Apr. 28, 2015) ("Many courts in the Ninth Circuit have also held that $5,000 incentive award is presumptively reasonable." (citation omitted)).

Here, Plaintiffs each request an enhancement of $1,250, or $7,500 total for all six Class Representatives. *See Fee Mot.* 20:25–26. The total amount represents 1.5% of the $500,000 reimbursement, or less than 1% of the conservative valuation of the total Settlement. *See Hawthorne*, 2015 WL 1927342, at *8 (collecting cases where courts approved incentive awards that made up 1% or less of the total settlement). This amount is reasonable considering Plaintiffs' efforts. Specifically, aside from Bowden, who dedicated roughly 25 hours to the matter, each Class Representative spent between five to ten hours assisting Class Counsel "by, among other things, (1) meeting with Class Counsel at the outset of the case; (2) assisting with investigation of facts; (3) reviewing the complaint prior to filing; [and (4)] consulting with Class Counsel during the litigation and settlement negotiations." *Fee Mot.* 21:3–8; *see also Declaration of Ken Hashemi*,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|----------|----------------------|------|-------------------|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

Dkt. # 66-2, ¶ 5; *Declaration of Steve Altes*, Dkt. # 66-3, ¶ 5; *Declaration of Sandra Johnson-Foster*, Dkt. # 66-4, ¶ 5; *Declaration of Gregory Boute*, Dkt. # 66-5, ¶ 5; *Declaration of Rafael Artime*, Dkt. # 66-6, ¶ 5; *Declaration of John Bowden*, Dkt. # 66-7, ¶ 4.

Moreover, the incentive awards are in line with awards approved in other data breach cases. *See, e.g.*, *Gaston*, 2021 WL 6496734, at *4 (awarding service awards of $5,000 to each of the two class representatives, which in total made up less than 2% of the monetary and non-monetary value of the settlement); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No 16-MD-02752-LHK, 2020 WL 4212811, at *6 (N.D. Cal. July 22, 2020) (approving service awards ranging from $2,500 to $7,500); *Giroux v. Essex Prop. Tr., Inc.*, No. 16-CV-01722-HSG, 2019 WL 1207301, at *7 (N.D. Cal. Mar. 14, 2019) (approving service awards of $5,000).

The Court agrees that the requested enhancement awards are appropriate here for the reasons described above. Accordingly, the Court **GRANTS** Plaintiffs' request for enhancement awards of $1,250 per Plaintiff, for a total of $7,500.

IV.    Conclusion

For the reasons stated above, the Court **GRANTS** Plaintiffs' motion for final approval of the class action settlement and **GRANTS** Plaintiffs' motion for attorneys' fees, costs, and class representative service awards. Accordingly, it is **HEREBY ORDERED AS FOLLOWS**:

The Court approves settlement of the action between Plaintiffs and Defendant, as set forth in the Settlement Agreement, as fair, just, reasonable, and adequate. The parties are directed to perform their settlement in accordance with the terms set forth in the Settlement Agreement.

Class Counsel is awarded $262,500 in attorneys' fees, inclusive of costs. Additionally, Plaintiffs are each awarded a $1,250 enhancement award, for a total of $7,500. The Court finds that these amounts are warranted and reasonable for the reasons stated in this order.

Without affecting the finality of this judgment in any way, this Court hereby retains exclusive jurisdiction over Defendant and the Class Members for all matters relating to the litigation, including the administration, interpretation, effectuation, or enforcement of the Settlement Agreement and this order.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-946 PSG (RAOx) | Date | November 21, 2022 |
|---|---|---|---|
| Title | Hashemi, et al. v. Bosley, Inc. | | |

This order closes the case.

**IT IS SO ORDERED.**